UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **DANIEL FAORO** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No.:  25-CV-00289 (ABJ) |
| ) | |
| **JEWISH VOICE FOR PEACE,** ) | |
| **INC., et al.** ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANT DISSENTERS'S
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Civil Rule 7, Defendant Dissenters respectfully submit this memorandum of points and authorities in support of their motion to dismiss Plaintiff Daniel Faoro's ("Plaintiff") Verified Complaint ("Complaint") (ECF 1), and all claims brought against them, with prejudice.

**INTRODUCTION**

Dissenters is a grassroots, not-for-profit organization committed to opposing wars waged abroad and domestically against Black, Indigenous, migrant, LGBTQIA+, and otherwise marginalized communities.[1]  Dissenters wants to reclaim the resources spent on war and militarism in order to fund life-affirming services and programs.  Towards this end, Dissenters hosts trainings, webinars, political education and skill building workshops, absorbing hundreds of youth into our

---

[1] The information in this paragraph, and further information about Dissenters and the principles that guide their work, is available on their website: https://wearedissenters.org/.

movement.

Plaintiff alleges that Dissenters and the other Defendants promoted and participated in a protest on February 1, 2024, that purportedly harmed him and "thousands of others" by blocking traffic at several key intersections leading into the District of Columbia. Complaint ¶¶ 2, 28. According to Plaintiff, he was "confined in his car without moving or barely moving for close to an hour before he could navigate out of the blocked traffic and return to his home." Complaint ¶ 36. He goes on to assert a private right of action for public nuisance where none exists, and likens an hour spent in a traffic jam to inescapable imprisonment. Incredibly, Plaintiff makes these claims with respect to a metropolitan area that is ranked among the *highest worst-traffic cities* in the United States, where hour-long traffic jams are the norm.[2] In the end, his claims are frivolous, unsupported by facts, and nothing more than legal conclusions disguised as fact.

More to the point, the opening paragraphs of the Complaint put the lie to Plaintiff's commencing a bona fide class action lawsuit. Those paragraphs reveal that his lawsuit is an exercise in retaliatory lawfare against organizations protesting the United States government's role in funding and arming what the United Nations and other international human rights groups describe as genocide against the Palestinian people.[3] Such protest is obligatory for citizens under

---

[2] *See, e.g.*, Sean Golonka, *Stuck in traffic? Drivers in these cities have it the worst*, Consumer Affairs (Sept. 4, 2024) (Washington D.C. ranked no. 2 among top 10 cities with the worst traffic), https://www.consumeraffairs.com/automotive/cities-with-the-worst-traffic.html; *INRIX 2024 Global Traffic Scorecard: Employees & Consumers Returned to Downtowns, Traffic Delays & Costs Grew*, INRIX (Jan. 6, 2025) (Washington DC ranked 9th in 2024 among most congested urban areas in the U.S.), https://inrix.com/press-releases/2024-global-traffic-scorecard-us/.

[3] *See, e.g.*, Human Rights Watch, *Israel's Crime of Extermination, Acts of Genocide in Gaza* (Dec. 19, 2024), available here; United Nations Human Rights Commission, *Gaza: UN Experts Call on International Community to Prevent Genocide Against the Palestinian People* (Nov. 16, 2023), available here; Amnesty Int'l, *'You Feel Like You Are Subhuman' Israel' Genocide Against Palestinians in Gaza* (Dec. 5, 2024), available here; *Anatomy of a Genocide: Report of the Special Rapporteur on the situation of human rights in the Palestinian territories occupied since 1967*, UN A/HRC/55/73 (July 1, 2024) ¶ 93.

the Nüremberg Principles,[4] Article VII of which provides: "Complicity in the commission of a crime against peace, a war crime, or a crime against humanity as set forth in Principle VI is a crime under international law." Such protest in the public forum also is a time-honored tradition that is critical to sustaining a democracy—and one that is deeply ingrained in and protected by our Constitution's First Amendment. "From the Boston Tea Party to Mahatma Gandhi's Salt March, and from suffragists' illegally casting their ballots to whites-only lunch counter sit-ins, civil disobedience has played a crucial role in bending the proverbial arc of the moral universe toward justice."[5] Yet, Plaintiff asks this Court to subvert that storied history and allow him to retaliate against Defendants by transmuting his alleged travel delay into a broad class action for damages based on, to boot, conclusory statements and threadbare factual allegations. His case is deleterious to First Amendment rights and cannot be permitted to move forward. The Court should dismiss his Complaint in its entirety with prejudice and sanction him and his attorneys by awarding costs and attorneys' fees to Defendants.

