**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DANIEL FAORO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:25-cv-289 (ABJ) |
| | ) | |
| v. | ) | |
| | ) | |
| JEWISH VOICE FOR PEACE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**DEFENDANT WESPAC FOUNDATION INC.'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

**INTRODUCTION**

Defendant WESPAC Foundation, Inc. ("WESPAC") respectfully submits this memorandum of points and authorities in support of its Motion to Dismiss Plaintiff Daniel Faoro's Complaint pursuant to Fed. R. Civ. P. 12(b)(1), (2) and (6).

WESPAC is a New York non-profit corporation with its principal place of business in Westchester County, New York. Since 1947, it has been educating, agitating and organizing for a more just and peaceful world, an end to militarism and racism, and a fairer economy that works for all. Its members involve themselves with criminal justice reform and police accountability, food justice, fair housing, climate justice and safe renewable energy, immigrant protection, solidarity with Indigenous Peoples, and the struggle for justice, equal rights and human dignity for all the inhabitants of Israel/Palestine.[1] WESPAC's 2008 mission statement says:

> WESPAC Foundation has been a leading force in Westchester County for peace
> and justice work for over three decades. WESPAC Foundation provides outreach
> and community to individuals, groups and leaders in civic and religious

---

[1] About WESPAC | WESPAC Foundation, from its website, January 2, 2025.
https://wespac.org/2008/04/25/mission/.

organizations in greater Westchester who find themselves without a voice or
support system for their progressive positions. WESPAC Foundation's purpose is
to give a human face to those who would otherwise be unrecognized victims of war,
injustice and environmental degradation. WESPAC Foundation connects the
people of Westchester with a progressive agenda for the planet and its peoples.[2]

That same statement says WESPAC's purpose is:

To provide a meeting space along with material, organizational and moral support
for groups and individuals in the greater Westchester Community to organize,
educate and work toward peace, justice and a sustainable environment for the planet
and for all people.[3]

Plaintiff Daniel Faoro alleges that those advocating against Israel's actions in Gaza and

the United States Government's support of those actions conducted a demonstration in

Washington, D.C. on February 1, 2024, which blocked traffic and "inconvenienced" him by

causing him to be stuck in traffic for less than an hour while he was on his way to work.

Complaint ¶¶ 2, 28, 30, 31, 34, 36, 46, 78.  For this inconvenience, he sues three individuals and

seven organizations, all of whom Plaintiff characterizes as active in the advocacy movement for

Palestinian liberation.

This baseless Complaint is one of a number of SLAPP suits seeking to hold WESPAC

liable for injuries purportedly resulting from protests that WESPAC had nothing to do with, *i.e.,*

was not aware of in advance, did not participate in, did not promote, and did not fund.[4]

Indeed, this Complaint also does not allege that anyone on behalf of WESPAC knew of

this D.C. demonstration before it occurred, participated in it, called for anyone else to participate

---

[2] *Id.*

[3] *Id.*

[4] *See, e.g., Manhart v. National Students for Justice in Palestine, et al.,* No. 24-cv-8209, Dkt. 69,
Second Amended Complaint ¶¶ 22–37 (N.D. Ill. Jan. 29, 2025); *Pollak, et ano. v. CodePink
Women for Peace, et al.,* No. 2:24-cv-6253 (C.D. Ca., July 24, 2024); *Helmann et al. v.
Codepink Women for Peace, et al.,* No. 24-cv-5704 (C.D. Ca., December 19, 2024).

in it, communicated with anyone about it, was anywhere near the District at the relevant times,

promoted or made any social media posts or any other statements about it, or funded it.[5]

Instead, Plaintiff relies on the bankrupt theory that WESPAC's acting generally as a

fiscal sponsor to Palestinian Youth Movement ("PYM") automatically subjects it to liability for

anything anyone associated with PYM allegedly did to anyone, anywhere.  There is no law

imposing on a fiscal sponsor such a legal duty of care.  Moreover, Plaintiff does not even allege

that anyone associated with PYM actually had any role in this protest, either as a provider of

funds or otherwise.  Thus, even if WESPAC had some legal duty to Plaintiff in connection with

its fiscal sponsorship role for PYM – to control or supervise PYM's funds or activities – no

liability can possibly attach to WESPAC in relation to this protest, given the absence of

allegations that WESPAC provided any funding for the protest, or that it or PYM itself did

anything in connection with it.