## FACT BACKGROUND

This case concerns a protest that occurred on February 1, 2024. That morning, according to the allegations in the Complaint, activists protesting Israel's ongoing genocide in Palestine blocked traffic at "several highways and roads in the District . . . for approximately two hours." Complaint ¶ 28. Traffic was allegedly blocked "at several critical choke points and exits of most of the major routes" leading into the District. Complaint ¶ 29. Plaintiff is a Virginia resident who regularly commutes to work in the District via Route 50. Complaint ¶¶ 8, 36. He alleges in a

---

[4] International Committee of the Red Cross, *Principles of International Law Recognized in the Charter of the Nüremberg Tribunal and in the Judgment of the Tribunal, 1950*, https://ihl-databases.icrc.org/en/ihl-treaties/nuremberg-principles-1950 (last visited June 13, 2025).
[5] Stanford Encyclopedia of Philosophy, *Civil Disobedience*, available here. (last visited June 13, 2025).

sensational and conclusory manner that the blockade "deprived [him] and thousands of others of their right to freely and safely travel on public highways and created life-threatening hazards." Complaint ¶ 2. Without any supporting facts, he sweepingly alleges that "[t]housands of commuters were late for work or school, or missed critical appointments and important events. . . ." Complaint ¶ 5. Despite being able to exit his vehicle, he blithely alleges that he and commuters like him "were trapped in their vehicles with no inkling as to when their freedom of movement would be restored or whether their plans for the day were salvageable." *Id; see also* ¶¶ 30, 34-35. As noted above, Plaintiff alleges he was "stuck in traffic . . . . for close to an hour" before returning home. Complaint ¶ 36.

Plaintiff does not identify any Dissenters's agent(s) who participated in the blockade. Instead, Plaintiff alleges with respect to Dissenters conclusory, boiler plate allegations of alleged conspiracy to block traffic based on social media posts about the action that are compiled in the Hedley Declaration accompanying the Complaint. *See* Complaint ¶¶ 43, 48-49, 51, 55. These allegations are irrelevant to establishing the elements of his claims.

## ARGUMENT

### I. STANDARD OF REVIEW

The standard governing a Rule 12(b)(6) motion to dismiss is well-established. In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F.Supp.2d 191, 196 (D.D.C. 2002) (citations omitted). The court assumes the plaintiff's factual allegations to be true and draws all reasonable inferences in their favor. *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 214 (D.C. Cir. 2022).

Nonetheless, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Critically, the claims must rise "above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and "[a] claim cannot survive a motion to dismiss if based on inferences unsupported by facts or legal conclusions disguised as factual allegations."  *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 866 (D.C. Cir. 2022) (inside quotes and citation omitted).  The Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  The pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action, " *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## II.     PLAINTIFF FAILS TO STATE A CLAIM FOR PUBLIC NUISANCE

In the District of Columbia, "'a public nuisance is an unreasonable interference with a right common to the general public.'" *National Telephone Co-Op. Ass'n v. Exxon Corp.*, 38 F.Supp.2d 1, 13 (D.D.C. 1998) (quoting *B & W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881 (D.C.1982)). Formulation of the claim is adopted from the Restatement (Second) of Torts § 821B(1) (1979). *See District of Columbia v. Beretta*, 872 A.2d 633, 646 (D.C. 2005) (en banc) (accepting that the "RESTATEMENT provides the appropriate definition" for a public nuisance); *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 166 n.3 (D.C. 2013) (explaining that since 2000, the D.C. Court of Appeals has relied on nuisance definitions from the Restatement).

Typically, "only governmental authorities or other representatives of the general public have standing to attack a public nuisance in court (absent statutory authorization)." *Nat'l Tel.*, 38

5

F.Supp.2d at 13 (inside quote and citation omitted).  The one exception to this general rule provides that "a private party may sustain an action to enjoin or recover damages for a public nuisance if that party can allege and prove special damages, distinct from that common to the public."  *Id.* (insides quotes and citations omitted); Restatement (Second) of Torts § 821C (addressing the standing requirements for a claim of public nuisance and explaining that the plaintiff must "have suffered harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of interference"); Restatement (Second) of Torts § 821C, comment i (1979) (rejecting public nuisance in the context of highway obstruction: "When a highway is obstructed, the delay or inconvenience of a detour is a kind of harm suffered by any member of the public who travels that way. The delay or inconvenience suffered by a particular plaintiff, even though it may be greater in degree, is not particular harm of a different kind and will not support an action for the public nuisance.").

   Here, the Plaintiff merely recites the elements of a public nuisance claim without providing any factual support that he has suffered special harm of a kind different from that suffered by other members of the public. *See* Complaint ¶ 67 (alleging Plaintiff's and the other class members' "damages are of the same type"); Complaint ¶ 78 (vaguely listing damages suffered by "Plaintiffs and others").  Moreover, his allegations both of harm and an interfered with public right are conclusory and legal conclusions disguised as facts.  *See* Complaint ¶ 76 ("Because of the Defendants' conspiracy and concerted actions . . . a public nuisance was created. . . . Plaintiff and thousands of others [were] deprived of their right to freely travel public roads and highways without unreasonable interference"); Complaint ¶ 78 ("As a foreseeable, direct and proximate result of Defendants' concerted actions. . . .").  Accordingly, his claim for public nuisance should be dismissed.  *See Holloway v. Bristol-Myers Corp.*, 327 F. Supp. 17, 24 (D.D.C. 1971)

(dismissing public nuisance claim where plaintiff failed to allege that she suffered any special damage); *Acosta Orellana v. Croplife Int'l*, 711 F.Supp.2d 81, 101-02 (D.D.C. 2010) (dismissing public nuisance claim because "the plaintiffs merely recite the elements of a public nuisance claim without providing any factual support for the allegation that a right common to the general public has been harmed, rendering the claim deficient").