Not only does Plaintiff fail to state viable claims against WESPAC, but his Complaint

contains absolutely no allegations that might provide a factual basis to assert personal

jurisdiction against WESPAC in this District.  Plaintiff does not allege that WESPAC has the

"substantial" or "continuous" contacts with D.C. that might meet the "demanding" standard for

general personal jurisdiction as an exception to the normal rule that such jurisdiction may only

be exercised where a corporation is organized or has its principal place of business.  Nor does

Plaintiff allege that WESPAC did *anything* in D.C., let alone that it did any business, engaged in

any other persistent course of conduct, or derived any substantial revenue from goods used or

services rendered in the District, which might support long-arm or specific personal jurisdiction

---

[5] Nor could they make such allegations in good faith, because in fact no WESPAC money was spent in connection with this demonstration.

here, or might meet the "minimum contacts" test to comply with constitutional due process requirements.

To avoid needless duplication, WESPAC respectfully incorporates by reference the arguments of co-defendants that apply to WESPAC, including, without limitation, those made in support of Defendant Jewish Voice for Peace's Motion to Dismiss ("JVP Br.") and Defendants Party for Socialism and Liberation and Becker's Motion to Dismiss ("PSL Br."), which we briefly summarize as follows:

First, Plaintiff's alleged injuries—loss of time and the purported anxiety and inconvenience of being temporarily stuck in traffic, divorced from any legally protected statutory or common law interest—are not cognizable injuries that confer Article III standing. *See* JVP Br. 4-8; PSL Br. 1-3, 5-6, 7-12.

Second, to the extent Plaintiff is asserting a claim for public nuisance against WESPAC,[6] such claim fails as a matter of law. Only governmental actors can maintain a suit for public nuisance absent special damage, distinct from that common to the public, and Plaintiff alleges no such special damage. To the contrary, he seeks to represent a class that he contends suffered the same harm, injuries and damage as he did. Moreover, recognizing such a public nuisance claim in the context of a protest on public streets would impinge on First Amendment rights because of the special position such areas occupy in traditional public assembly and debate. Were such claim permitted, any person opposed to such a protest could become a "civil vigilante" like Plaintiff and his lawyers here. *See* JVP Br. 9-11; PSL Br. 12-17.

---

[6] Plaintiff names WESPAC specifically in connection with his "alternative" third claim, but not in his public nuisance or false imprisonment claims.

Third, Plaintiff's allegation of being stuck in traffic for less than an hour does not make

out a false imprisonment claim under Washington, D.C. law.  Blocking or obstructing a highway,

or causing a person to sit in traffic, is simply not false imprisonment.  It is an incidental

restriction on one's freedom of movement, not a seizure; and the right to travel the public

highways is a privilege, rather than a right giving rise to an action in tort.  *See* JVP Br. 11-14;

PSL Br. 22-26.

Fourth, because Plaintiff's underlying claims for public nuisance and false imprisonment

are not cognizable, any derivative civil conspiracy claim necessarily fails as well.  Moreover, his

hopelessly conclusory allegations of an agreement by Defendants to block traffic are

unsupported by any factual allegations.  *See* JVP Br. 14-16; PSL Br. 17-20.  Particularly with

respect to WESPAC, Plaintiff does not allege that any individual associated with WESPAC did

anything that might plausibly amount to the intentional making of or joining in an agreement to

do anything to participate in the protest at issue, let alone to harm Plaintiff and the purported

class.  Again, Plaintiff does not even allege WESPAC was aware of the protest before it began.[7]

Fifth, because amending Plaintiff's complaint against WESPAC would be futile – with

no viable claims or substantial basis for new or expanded claims – and because of Plaintiff's and

his counsel's undisguised efforts to (1) target and suppress WESPAC's constitutionally protected

speech and advocacy, (2) harass and punish WESPAC for such advocacy with burgeoning

defense and other costs, and (3) divert WESPAC's time, effort and resources from advocacy to

the defense of baseless and abusive litigation, this Complaint should be dismissed with prejudice.