### III.     PLAINTIFF FAILS TO STATE A CLAIM FOR FALSE IMPRISONMENT

In the District of Columbia, "[f]alse imprisonment is defined . . . as the restraint by one person of the physical liberty of another without consent or legal justification." *Faniel v. Chesapeake & Potomac Telephone Co.*, 404 A.2d 147, 150 (D.C. 1979). The essential elements of false imprisonment are: "'(1) the detention or restraint of one against his or her will, and (2) the unlawfulness of the detention or restraint.'" *Enders v. Dist. of Columbia*, 4 A.3d 457, 461 (D.C. 2010) (quoting 32 Am.Jur.2d False Imprisonment § 7 (2007)); *Faniel*, 404 A.2d at 150; *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 913 (D.C. Cir. 2015). The threshold question in a false imprisonment action "is necessarily, whether a detention of appellant occurred." *Enders*, 4 A.3d at 461.

The *Faniel* court explained further that, "it is not enough for plaintiff to feel mentally restrained by the actions of the defendant. The evidence must establish a restraint against the plaintiff's will, as where she yields to force, to the threat of force or to the assertion of authority." *Faniel*, 404 A.2d at 151-152 (citations omitted). The use or threat of force to detain the person imprisoned is essential to the claim: "Indeed it cannot be false imprisonment where the 'prisoner' voluntarily submits, without proof of duress or force legally sufficient to vitiate the apparent consent." *Id.*; *see also Lyles v. Micenko*, 468 F.Supp.2d 68, 74 (D.D.C. 2006) ("Depriving someone of the ability to freely move for any amount of time, either by real force or threat of force, is

sufficient to bring a claim for false arrest or false imprisonment."); *accord* Restatement (Second) of Torts § 36, comment d (1965) (explaining that "one who blocks off a highway, intending to prevent the public from passing along it, is not liable for false imprisonment to one whose privilege to use the highway has been thus denied.").

Plaintiff's false imprisonment claim fails under these standards because he simply was not imprisoned, let alone imprisoned under force or threat of force. At any time during the hour he was "imprisoned" he could have exited his vehicle. No one forced him to remain in his vehicle and the decision to do so was his own. Like his public nuisance claim, his false imprisonment claim is based on unsupported facts and conclusory allegations. *See* Complaint ¶ 81 ("A direct result of Defendants' conspiracy and concerted actions . . . was that the Plaintiff and class members were restrained and deprived of their physical liberty . . . ."); Complaint ¶ 82 (vaguely listing damages suffered by "Plaintiff and Class members"). Accordingly, the claim should be dismissed.

IV.     **PLAINTIFF AND HIS ATTORNEYS DESERVE TO BE SANCTIONED**

As discussed in the Introduction, Plaintiff's action is an exercise in lawfare directed at organizations exercising their Constitutional right to protest in public spaces and hold our government accountable for complicity in genocide. The frivolous, unsupported, and conclusory claims Plaintiff and his attorneys allege in pursuit of such lawfare require that they be sanctioned to prevent a proliferation of similar lawsuits. The Court can impose such sanctions on Plaintiff, his attorneys, or their law firm on its own initiative under Rule 11(c)(3) of the Federal Rules of Civil Procedure, because the Complaint has been filed for an improper purpose and the claims and arguments therein are frivolous. *See* Fed. R. Civ. P. 11(b)(1)-(2). The Court also can impose sanctions on Plaintiff and his attorneys pursuant to 28 U.S.C. § 1927, which authorizes the Court to impose costs and attorneys' fees incurred on "[a]ny attorney or other person . . . who so

multiplies the proceedings in any case unreasonably and vexatiously." The Court also has an inherent authority to impose sanctions in order to orderly and expeditiously conduct its cases. *See Hall v. Dept. of Homeland Security*, 219 F. Supp. 3d 112, 119 (D.D.C. 2016). That authority includes sanctioning "an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," and may include, inter alia, fines and awards of attorneys' fees. *Id*.

## CONCLUSION

In addition to and supplementing the arguments herein, Dissenters adopt and incorporate by reference in the entirety each and every argument in the other Defendants' memoranda of law in support of their respective motions to dismiss the Complaint. For the reasons stated herein and in the other Defendants' memoranda, the Court should dismiss the Complaint with prejudice and sanction Plaintiff by awarding costs and attorneys' fees to Defendants.

June 16, 2025                                  Respectfully submitted,

/s/ *Frank Panopoulos*
Frank Panopoulos, DC Bar No. 459365
26 Trailridge Ct.
Potomac, MD 20854
fpanopoulos@icloud.com
Tel: 301-956-4249

/s/ *Ann C. Wilcox*
Ann C. Wilcox, DC Bar No. 421908
13830 Tabiona Drive
Silver Spring, MD  20906
Ann1Wilcox@gmail.com
202-441-3265

*Counsel for Defendant Dissenters*