PSL Br. 26-28.  WESPAC reserves the right to move for sanctions at a later time.

---

[7] Similarly, no such allegations are contained in the lengthy Hedley Declaration accompanying
the Complaint.

WESPAC has been sued by Plaintiff's counsel here in *Manhart* and by other legal organizations and law firms in *Pollak* and *Helmann*. *See* n. 4, *ante*. All these lawsuits target activists critical of Israel's actions against Palestinians. Given this serial pursuit of baseless legal claims, it must be presumed that these cases have been brought in an effort to deter WESPAC and others from engaging in their advocacy on behalf of Palestinians. With respect to WESPAC, they all have proffered the same or similar baseless, defective legal theories as those here.

WESPAC has filed motions to dismiss like this one in *Manhart, Pollak* and *Helmann*. On June 13, 2025, WESPAC's motions to dismiss were granted in *Pollak* (Case No. 2:24-cv-06253, Doc. 131) and *Helmann* (Case No. 2:24-cv-05704, Doc 105).[8] Plaintiffs' cases against WESPAC were dismissed both for failure to state a claim and for lack of personal jurisdiction, for reasons also dispositive here. The court noted that "Plaintiffs do not allege that the Sponsoring Defendants [WESPAC and another alleged fiscal sponsor of PYM] organized or participated in the protests themselves; rather, they seek to hold them liable solely for financially supporting PYM." The court then held that "fiscal sponsorship of PYM is not enough to establish their liability or support personal jurisdiction over them." *Pollak,* Doc. 131, at 32.

The balance of this brief addresses the utter lack of any basis to exercise personal jurisdiction over WESPAC and Plaintiff's frivolous third cause of action in the "alternative" for negligence or recklessness, which appears to be made just against WESPAC.

---

[8] Because the text of the two decisions appear to be identical, we append only the decision in *Pollak.*

**ARGUMENT**

**I.    There Is No Basis to Exercise Personal Jurisdiction Over WESPAC**

Plaintiff bears the burden of establishing a factual basis for the Court's exercise of

personal jurisdiction over WESPAC. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C.

Cir. 1990); *see also First Chi. Int'l v. United Exchange Co.*, 836 F.2d 1375, 1378 (D.C. Cir.

1988) ("[T]he general rule is that a plaintiff must make a prima facie showing of the pertinent

jurisdictional facts."). Bare allegations and conclusory statements are insufficient. *Second

Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).

Furthermore, a plaintiff cannot aggregate factual allegations concerning a group of defendants

generally to establish personal jurisdiction over an individual defendant. *Rush v. Savchuk*, 444

U.S. 320, 331- 32 (1980). Finally, personal jurisdiction must be exercised in a manner that

comports with the Due Process Clause of the Fourteenth Amendment. *GTE New Media Servs. v.

BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).

"Federal courts ordinarily follow state law in determining the bounds of their

jurisdiction over [defendants]." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) (citing

Fed. R. Civ. P. 4(k)(1)(A)). However, Plaintiff must demonstrate that WESPAC has "certain

minimum contacts" with D.C., "such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 66 S.

Ct. 154, 158 (1945) (citation and quotation omitted). The strength of contacts required

depends on which category of personal jurisdiction a plaintiff invokes: general or specific

personal jurisdiction.  *See Daimler*, 134 S. Ct. at 754.

Here, Plaintiff does not—and cannot—allege facts sufficient to establish that this Court

has either general or specific personal jurisdiction over WESPAC, a New York entity. Indeed,

Plaintiff does not even attempt to articulate any basis for the exercise of personal jurisdiction over WESPAC.

      A.       **WESPAC Is Not Subject to General Personal Jurisdiction.**

The standard for obtaining general personal jurisdiction over a corporation is "demanding." *Daimler*, 134 S. Ct. at 750-751. "[T]he place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Id.* at 760 (internal quotations and citations omitted). Only in an "exceptional case" is general jurisdiction available elsewhere. *Id.* at 751 n.19. An "exceptional case" exists only if a defendant's contacts in the state are "substantial" or "continuous." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000).

The Complaint alleges nothing that would justify the exercise of general jurisdiction here. To the contrary, it correctly asserts that WESPAC is incorporated in and has its place of business in New York. Complaint ¶¶ 11, 13. And it does not assert that WESPAC has had any contacts with D.C., let alone contacts that are "substantial" or "continuous." As such, nothing is alleged even to suggest this is the "exceptional case" in which general jurisdiction is available outside New York. *See Daimler*, 134 S. Ct. at 751 n.19, 760.

      B.       **WESPAC Is Not Subject to Specific Personal Jurisdiction.**

To exercise specific (or long-arm) jurisdiction, a two-part test must be satisfied: "A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media,* 199 F.3d at 1347. As to the first prong, the District's long-arm statute provides for personal jurisdiction over a non-resident defendant "as to a claim for relief arising from the person's . . . causing tortious injury in the District of Columbia by an

act or omission outside the District of Columbia *if* he regularly does or solicits business,

engages in any other persistent course of conduct, or derives substantial revenue from goods

used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-

423(a)(4) (emphasis added).

Plaintiff might presumably cite to this provision to support the exercise of personal

jurisdiction over WESPAC.[9]  But the Complaint is silent as to WESPAC's location when it

allegedly engaged in tortious conduct. Absent an allegation that a tort was committed

*somewhere outside* the District of Columbia, Section 13-423(a)(4) is inapplicable. Moreover,

even if Plaintiff had alleged that a tort was committed outside D.C., Plaintiff conspicuously

fails to include any allegations that WESPAC regularly does or solicits business in D.C.,

engages in any other persistent course of conduct in D.C., or derives substantial revenue

from goods used or consumed, or services rendered, in D.C.—and there would be no

legitimate basis for such allegations because WESPAC does none of those things. Therefore,

the Complaint should be dismissed on the independent basis that Plaintiff has failed to

establish those prerequisites as well. *See McIntosh v. Gilley*, 753 F. Supp. 2d 46, 59 (D.D.C.

2010) (no personal jurisdiction where plaintiff failed to allege facts sufficient to satisfy

Section 13-423(a)(4) "plus factors"); *Crane v. Carr*, 814 F.2d 758, 763 (D.C. 1987) (the

"plus factors" "serve to filter out cases in which the in-forum impact is an isolated event and

the defendant otherwise has no, or scant, affiliations with the forum.").

---

[9] The statute also authorizes jurisdiction over a non-resident in connection with claims arising from: (1) transacting any business in D.C.; (2) contracting to supply services in D.C.; (3) causing tortious injury in D.C. by an act or omission in D.C.; … (5) having an interest in, using, or possessing real property in D.C.; (6) contracting to insure or act as surety in D.C.; or (7) marital or parent and child relationship in D.C. D.C. Code § 13-423(a)(1)–(7). However, no facts alleged in the Complaint conceivably relate to any of these provisions.

### C.    WESPAC Does Not Have Minimum Contacts with D.C.

Because Plaintiff fails to allege facts sufficient to allow this Court to exercise long-arm jurisdiction over WESPAC pursuant to the terms of the District's long-arm statute, the Court need not reach the issue of minimum contacts. However, the exercise of specific jurisdiction would likewise be improper as a matter of due process, which mandates that personal jurisdiction may not be exercised over a defendant unless he has "purposefully established minimum contacts within the forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985), "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (internal quotation marks and citation omitted). These minimum contacts must be grounded in "some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475.

In *Walden v. Fiore*, 571 U.S. 277, 290 (2014), the Supreme Court emphasized that the due process inquiry turns on the defendant's conduct, not the effects on the plaintiff.

> Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

*See also id*. at 285 ("plaintiff cannot be the only link between the defendant and the forum.").

Plaintiff does not come close to pleading facts to establish WESPAC has minimum contacts with this forum. Indeed, Plaintiff does not allege WESPAC did *anything* in D.C. and does not even address minimum contacts in the Complaint.

In accordance with these same jurisdictional contentions in *Pollak* and *Helmann,* the

court held that:

> The Sponsoring Defendants are not residents of California.  Plaintiffs do not allege
> that the Sponsoring Defendants—or any of their members—organized or participated in the
> mob.  Nothing in the Complaint suggests that the Sponsoring Defendants purposefully
> directed any activities at California or otherwise availed themselves of the privileges of
> California.  In other words, there are no allegations sufficient to support general or specific
> jurisdiction.

*Pollak,* at 34-35.

For all these reasons, Plaintiff's Complaint against WESPAC should be dismissed for

lack of personal jurisdiction.

## II.    Plaintiff's "Alternative" Negligence or Recklessness Claim Fails

A district court must dismiss a claim if it "fail[s] to state a claim upon which relief can be

granted."  Fed. R. Civ. Proc. 12(b)(6).  Rule 8(a) of the Federal Rules of Civil Procedure requires

a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555).

Plaintiff's "alternative" claim is based solely on the allegation that WESPAC acted as

fiscal sponsor of PYM, and therefore "had a legal duty to control and supervise the activities of

PYM."  Complaint, ¶ 85. According to Plaintiff, this means WESPAC is (vicariously) liable for

the acts of PYM, either because WESPAC (1) was the "alter ego" of PYM "with no separate

legal identity" at the time of the protest, (2) was PYM's principal and controlled agent PYM's

activities; or (3) negligently or recklessly breached its duty to control and supervise the activities

of PYM, "whose foreseeable illegal actions caused foreseeable injury to the Plaintiff and the

Class, causing damages." Complaint, ¶¶ 14, 15, 85.

As a threshold matter, because Plaintiff has not and cannot truthfully allege that

WESPAC transmitted any money to PYM or anyone else knowing or intending that it would be

used in connection with this protest, or that any funds transmitted by WESPAC were actually

used in connection with the protest, Plaintiff has simply failed to plead that his alleged injuries

arose from any activity by WESPAC as PYM's fiscal sponsor.  Plaintiff has also failed to plead

that PYM itself did anything in connection with the protest, or spent any funds related to it.

Therefore, not only would there be no violation by WESPAC of any legal duty to Plaintiff even

if one existed, but there is also no causal connection between WESPAC's fiscal sponsorship of

PYM and Plaintiff's injuries.  Plaintiff's case against WESPAC is simply frivolous, regardless of

whether WESPAC and PYM were "alter egos" as one integrated entity, or were agent and

principal, or if WESPAC simply had a duty to Plaintiff to exercise some discretion and control

over PYM's activities. But in fact, none of those alternative legal conclusions have any factual or

legal basis.

### A.  Plaintiff Does Not Plausibly Allege that WESPAC and PYM Were One Legal Entity

Plaintiff's Complaint contains only an unsupported and threadbare conclusory allegation

that, upon information and belief, WESPAC and PYM were one integrated legal entity,

Complaint, ¶ 14, which is patently "insufficient to survive a motion to dismiss." *Doe v. Lee*, No.

19-cv-0085 (DLF), 2020 WL 759177, at *6 (D.D.C. Feb. 14, 2020) (citation omitted)); *see also*

*Baumel v. Syrian Arab Republic*, 667 F. Supp. 2d 39, 49 (D.D.C. 2009) ("information and belief"

insufficient).  Utterly missing is any specific factual allegation suggesting such integration –

nothing reflecting joint management, joint staffing, joint salary payments or other compensation, shared offices, or anything that might plausibly indicate one integrated entity.

The Complaint alleges that WESPAC agreed to provide PYM with "access to WESPAC's administrative services, staff and facilities." ¶ 14. But Plaintiff does not identify in any fashion the WESPAC "services, staff, and facilities" that were supposedly used by PYM. Indeed, Plaintiff offers no allegations at all to support its "access" point, let alone that any WESPAC "services, staff and facilities" were used by PYM in connection with the D.C. protest. Nor does Plaintiff allege that anyone on behalf of PYM took any specific action in connection with the protest.[10]

### B.  Plaintiff Does Not Plausibly Allege that PYM was WESPAC's Agent

Plaintiff's wild theory that WESPAC's acting generally as a fiscal sponsor, "required" WESPAC "to maintain control and discretion over PYM," Complaint ¶ 15, which automatically made PYM an agent of WESPAC's – thereby subjecting it to vicarious liability for anything PYM allegedly did to anyone, anywhere – has no legal basis and actually flies in the face of agency law.

Under the Restatement (Third) of Agency, "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the

---

[10] As WESPAC's Certified Disclosure of Corporate Affiliations and Financial Interests, filed contemporaneously herewith, makes clear, WESPAC and PYM were never one integrated entity with no separate legal identity. Because WESPAC filed similar corporate disclosure certifications and motion papers in *Pollak* and *Manhart*, Plaintiff's counsel here well knew that WESPAC's fiscal sponsorship did not create one integrated legal entity with PYM (or any other fiscal sponsoree for that matter). *See, e.g., Pollak,* Dkt. 76, WESPAC's Memorandum of Points and Authorities in Support of its Motion to Dismiss First Amended Class Action Complaint, at 21-22; Dkt. 87, WESPAC's Corporate Disclosure Statement; Dkt. 88, WESPAC's Reply Memorandum of Points and Authorities, at 4-6; *Manhart*, Dkt. 48, WESPAC's Notice of No Affiliates; Dkt. 101, WESPAC's Reply Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's Second Amended Complaint, at 6-7.

agent shall act on the principal's behalf and subject to the principal's control, and the agent

manifests assent or otherwise consents so to act." § 1.01. "An essential element of agency is the

principal's right to control the agent's actions." § 1.01, comment f(1). The agent must have

authority to act on behalf of the principal, and actual authority exists based on "the principal's

assent that the agent take action on the principal's behalf." § 3.01. *See, e.g., Warciak v. Subway*

*Rests., Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) (affirming Rule 12(b)6) dismissal of complaint of

vicarious liability, under federal common-law principles of agency, which lacked sufficient

factual allegations "showing Subway manifested to the public that T-Mobile was its agent"; and

holding that it "is unreasonable for courts to contrive an inference when the scarce facts barely

allege a claim.")

Naturally, Plaintiff does not allege that WESPAC did anything either to manifest to the

public that PYM was its agent, or to assent to PYM's acting on its behalf. Nor does Plaintiff

offer any factual allegation that PYM had any authority to act on behalf of WESPAC. For all

these reasons, there is no basis to conclude that WESPAC and PYM shared an agency

relationship, let alone one that made WESPAC automatically liable for anything and everything

PYM allegedly did, to any human being who felt herself aggrieved, anywhere on the planet.

WESPAC has been unable to find any case addressing, let alone supporting, Plaintiff's

suggestion that a fiscal sponsor-sponsoree relationship inherently creates a principal-agent

relationship, another indication of how far-fetched Plaintiff's position is. It is therefore no

surprise that the court in *Pollak* and *Helmann* held that the plaintiffs there did not "plausibly

allege[] an agency relationship between the Sponsoring Defendants and PYM." *Pollak*, at 34

("Nor are there any facts suggesting that PYM acted with actual or apparent authority on behalf

of the Sponsoring Defendants.").

14

### C.   WESPAC Had No Legal Duty to Plaintiff

Plaintiff's conclusory allegation that WESPAC had a legal duty to Plaintiff to control and supervise the activities of PYM, which WESPAC breached, has no legal or factual support. There is simply no such legal duty.   Plaintiff's counsel has advanced the same theory in *Manhart* but has never cited any case, anywhere in the country, imposing on a fiscal sponsor like WESPAC any legal duty of care to someone situated like Plaintiff.  In fact, there is no authority, policy, or logical theory that would support imposing on a fiscal sponsor a legal duty to control the *activities* of its sponsored organization, owed to anyone anywhere who feels aggrieved by the allegedly tortious actions of the sponsored organization.  Here, such a duty would be particularly nonsensical when it is undisputed that WESPAC, the fiscal sponsor, had no awareness of or relationship with Plaintiff or any other driver or passenger in the District purportedly injured or damaged by the protest.  Accordingly, the *Pollak/Helmann* court held that WESPAC's "role as PYM's fiscal sponsor[] does not create a sufficient link to PYM's conduct to support liability," citing an absence of "legal authority holding that fiscal sponsorship alone creates such liability." *Pollak*, at 33.

Nor may such duty to Plaintiff to control a sponsored organization's actions be implied from a 1968 IRS revenue ruling, *see* Complaint ¶ 14, that stated only that an unidentified organization could retain its tax exemption because it had maintained discretion and control over the *funds* – not the *activities* – of another organization for charitable purposes.  *See* Rev. Rul. 68-489, 1968-2 C.B. 210.  "Charitable purposes" historically have included the First-Amendment-protected social justice advocacy engaged in by both WESPAC and PYM.  If the government's grant of a tax exemption creates any legal duty at all, it is limited to a duty to the government, for the grant, not a potential private plaintiff.  Thus, in the 57 years since that Revenue Ruling

issued, there appears not to have been any case imposing on a fiscal sponsor a legal duty to any

private person allegedly aggrieved by the tortious actions of its sponsoree. *See Pollak*, at 33

("That [Revenue] ruling requires fiscal sponsors to retain "control and discretion" over how

donated funds are used, but only in order to preserve their tax-exempt status—not to create an

agency relationship or vicarious liability."). Moreover, because the Complaint does not and

cannot allege that *any funds* WESPAC provided to PYM were used for any purpose in

connection with this protest, Plaintiff may not be heard to complain about how WESPAC

exercised control and discretion over PYM's use of the donated funds.

Finally, since Plaintiff's negligence and/or recklessness claim against WESPAC depends

upon the Complaint's allegation that WESPAC's "foreseeable illegal actions caused foreseeable

injury to the Plaintiff and the Class, causing damages[,]" ¶ 85, that claim fails for an additional

reason: Plaintiff does not and cannot allege that WESPAC had any prior knowledge or

awareness of the protest, let alone do anything to advance, promote or fund it. Accordingly,

Plaintiff cannot plausibly claim that WESPAC foresaw or could foresee any purportedly illegal

actions by PYM that might have foreseeably caused any injury to Plaintiff or the Class. This is

especially true since Plaintiff has not alleged that PYM itself did anything relating to this protest.

Thus, there is good reason why there is no case imposing on a fiscal sponsor the legal

duty that Plaintiff seeks to impose on WESPAC. The burden of guarding against an injury that

WESPAC could not foresee would be huge and impossible to bear. Under Plaintiff's theory,

WESPAC and every fiscal sponsor would have unlimited liability to anyone in the world who

alleges injury from any act or omission of a fiscal sponsoree like PYM, even when, as here, the

fiscal sponsor was entirely unaware of the circumstances in which the act or omission allegedly

occurred.  For all these reasons, Plaintiff's frivolous "alternative" negligence or recklessness

claim against WESPAC should be dismissed for failure to state a valid claim.

## CONCLUSION

For the foregoing reasons, this Court should grant WESPAC's Motion to Dismiss

Plaintiff's Complaint, with prejudice; together with such other and further relief which this Court

deems just and proper.

Dated: June 16, 2025                                    Respectfully submitted,


                                                       /s/ Robert L. Herbst
                                                       Robert L. Herbst
                                                       420 Lexington Avenue, Suite 300
                                                       New York, New York 10170
                                                       (914)-450-8163
                                                       rherbst@herbstlawny.com

                                                       *Attorneys for Defendant WESPAC*
                                                       *Foundation, Inc.*