## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [76][96][98][125]

## I.    Introduction

Before the Court are motions to dismiss brought by CodePink Action Fund and CodePink Women for Peace ("CodePink"); the Palestinian Youth Movement ("PYM"); Remo Ibrahim and Courtney Schirf (the "Individual PYM Defendants"); WESPAC Foundation ("WESPAC"); and Honor the Earth (collectively, "Defendants").[1] ECF Nos. 76, 96, 98, 125. For the following reasons, Defendants' motions are GRANTED IN PART and DENIED IN PART.

---

[1] Also before the Court is a series of nearly identical motions brought against the complaint in this case's companion case, that being *Ronen Helmann v. Codepink Women for Peace et al*, 2:24-cv-05704-SVW-PVC. The Court, simultaneously with this order, is issuing a similar order in the companion case making the same rulings on the various motions to dismiss in that case for the same reasons.

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

## II.    Factual and Procedural Background

### A.    The Adas Torah Synagogue

This case arises out of the events that took place at the Adas Torah Synagogue (the "Synagogue") on June 23, 2024. First Amended Complaint, ECF No. 71 ("FAC") ¶ 2. The Synagogue is an Orthodox Jewish house of worship located in Los Angeles's Pico-Robertson neighborhood. *Id*. ¶ 194.

On June 23, 2024, the Synagogue held its usual religious services: a morning, afternoon, and evening prayer. *Id.* ¶¶ 159-70, 227. That same day, the Synagogue also hosted a special "Aliyah Event," where a real estate company presented opportunities to purchase homes in Israel. *Id.* ¶¶ 200-203. According to the complaint, this event held religious significance for many attendees, who view moving to Israel as a fulfillment of a religious commandment. *Id*. ¶ 185. Similar events often include prayer or Torah study and are generally understood by the community as religious in nature.[2] *Id*. ¶¶ 178-193, 204-206. Plaintiffs Ronen Helmann, Noah Pollak, and StandWithUs Center for Legal Justice (collectively, "Plaintiffs") comprise various individuals who attempted to enter the Synagogue on June 23, 2024, in order to attend the Aliyah Event, prayer services, or both. *Id*. ¶¶ 256, 271, 275, 281, 287, 292, 298, 300, 303-304, 308.

Upon learning of the Aliyah Event, various individuals organized a mob to assemble outside the Synagogue; the various defendants are alleged to have taken different roles in organizing and participating in this mob. *Id*. ¶ 207.

---

[2] Defendants contest the religious nature of the Aliyah Event, largely because Plaintiffs' claims depend in part on whether they were attempting to enter the Synagogue to exercise their First Amendment rights. *See, e.g.*, ECF No. 98 at 19-20. The complaint contains detailed allegations regarding the religious nature of the Aliyah Event, e.g. that a common belief among Orthodox Jews is that returning to and dwelling in Israel is a religious commandment. FAC ¶¶ 185-89. At the motion to dismiss stage, the Court takes Plaintiffs' allegations regarding the religious nature of the Aliyah Event as true and therefore that attempts to enter the Synagogue to attend that event pertained to an exercise of First Amendment rights. In any event, several Plaintiffs allege that they attempted to enter the Synagogue at least in part for a squarely religious purpose, e.g. to attend prayer services. *See id.* ¶¶ 275, 281, 287, 292, 298, 300.

|  | : |  |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

**B.**     **The Organizing Defendants' Social Media Posts**

In the days leading up to June 23, 2024, CodePink, PYM, and the Individual PYM Defendants (collectively, the "Organizing Defendants") organized a protest of the Aliyah Event. The Court will address each Organizing Defendant, and the actions they took to organize the protest, in turn.

**1.**     **CodePink's Social Media Posts**

CodePink is comprised of two nonprofit organizations: CodePink Women for Peace, a California 501(c)(3) nonprofit organization, and CodePink Action Fund, a California Section 501(c)(4) nonprofit organization. *Id.* ¶¶ 40, 47. These two organizations allegedly share a headquarters in Marina Del Rey, California, share leadership, and work "hand-in-glove." *Id.* ¶¶ 41, 47-48. Because the allegations as to these organizations are shared, the Court refers to these two entities collectively as "CodePink." CodePink, as a nonprofit, describes itself as a "feminist grassroots organization working to end U.S. warfare and imperialism, support peace and human rights initiatives, and redirect resources into healthcare, education, green jobs and other life-affirming[] programs." *Id.* ¶ 42.

In the days leading up to June 23, 2024, CodePink's Los Angeles and Southeast Los Angeles chapters made multiple-image posts on their Instagram accounts urging: "HELP US ADVOCATE THE STOP OF HOMES BEING SOLD ON STOLEN PALESTINIAN LAND" at "A MEGA ZIONIST REAL ESTATE EVENT…IN LA THIS WEEK!" *Id.* ¶¶ 212-13. The posts placed the date and address of the Aliyah Event at the Synagogue, which was identified by name, inside of an inverted red triangle.[3] *Id.* ¶¶ 214-15, 217. Plaintiffs allege this inverted triangle is used by Hamas to celebrate its use of violence against Jews and also "as a target designator to identify Jews and Jewish targets for extermination." *Id.* ¶¶ 218-19.

---

[3] The posts additionally included the date and address of another similar event held at the Shaarey Zedek synagogue in North Hollywood on June 20, 2024. *Id.* ¶ 214.

| | | : | |
|---|---|---|---|
| | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

### 2.   PYM's Social Media Posts

PYM is an unincorporated association that advocates for Palestinian liberation and against Israel. *Id*. ¶¶ 49, 52. In the days leading up to June 23, 2024, PYM made various posts on its social media profiles calling for members to protest the Aliyah Event. *Id*. ¶¶ 220-24. Specifically, on June 21, 2024, PYM posted an image on its Instagram account that called for its members to show up at "12 PM SHARP" and declaring "OUR LAND IS NOT FOR SALE." *Id*. ¶ 220. The image urged members to "STAND AGAINST SETTLER EXPANSION AT SUNDAY'S REAL ESTATE EVENT SELLING HOMES TO BUILD 'ANGLO NEIGHBORHOODS' IN PALESTINE" and stated that "Racist settler expansionists are not welcome in Los Angeles! This blatant example of land theft is operating in our own backyard. The Nakba[4] is ongoing and must be confronted!" *Id*. ¶¶ 221-222. The image concluded by stating "FROM THE BELLY OF THE BEAST NO JUSTICE, NO PEACE." *Id*. ¶ 223. Plaintiffs allege that "belly of the beast" refers to a synagogue. *Id*. ¶ 224.

### 3.   Individual PYM Defendants

The Individual PYM Defendants are various principals of PYM. *Id*. ¶¶ 91, 93. Courtney Schirf, a resident of Austin, Texas, is a lead organizer for PYM, and controls PYM's social media profiles. *Id*. ¶¶ 91-92. Remo Ibrahim, a resident of Mission Viejo, California, is the head of the local chapter of PYM for Los Angeles, Orange County, and the Inland Empire, and has control over the local chapter of PYM's social media profiles. *Id*. ¶¶ 93-95.

### C.   The Sponsoring Defendants

WESPAC and Honor the Earth (collectively, the "Sponsoring Defendants") did not organize or participate in the protest at the Synagogue. However, they served as fiscal sponsors of PYM. *Id*. ¶ 51. Plaintiffs argue this relationship imputes liability for PYM's actions, and the Court will therefore provide relevant background on both Sponsoring Defendants.

---

[4] The complaint clarifies that "Nakba" refers to the defeat of the Arab armies in the 1948 Arab-Israeli War. *Id*. ¶ 222, fn. 71.

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

WESPAC is a Section 501(c)(3) nonprofit organization with a principal place of business in White Plains, New York, that describes itself as a "small…community peace and action group." *Id.* ¶¶ 120-21. WESPAC is a "fiscal sponsor" of a number of organizations, including PYM, and was PYM's longstanding fiscal sponsor through the days leading up to the protest. *Id.* ¶¶ 128, 130. Fiscal sponsorship is an arrangement whereby a Section 501(c)(3) tax-exempt organization (here, WESPAC) assists a non-exempt organization (here, PYM) by permitting the non-exempt organization to solicit and receive tax-deductible contributions or grants through the tax-exempt organization that the non-exempt organization could not receive on its own. *Id.* ¶ 101. Typically, the 501(c)(3) organization accepts donations on behalf of the non-exempt organization and uses those donations to pay the non-exempt organization's expenses. *Id.* ¶ 102.

Honor the Earth is a Section 501(c)(3) nonprofit organization with a principal place of business in Callaway, Minnesota, that was founded in 1993 to raise awareness and financial support for indigenous environmental justice. *Id.* ¶¶ 138-39, 141. Like WESPAC, Honor the Earth is a fiscal sponsor of PYM, and the same contours of that relationship are alleged as were with WESPAC and PYM. *Id.* ¶¶ 140, 144-153.

**D.    The Events of June 23, 2024**

On June 23, 2024, shortly before the Aliyah Event, more than 200 individuals marched into the Pico-Robertson neighborhood and physically obstructed access to the Synagogue. *Id.* ¶ 228. Plaintiffs allege that CodePink and PYM members were part of this mob. *Id.* ¶¶ 46, 59. Once the mob was in front of the Synagogue, chaos and violence quickly ensued. *Id.* ¶ 229. Individuals in the mob donned masks and held signs, punched Synagogue members and Jews, and one person brandished a sock filled with rocks as a weapon. *Id.* ¶¶ 230-34. During the chaos, worshippers—including Plaintiffs—attempted to enter the Synagogue for prayer, study, or the Aliyah Event. *Id.* ¶ 240.

Plaintiff Noah Pollak ("Pollak"), a Los Angeles resident, came to the Synagogue with his children to gather with other members of his faith and learn about purchasing real estate in Israel. *Id.* ¶¶ 12, 29,

| | : | |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

308. Upon arrival, he encountered a road closure on Pico Boulevard, an LAPD helicopter overhead, dozens of police officers in riot gear outside the Synagogue, and a mob behind them. *Id.* ¶¶ 309-312. Because of the commotion, Pollak could not enter the Synagogue through the front entrance and was forced to move himself and his kids to safety, eventually entering the Synagogue through an unmarked side entrance. *Id.* ¶¶ 313-316.

Plaintiff Ronen Helmann ("Helmann") lives in the Pico-Robertson area and regularly prays at the Synagogue. *Id.* ¶¶ 249-50. He was walking near the Synagogue on June 23, 2024, when he noticed several unidentified individuals wearing headscarves and masks checking homes for *mezuzot*,[5] photographing them, marking cars, and using cell phones. *Id.* ¶¶ 251-55. Alarmed, he walked toward the Synagogue to pray but encountered a mob blocking the entrance. *Id.* ¶¶ 256-57. Several members of the mob carried masks, backpacks, and bear spray. *Id.* ¶¶ 257-58. As he approached, people with cameras shouted epithets at him like "colonizer," "baby murderer," "Hitler didn't finish the job," and "itbach el yehud" ("slaughter the Jews" in Arabic). *Id.* ¶¶ 260-69. Helmann, feeling unsafe, returned home. *Id.* ¶ 270.

Seven members of Plaintiff StandWithUs Center for Legal Justice ("StandWithUs"), a California tax-exempt membership organization, also faced difficulties entering the Synagogue. *Id.* ¶¶ 33-39. Five members intending to attend the Aliyah Event were forced to enter the Synagogue through an alleyway behind the building, where an armed security guard let them in. Once inside, they were unable to locate any prayer services, which had been disrupted by the unrest. *Id.* ¶¶ 271-297. One member, unaware of the alternative entrance, was unable to enter the Synagogue at all for afternoon prayer. *Id.* ¶¶ 300-302. Another, who had attended morning prayer and stayed to study Torah, had his study interrupted by the commotion. *Id.* ¶¶ 298-299.

**E.      Lawsuit and Motions to Dismiss**

Plaintiffs filed claims against Defendants alleging they violated two statutes: (1) the Ku Klux Klan Act, 42 U.S.C. § 1985; and (2) the Freedom of Access to Clinic Entrances Act (the "FACE Act"). *Id.* ¶¶

---

[5] A *mezuzah* (plural: *mezuzot*) is a prayer scroll affixed by Jews to the doorposts of their homes. *Id.* ¶ 252 n. 79.

|  | : |  |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

389, 409. Plaintiffs bring the lawsuit as a class action on behalf of all persons who attempted to enter the synagogue but were prevented in the same way Pollak and the StandWithUs Members were so prevented. *Id*. ¶¶ 346-385.

### III.    Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### IV.    Standing

"The question of whether a party has standing to sue under Article III is a threshold issue that must be addressed before turning to the merits of a case." *Shulman v. Kaplan*, 58 F.4th 404, 407 (9th Cir. 2023) (citing *Horne v. Flores*, 557 U.S. 433, 445 (2009)). "When assessing a party's standing at the pleading stage, we accept all facts alleged in the complaint as true." *Id.* at 408 (citing *Vaughn v. Bay*

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

*Env't Mgmt. Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009)).

To have standing, a plaintiff carries the burden to "show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *In re Zappos.com, Inc.*, 888 F.3d 1020 (9th Cir. 2018) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

Defendants challenge Plaintiffs' standing on two grounds: (1) their injury is not fairly traceable to Defendants' conduct; and (2) StandWithUs lacks associational standing. The Court will address each argument in turn.

### A.   Plaintiffs' injury is fairly traceable to Defendants' conduct.

Standing does not require that Defendants' conduct be the proximate cause of Plaintiffs' injuries. *Maya*, 658 F.3d at 1070. Rather, an injury is "fairly traceable" if there is "a line of causation between defendants' action and their alleged harm that is more than attenuated." *Id.* (citing *Allen v. Wright*, 468 U.S. 737, 757 (1984)) (cleaned up). The chain of causation may have several links, but those links must be "plausible" rather than "hypothetical or tenuous." *Id.* (citing *Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002)) (cleaned up).

Here, Plaintiffs have sufficiently alleged that their injuries were fairly traceable to Defendants' conduct. For the Organizing Defendants, the plausible line of causation is clear: their social media posts caused members to show up at the Synagogue on June 23, 2024, and the militant tone of those posts encouraged protestors to be unruly, resulting in the alleged injuries. For the Sponsoring Defendants, only one more link is needed: their financial support of PYM enabled PYM to operate at a sufficient capacity whereby it could organize the event. These allegations may not suffice to demonstrate proximate cause, but they evince a line of causation that is "more than attenuated" and therefore sufficient for standing purposes.

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|----------|----------------------|------|---------------|

| Title | *StandWithUs Center for Legal Justice v. CodePink et al* |
|-------|----------------------------------------------------------|

**B.      StandWithUs's associational standing is limited.**

Defendants also argue that StandWithUs does not have associational standing to sue on behalf of its members. The Court agrees in part—StandWithUs does not have associational standing to pursue compensatory damages, but it can still pursue statutory damages and injunctive relief.

"The doctrine of associational standing permits an organization to 'sue to redress its members' injuries, even without a showing of injury to the association itself.'" *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003) (quoting *United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 552 (1996)). An organization has standing to bring suit on behalf of its members and for its members' injuries when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). "If an association can satisfy these requirements, [courts] allow the association to pursue its members' claims, without joining those members as parties to the suit." *Id.*

StandWithUs easily satisfies the first two elements. First, the StandWithUs members allege individualized injuries—including interference with their ability to access their house of worship—that are fairly traceable to Defendants' conduct. No other element of standing is in dispute.

Second, the interests StandWithUs seeks to protect are germane to its purpose. StandWithUs's stated mission is to "combat[] antisemitism through legal action." FAC ¶ 31. Defendants, according to the complaint, obstructed and intimidated Jewish individuals trying to access a synagogue during religious activities—allegedly motivated by antisemitic animus. Pursuing legal action in response to that conduct is not just germane to StandWithUs's purpose; it directly advances the core of its mission. *See Defs. of Wildlife v. U.S. Env't Prot. Agency*, 420 F.3d 946, 958 (9th Cir. 2005), *rev'd on other grounds sub nom. Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644 (2007) (finding that this element was satisfied when the "interests at stake" simply "relate[d] to [the plaintiff's] mission").

|  | : |
|--|---|
| Initials of Preparer | |
|  | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

But StandWithUs's associational standing fails at the third *Hunt* prong: that "neither the claim asserted nor the requested relief requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. To establish associational standing, "the claims proffered and relief requested" must "not demand individuated proof on the part of its members." *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1408 (9th Cir. 1991). Courts "have consistently held that claims for monetary relief necessarily involve individualized proof and thus the individual participation of association members." *United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1400 (9th Cir. 1990).

This case is no exception. Plaintiffs assert claims under the Ku Klux Klan Act and the FACE Act, both of which allow for compensatory damages. *See* 42 U.S.C. § 1985(e); 18 U.S.C. § 248. Awarding such damages would require individualized proof from StandWithUs members regarding the specific injuries they suffered.[6] StandWithUs has not alleged or explained any alternative method for calculating these damages. Therefore, StandWithUs lacks associational standing to seek compensatory damages.

That said, StandWithUs also seeks injunctive relief and statutory damages, neither of which requires individual member participation. As such, StandWithUs has associational standing to pursue those claims.

**V.     The Organizing Defendants**

For the sake of clarity, the Court will evaluate Defendants' motion to dismiss in two parts: first, their motion to dismiss the Organizing Defendants; and second, their motion to dismiss the Sponsoring Defendants.

---

[6] To allay any potential confusion, this finding does not regard the class claims additionally included in the complaint. The Court here finds that StandWithUs cannot stand in for its members as to damages because the requested relief requires the individual participation of those members as opposed to StandWithUs itself. The Court makes no finding regarding the class claims (which are irrelevant here).

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

Starting with the Organizing Defendants, the parties' briefing presents two issues: (1) personal jurisdiction; and (2) the merits of Plaintiffs' FACE Act and Ku Klux Klan Act claims. The Court will address each below.

### A.    There is personal jurisdiction over the Organizing Defendants.

Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. *See* Fed. R. Civ. P. 4(k)(1)(A); *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1089 (9th Cir. 2023). California's long-arm statute, Cal. Civ. Proc. Code § 410.10, provides for personal jurisdiction to the maximum extent that the Fourteenth Amendment's Due Process Clause allows. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). Therefore, the jurisdictional analyses under state law and federal due process are identical. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) ("Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same.").

### 1.    CodePink and Ibrahim are subject to general jurisdiction in California.

There are "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (citing *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)). A court may exercise general jurisdiction, extending to "any and all claims brought against a defendant," when a defendant is "essentially at home in the State." *Id.* (quoting *Goodyear*, 564 U.S. at 919) (internal quotation marks omitted). "[A]n individual is subject to general jurisdiction in her place of domicile," and a corporation is subject to general jurisdiction in "its place of incorporation and principal place of business." *Id.* (quoting *Goodyear*, 564 U.S. at 919) (internal quotation marks omitted).

Two of the Organizing Defendants, CodePink and Ibrahim, are California residents. *See* FAC ¶¶ 40-41, 47, 94 (alleging that CodePink Women for Peace is a "registered California entity" that is headquartered in California, CodePink Action Fund is also a "registered California entity," and that

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|----------|------------------------|------|---------------|

| Title | *StandWithUs Center for Legal Justice v. CodePink et al* |
|-------|----------------------------------------------------------|

Ibrahim is a resident of Mission Viejo, California). CodePink and Ibrahim are therefore subject to general jurisdiction in California.

### 2.    There is specific jurisdiction over PYM and Schirf in California.

The remaining Organizing Defendants—PYM and Schirf—are not California residents. Nor do they have "affiliations with the State…so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear,* 564 U.S. at 919. Therefore, personal jurisdiction over them must rest on specific jurisdiction.

For a court to exercise specific jurisdiction over a nonresident defendant, three requirements must be met: (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (cleaned up). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802. If Plaintiffs carry their burden, the burden shifts to Defendants under the third prong to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

### i.    Purposeful Direction

A defendant's activities are purposefully directed at the forum state if the defendant: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (often referred to as the "*Calder* effects" test). The Court takes each prong in turn.

The Organizing Defendants committed an intentional act. This Court "construe[s] 'intent'…as

Initials of Preparer                                                        :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. The Organizing Defendants committed an intentional act when they made social media posts urging their followers to protest at the Synagogue on June 23, 2024. *Cf. id.* (placing a newspaper advertisement was an intentional act); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (operating a passive website was an intentional act); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1088 (9th Cir. 2000) (sending a letter was an intentional act).

"The express aiming requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011) (cleaned up). The purpose of the requirement is to demonstrate that the defendant's acts are not "untargeted negligence, but rather were performed for the very purpose of having their consequences felt in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002) (quoting *Brainerd v. Governors of the Univ. of Alberta,* 873 F.2d 1257, 1259–60 (9th Cir.1989)) (internal quotation marks omitted).

Although the Organizing Defendants may not have specifically targeted the individual Plaintiffs in this case, they clearly aimed their conduct at California. Their social media posts identified the Synagogue by its Los Angeles address and urged others to protest there. *See* FAC ¶¶ 212-26. In other words, the Organizing Defendants' posts were "performed for the very purpose of having their consequences felt in the forum state." *Dole Food Co.*, 303 F.3d at 1112. Therefore, the express aiming prong of the *Calder* effects test is met.

Lastly, the Organizing Defendants' conduct must have "caused harm that [they] knew was likely to be suffered in the forum." *Brayton Purcell*, 606 F.3d at 1131 (citing *Yahoo!*, 433 F.3d at 1206). "This element is satisfied when defendant's intentional act has foreseeable effects in the forum." *Id.* (quoting *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)) (internal quotation marks omitted).

Here, it was certainly foreseeable that the Organizing Defendants' social media posts would lead

Initials of Preparer                    :

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|----------|-----------------------|------|---------------|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

to a disruptive riot at the Synagogue—that was their goal. They explicitly called on followers to protest the Aliyah Event and did so using inflammatory language and symbols. CodePink used an inverted red triangle, a symbol historically linked to violence against Jews, while PYM warned there would be "no peace" without "justice." Given the event's alleged religious nature, it was foreseeable that such rhetoric would incite a disruptive protest that blocked access to religious services. Accordingly, Plaintiffs have adequately alleged foreseeable harm, satisfying the final prong of the *Calder* effects test.

### ii.    Claim Arising Out of, or Related to, Forum-Related Activities

A claim arises out of or relates to a defendant's forum-related activities when there is a direct connection between those activities and the alleged harm. *See Ford Motor Co.*, 592 U.S. at 362. That is plainly the case here. Plaintiffs' claims are based on the same conduct that connects the Organizing Defendants to California: their social media posts urging people to protest at a specific Los Angeles synagogue. Because the forum-related activity—organizing the protest through online posts—is the same conduct that gives rise to Plaintiffs' claim, the second prong of specific jurisdiction is plainly met.

### iii.    Reasonableness

Courts evaluate the reasonableness of exercising personal jurisdiction under the following factors:

(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1099 (9th Cir. 2023).

The Organizing Defendants only contest the first factor, arguing: (1) that Schirf "has no residence or presence in California…and is not alleged to have sent any funds to California or done anything else in

Initials of Preparer

:

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

California;" and (2) that no allegations indicate that PYM "owns property in California, has filed lawsuits in California, or has done anything other than sharing a social media post to purposefully seek protection under California law." ECF No. 96 at 11.

However, "the extent of the defendant's purposeful interjection into the forum is analogous to the purposeful direction factor." *Impossible Foods*, 80 F.4th at 1099 (quoting *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 984 (9th Cir. 2021)) (cleaned up). Personal jurisdiction is reasonable in California for largely the same reasons as articulated above. While what the Organizing Defendants claim about PYM and Schirf is true—that they have *few* California connections—the California connection they have, via the social media post made by PYM on a social media account that Schirf had control over, suffices as a contact for personal jurisdiction.

The remaining factors are uncontested by the Organizing Defendants and are either irrelevant or favor Plaintiffs. Certainly, they do not present a "compelling case" against personal jurisdiction. Therefore, the exercise of personal jurisdiction is reasonable.

In sum, Plaintiffs have sufficiently plead general jurisdiction over CodePink and Ibrahim and specific jurisdiction over the remaining Organizing Defendants.

**B.     Plaintiffs fail to state a claim under Ku Klux Klan Act.**

To state a claim under the Ku Klux Klan Act—also known as 42 U.S.C. § 1985(3)—Plaintiffs must allege four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of the equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joinders of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983); *see also* 42 U.S.C. § 1985(3).

Moreover, if a plaintiff alleges a conspiracy to infringe a person's First or Fourteenth Amendment

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|----------|------------------------|------|---------------|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

rights, then they must allege a fifth element: state action. As the Supreme Court put it, a conspiracy to infringe First or Fourteenth Amendment rights "is not a violation of § 1985(3) unless it is proved that the state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state." *Scott*, 463 U.S. at 830 (1983).

Here, Plaintiffs allege a conspiracy to violate their "rights under the First and Fourteenth Amendments," specifically their "First and Fourteenth Amendment rights to practice their religion." FAC ¶¶ 410, 416. They must therefore allege state action. *See Scott*, 463 U.S. at 830. They do not do so. Quite the opposite, Plaintiffs make several allegations that suggest the state explicitly *disapproved* of the alleged conspiracy. *See id.* ¶¶ 342-45 (detailing responses by Los Angeles mayor, California governor, and U.S. President to the events of June 23, 2024, all of whom "roundly condemned" the mob blocking the entrance).

Plaintiffs do not argue that they have alleged state action. Instead, they rely on *Griffin* to argue that a purely private conspiracy can be actionable under § 1985(3) if motivated by discriminatory animus, and that their allegations of animus by the Organizing Defendants thus eliminate the need to show state involvement. *See, e.g.*, ECF No. 108 at 15-16. Not so.

In *Scott*, the Supreme Court examined *Griffin* and clarified that while § 1985(3) does not expressly require state action, the rights it protects—such as those under the First and Fourteenth Amendments—do. *Scott*, 463 U.S. at 832-33. The Court explained that "the Fourteenth Amendment protects the individual against state action," and the First Amendment "restrains only official conduct." *Id.* It rejected the idea that § 1985(3) could reach purely private conduct when the right at issue—like free speech or equal protection—is enforceable only against the state. As the Court put it, "it would be untenable" to say those constitutional rights could "be violated by a conspiracy that did not somehow involve or affect a state." *Id.* at 831.

In short, Plaintiffs' reliance on *Griffin* is misplaced. Section 1985(3) claims based on a conspiracy to violate a person's First or Fourteenth Amendment rights require state action. *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1171 (9th Cir. 2021) (holding that Section 1985(3)'s Equal Protection

Initials of Preparer                          :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

Clause "requires at least one of the wrongdoers in the alleged conspiracy to be a state actor") (citing *Scott*, 463 U.S. at 830). Plaintiffs do not allege state action, so their Ku Klux Klan Act claims must fail.

**C.      Plaintiffs sufficiently state a claim under the FACE Act against CodePink, but not PYM, Ibrahim, or Schirf.**

Plaintiffs next claim that the Organizing Defendants (CodePink, PYM, Ibrahim, and Schirf) violated the FACE Act. The FACE Act gives a private right of action to sue anyone who: (1) "by force or threat of force or by physical obstruction, (2) intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with" (3) "any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." 18 U.S.C. § 248(a).

Plaintiffs argue that the Organizing Defendants violated the FACE Act through two different actions: (1) their social media posts encouraging protest at the Aliyah Event; and (2) the actions of the protestors who allegedly obstructed access to the Synagogue. The Court will address each in turn.

**1.      Liability for Social Media Posts**

Up first is Plaintiffs' theory that the Organizing Defendants' social media posts violated the FACE Act. To support this theory, they must show that the posts themselves constitute "force," a "threat of force," or "physical obstruction." *See* 18 U.S.C. § 248(a). At the outset, the posts do not involve "force" or "physical obstruction"—they are purely speech-based communications.

**i.      The First FACE Act Element: Threat of Force**

So, for these posts to violate the FACE Act, they must constitute a "threat of force." In *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal of Life Activists*, the Ninth Circuit defined "threat of force" as a "true threat" that "comports with the First Amendment." 290 F.3d 1058, 1071 (9th Cir. 2002). A true threat is "a statement which, in the entire context and under all circumstances, a reasonable person would foresee would be interpreted by those to whom the statement is communicated as a serious

| | : | |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

expression of intent to inflict bodily harm on that person." *Id.*[7]

In determining whether this definition is met, courts consider "the entire factual context." *Id.* at 1075. A true threat need not be explicit—the "fact that a threat is subtle does not make it less of a threat." *Id.* Indeed, "a statement that does not explicitly threaten violence may be a true threat where a speaker makes a statement against a known background of targeted violence." *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 746 (9th Cir. 2021) (citing *Virginia v. Black*, 538 U.S. 343, 360 (because of its history as a white-supremacist symbol, burning a cross is "often" a true threat)).

Importantly, a "threat doesn't need to be communicated directly to its victim or specify when it will be carried out." *United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008). Quite the contrary, "a statement may qualify as a [true] threat even if it is never communicated to the victim." *United States v. Spring*, 305 F.3d 276, 280-81 (4th Cir. 2022).

Take, *United States v. Stewart*, 420 F.3d 1007 (9th Cir. 2005), for example. There, the defendant

---

[7] The Ninth Circuit defined "threat of force" under the FACE Act by reasoning that it must be a "true threat" that "comports with the First Amendment." *Planned Parenthood*, 290 F.3d at 1071. In *Planned Parenthood*, the court suggested this standard is objective—meaning that "no subjective intent to threaten is necessary." *United States v. Cassel*, 408 F.3d 622, 630 (9th Cir. 2005).
But this objective definition of "true threat" was seemingly overturned by the Supreme Court's decision in *Virginia v. Black*. There, the Supreme Court held that "[t]rue threats encompass those statements where the speaker *means to communicate* a serious expression of an intent to commit an act of unlawful violence to particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003) (emphasis added). The Ninth Circuit interpreted *Black* as requiring "that the speaker intend for his language to *threaten* the victim." *Cassel*, 408 F.3d at 631. But to confuse things further, *Cassel*'s embrace of a subjective intent requirement has since been put in doubt by the Supreme Court's recent decision in *Counterman v. Colorado*, which held that courts should apply a "recklessness" standard when evaluating true threats. *See* 600 U.S. 66, 79 (2023)
The Ninth Circuit has not updated its definition of "threat of force" under the FACE Act to reflect any of these decisions. But ultimately, the language of the FACE Act renders this moot point. The FACE Act "requires that the threat of force be made with the intent to intimidate." *Planned Parenthood*, 290 F.3d at 1076. So, any "threat of force" that violates the FACE Act will necessarily survive *Cassel*'s intent requirement and *Counterman*'s recklessness standard.

Initials of Preparer

: 

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

prisoner told another prisoner "that he wanted to target a judge and 'string the motherfucker up and cut her throat'" and offered "to provide weapons and money [as a] reward." *Id.* at 1018. The Ninth Circuit held that the defendant's statement "can reasonably be interpreted as a serious expression of intent to harm or assault" the federal judge, even though the defendant never communicated his threat directly to her. *Id.*

With the contours of a true threat defined, the Court now turns to the social media posts at issue.

    **a.**    **CodePink's social media posts are plausibly true threats.**

The CodePink social media post at issue claims that "A MEGA ZIONIST REAL ESTATE EVENT IS IN LA THIS WEEK" and asks CodePink's followers to "HELP US ADVOCATE THE STOP OF HOMES BEING SOLD ON PALESTINIAN LAND!" FAC ¶¶ 212-13. Neither statement contains a threat on its face.

But CodePink's social media posts are not limited to these innocuous statements. Plaintiffs allege that in the social media posts, CodePink placed the date of the Aliyah Event and the address of the Synagogue inside an inverted red triangle. *Id.* ¶ 217. This inverted triangle, according to Plaintiffs, is used by "Hamas and its supporters (particularly those on social media) . . . as a symbol for Hamas and to celebrate its use of violence against Jews and Israelis." *Id.* ¶ 218. The inverted triangle also purportedly acts "as a target designator to identify Jews and Jewish targets for extermination." *Id.* ¶ 219. In short, Plaintiffs allege that when CodePink placed the date of the Aliyah Event and the address of the Synagogue inside an inverted red triangle, they were calling on Hamas supporters to take violent action at the synagogue.

This use of the inverted red triangle, as alleged, plausibly constitutes a true threat. A true threat is one in which, "in the entire context and under all circumstances," a "reasonable person" would interpret it "as a serious expression of intent to inflict bodily harm." *Planned Parenthood*, 290 F.3d at 1071. That is exactly how a reasonable person would interpret CodePink's use of the red triangle. And for multiple reasons.

Initials of Preparer                    :          

                                                 PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

**First**, the legal reality is that the Court must take Plaintiffs' allegations as true and make all reasonable inferences in their favor. So, if Plaintiffs allege that Hamas and their supporters commonly use the inverted red triangle as a call for violence, the Court must assume that is true and infer that other people know about its meaning. *See Retail Prop. Trust*, 768 F.3d at 945 ("In reviewing a motion to dismiss pursuant to Rule 12(b)(6), [the court] must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party.").

And while the Court certainly does not need to consider conclusory allegations, Plaintiffs do not invent their assertion about the inverted red triangles out of thin air. They cite to a report from the Anti-Defamation League, which describes the inverted red triangle "as a symbol that in certain cases can signify support for violent Palestinian resistance against Israel" and "as a way to call for further violent resistance." *See* FAC ¶ 219, n.68.

**Second**, the context in which CodePink made its social media posts makes it plausible that a reasonable person would understand the meaning of the inverted red triangle and interpret it as a threat. The post was made in June 2024, less than nine months after the widely publicized October 7, 2023 terrorist attack by Hamas. At that time, the conflict between Israel and Hamas dominated headlines. Given this backdrop, it is entirely plausible that a reasonable person would recognize symbols associated with Hamas—particularly those linked to violence—and view their use as threatening.

**Third**, CodePink's history of violent and disruptive protests makes it more likely that a reasonable person would interpret their use of the inverted red triangle as a threat. Courts consider context when assessing whether a statement qualifies as a true threat, including "whether the victim ha[s] reason to believe that the [alleged threat] maker had a propensity to engage in violence." *See Planned Parenthood*, 290 F.3d at 1078 (approving the Eighth Circuit's consideration of this factor). Here, Plaintiffs allege that CodePink has a well-documented record of protests that "often result in violence, arrests, and unlawful disruptions." FAC ¶ 61.

For example, Plaintiffs claim that in July 2024, a CodePink member "assaulted Congressman Derrick Van Orden during a CodePink protest." *Id.* ¶ 76. They further allege that in November 2024,

Initials of Preparer     : 

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

"CodePink operatives" "harassed CNN anchor Dana Bash" at a synagogue while she was attending a religious service. *Id.* ¶ 78; *see also id.* ¶¶ 66–71, 73-77 (detailing additional incidents of protest-related violence or disruption).

Given the widespread media attention surrounding pro-Palestine protests after the October 2023 Hamas attacks, it is plausible that a reasonable person would be aware of CodePink's reputation. That awareness, combined with the use of a symbol like the inverted red triangle, supports the inference that a reasonable person could view the posts as threatening—particularly in light of Plaintiffs' allegation that "CodePink has long supported terrorists." *Id.* ¶ 43.

**Fourth**, CodePink's use of the inverted red triangle, as alleged, is meaningfully similar to the "GUILTY" posters that the Ninth Circuit held were true threats in *Planned Parenthood*. 290 F.3d at 1085-86. There, the Ninth Circuit considered whether anti-abortion protesters violated the FACE Act by displaying, at various press conferences and anti-abortion events, posters that featured the word "GUILTY" along with the names of abortion providers. *Id.* at 1065-66. The court found the "GUILTY" posters to be true threats because they closely resembled earlier "WANTED" posters, each of which named a doctor who was later murdered. *Id.* at 1085-86. The court concluded that, to doctors performing abortions, the posters conveyed the message: "You're Wanted or You're Guilty; You'll be shot or Killed." *Id.*

This case bears striking similarities. Like the "GUILTY" posters, CodePink's social media posts do not "contain[] any language that is overtly threatening." *See id.* But the threat lies in the context and the symbolism. In *Planned Parenthood*, the doctors who were named on the "GUILTY" posters were later murdered—demonstrating a deadly pattern where inclusion on the poster signaled imminent danger. *Id.* at 1085-86. The same logic applies here. Plaintiffs alleged that CodePink placed the Synagogue's address inside an inverted red triangle—a symbol Plaintiffs allege is used by Hamas to identify targets for violence. So, it is not just symbolism; it is a call for action. When that symbol is used to mark a specific location, it suggests that violence will follow. Just as abortion providers reasonably understood the "GUILTY" posters to mean, "You're Wanted or You're Guilty; You'll be shot or Killed," *id.*; a reasonable Jewish observer could interpret CodePink's posts as saying: "You've been marked; this place is a target."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|----------|------------------------|------|---------------|

| Title | *StandWithUs Center for Legal Justice v. CodePink et al* |
|-------|----------------------------------------------------------|

In short, like the "GUILTY" posters, CodePink's posts "connote something they do not literally say, yet both the actor and the recipient get the message." *See id.*

And while it is certainly true that CodePink did not direct its social media posts directly at Jewish worshipers, that kind of targeting isn't required for FACE Act liability. In *Planned Parenthood*, the defendants didn't deliver their threatening messages straight to the abortion providers either. Instead, they displayed the "GUILTY" posters at press conferences, published them in pro-life magazines, and showed them at events they organized. *Planned Parenthood*, 290 F.3d at 1064-65. The messages were directed at their supporters, not their targets—just like CodePink's posts here. Just as this did not bar FACE Act liability in *Planned Parenthood*, it does not do so here.

In sum, Plaintiffs' have sufficiently alleged that CodePink's social media posts constitute a true threat. To the extent that CodePink argues that Plaintiffs' allegations are not true or that the reasonable inferences made in their favor are not accurate, those are arguments better made after the pleadings stage. After all, "it is a jury question whether actions and communications are clearly outside the ambit of First Amendment protection." *Planned Parenthood*, 290 F.3d at 1069.

### b. PYM's social media posts are not plausibly true threats.

The PYM social media posts call on their supports to "STAND AGAINST SETTLER EXPANSION AT SUNDAY'S REAL ESTATE EVENT SELLING HOMES TO BUILD 'ANGLO NEIGHBORHOODS' IN PALESTINE." FAC ¶¶ 221. The post continues by describing the Aliyah Event as a "blatant example of land theft" perpetrated by "[r]acist settler expansionists." *Id.* ¶ 222. The posts finish with "FROM THE BELLY OF THE BEAST NO JUSTICE, NO PEACE." *Id.* ¶ 223. Plaintiffs allege, "upon information and belief," that the phrase "belly of the beast" refers to a synagogue. *Id.* ¶ 224.

Even if "belly of the beast" refers to the Synagogue, these posts are not true threats. At most, they express a political message: if there is no justice for Palestinians, there will be no peace—even in religious spaces.

Initials of Preparer                :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

That kind of message is too vague to qualify as a true threat. To be sure, the posts may invoke violent imagery—"no peace" inside of the Synagogue. But "mere advocacy of the use of force or violence does not remove speech from the protection of the First Amendment." *N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (1982). For example, in *Claiborne*, even the statement, "if we catch any of you going in any of them racist stores, we're gonna break your damn neck," was protected speech. *Id.* at 902, 929.

To lose this First Amendment protection, a statement must be "a ***serious expression of an intent*** to commit an act of unlawful violence to a particular individual or group of individuals"—i.e., a "true threat." *Black*, 538 U.S. at 359 (emphasis added). PYM's post does not meet that standard. It targets no individual. It makes no specific threat.

The Supreme Court has upheld similar speech. In *Watts v. United States*, a protester said: "if they ever make me carry a rifle, the first man I want to get in my sights is L.B.J." 394 U.S. 705, 706 (1969). The Court held that the statement was not a true threat. *Id.* at 708. Rather, it was "political hyperbole." *Id.*

PYM's post follows the same structure: a conditional statement tied to a political grievance. To paraphrase PYM's posts, "if there is no justice, then there will be no peace—even in a synagogue" mirrors the logic of the statement in *Watts*: if the speaker is drafted, he will target the President. Both are vague expressions of protest—not direct, credible threats. Like the language in *Watts*, PYM's statement is "political hyperbole," "expressly conditional," and too imprecise to strip it of First Amendment Protection. *See id.*

This difference between PYM's posts and true threats is well illustrated by *Planned Parenthood*. There, anti-abortion activists published "GUILTY" posters naming abortion providers that closely resembled earlier "WANTED" posters. *Id.* at 1085. After doctors appeared on those earlier posters, they were murdered. *Id.* at 1085. In that context, the Ninth Circuit said the "GUILTY" posters' message was clear: "You're Wanted or You're Guilty; You'll be shot or Killed." *Id.*

And of course, the Court applied that same reasoning to CodePink's posts. CodePink's posts

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

placed the Synagogue's address in an inverted red triangle. Plaintiffs alleged that symbol is used by Hamas to identify Jews and Jewish targets for "extermination." FAC ¶ 219. That kind of symbol, placed over a specific address, sends a "serious expression of intent to inflict bodily harm." *See Planned Parenthood*, 290 F.3d at 1071.

PYM's posts are different. They do not use symbols historically linked to violence. And there are no allegations that phrases like "no justice, no peace" or "belly of the beast" have led to violence. Without that kind of context or history, there is no basis to infer that these posts are true threats. They are political speech that call for protest—such speech is protected by the First Amendment. *See Humanitarian L. Project v. Reno*, 205 F.3d 1130, 1137 (9th Cir. 2000) ("[A]dvocacy is pure speech protected by the First Amendment.").

Because PYM's posts are not true threats, they cannot serve as a "threat of force" under the FACE Act. The Court therefore does not need to analyze Plaintiffs' FACE Act claims against PYM any further—they fail at step one.

### ii.      The Remaining FACE Act Elements

Since Plaintiffs' have established that CodePink's social media posts constitute a "threat of force," the Court turns to the second and third elements of Plaintiffs' FACE Act claim: that CodePink's posts (2) "intentionally injuries, intimidates or interferes with or attempts to injure, intimidate or interfere with" (3) "any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." 18 U.SC. § 248(a).

The statute defines "intimidate" as placing a person "in reasonable apprehension of bodily harm." *Id.* § 248(e)(3). It defines "interfere with" to mean "restrict[ing] a person's freedom of movement." *Id.* § 248(e)(2).

Plaintiffs' allegations satisfy these elements. CodePink's posts included the Synagogue's address inside inverted red triangles—symbols that, according to the Complaint, are used "as a target designator

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

to identify Jew and Jewish targets for extermination." FAC ¶ 219. Taking that allegation as true, the inclusion of these symbols could plausibly be seen as an attempt to either:

1. Intimidate Jewish worshipers by conveying a threat of extermination—causing "reasonable apprehension of bodily harm," or
2. Incite others to disrupt access to the Synagogue—thereby "restrict[ing] a person's freedom of movement."

Either theory is sufficient to satisfy the FACE Act's second and third elements.[8]

**2.      Liability for the Actions of Individual Protestors**

In addition to claiming that CodePink and PYM violated the FACE Act through their social media posts, Plaintiffs also contend that they are liable for the actions of those who participated in the riot at the synagogue.

As a threshold matter, Plaintiffs sufficiently allege that at least some of the individual protestors, who Plaintiffs allege are CodePink and PYM members,[9] violated the FACE Act. Plaintiffs allege that a

---

[8] CodePink surely contests this conclusion and would argue that its use of the inverted red triangle did not constitute an intention to interfere with or intimidate potential worshippers. That may be true, but the argument is premature. This is a motion to dismiss—the Court must take Plaintiffs' allegations as true and make all inferences in their favor. CodePink must wait until summary judgment to present evidence rebutting Plaintiffs' characterization of its social media posts.

[9] To be sure, Plaintiffs allege only on information and belief that members of CodePink and PYM were among those who physically obstructed access to the Synagogue. FAC ¶¶ 46, 59. But this does not automatically mean the Court cannot consider these allegations. "The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010). Whether CodePink and PYM members were among those who blocked access is precisely the kind of fact "peculiarly within the possession and control" of those organizations. Demonstrators do not typically announce their affiliations while protesting (particularly when violating federal statutes), and Plaintiffs have no ready access to internal rosters or communications confirming who participated. At the pleading stage, it is more reasonable for Plaintiffs to infer, based on CodePink and PYM's inflammatory social media posts, that their members likely took part in the unlawful obstruction.

|  | : |  |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|----------|------------------------|------|---------------|

| Title | *StandWithUs Center for Legal Justice v. CodePink et al* |
|-------|-----------------------------------------------------------|

mob "physically obstructed access to the Synagogue" and "donned masks and held signs, threw punches at Synagogue members and Jews," and "engaged in other acts of violence." FAC ¶¶ 228, 230. In other words, these protesters "by force or threat of force or by physical obstruction, intentionally . . . intimidate[d]" Jewish people "lawfully . . . seeking to exercise the First Amendment right of religious freedom at a place of religious worship." *See* 18 U.S.C. § 248(a).

Accordingly, the question for the Court is whether CodePink and PYM can be held liable for the actions of their members. The FACE Act says nothing about vicarious liability. *See* 18 U.S.C. § 248. Nor has any court ever explicitly addressed the question. The Court will therefore first determine what (if any) standard of vicarious liability applies to the FACE Act.[10] It will then apply that standard to Plaintiffs' allegations.

### i.    Traditional principles of vicarious liability apply to the FACE Act.

"The general rule regarding actions under civil rights statutes is that *respondeat superior* applies." *United States v. Town of Colorado City*, 935 F.3d 804, 808 (9th Cir. 2019). Indeed, "[w]here Congress, in other civil rights statutes, has not expressed a contrary intent, the Court has drawn the inference that it intended ordinary rules [of vicarious liability] to apply." *Meyer v. Holley*, 537 U.S. 280, 285 (2003) (holding that ordinary principles of vicarious liability apply to the Fair Housing Act); *see also Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 754-55 (1998) (holding that ordinary vicarious liability principles apply to Title VII of the Civil Rights Act); *Sony Corp. of AM. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 (1984) (reading vicarious liability into the Copyright Act because "vicarious liability is imposed in virtually all areas of the law"); *cf. Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658,

---

[10] Plaintiffs attempt to hold CodePink and PYM liable for the actions of their members based solely on the fact that it was, in their view, "reasonably foreseeable" that CodePink and PYM's social media posts would lead those members to violate the FACE Act. But they cite no authority for this theory, and nothing in the text of the FACE Act supports it. More fundamentally, imposing liability on that basis would almost certainly violate the First Amendment, which forbids punishing speech on a negligence standard. *See Counterman v. Colorado*, 600 U.S. 66, 76 (2023 (holding that the minimum mens rea required to punish speech is recklessness, not negligence). The Court accordingly rejects this argument.

|  |  | : |  |
|--|--|---|--|

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

691 (1978) (holding that vicarious liability does not apply to Section 1983 cases based on "the language of § 1983, read against the background of the [statute's] legislative history").

Congress has "not expressed a contrary intent" that anything but the "general rule[s]" of vicarious liability should apply to the FACE Act. *See Meyer*, 537 U.S. at 285; *Town of Colorado City*, 935 F.3d at 808. To start, nothing in the FACE Act's language suggests such an intent. *Cf. Monell*, 436 U.S. at 692 (holding that vicarious liability does not apply because Section 1983 imposes liability only where a state actor "under color of some official policy, 'causes' an employee to violate another's constitutional rights").

The FACE Act's legislative history is similarly consistent with traditional vicarious liability. "The legislative history [of the FACE Act] demonstrates that subsection (a)(2) of FACE was enacted as 'a reflection of the profound concern of the Congress over private intrusions of religious worship.'" *Towns v. Cornerstone Baptist Church*, No. 14-cv-6809, 2015 WL 13738012, at *4 (E.D.N.Y. July 20, 2015)[11] (quoting H.R. Rep. No. 103-488, at 8-9 (1994)). Traditional principles of vicarious liability further this purpose. Indeed, it would be contrary to Congress's "profound concern" to allow organizations that interfere with religious worship through the actions of their agents to avoid liability.

Moreover, while courts have not squarely addressed whether the FACE Act permits vicarious liability, they have implicitly held that it does. In *Planned Parenthood v. American Coalition of Life Activists*, 290 F.3d 1059 (9th Cir. 2002), for example, the Ninth Circuit held **an organization**—the American Coalition of Life Activists—liable under the FACE Act, thus suggesting that vicarious liability applies.

---

[11] *Report and recommendation adopted sub nom. Towns v. Church*, No. 14-cv-6809, 2016 WL 792406 (E.D.N.Y. Feb. 29, 2016).

Initials of Preparer          :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

ii.    **Under traditional vicarious liability principles, CodePink and PYM can only be held liable for the acts of their agents acting within the scope of their authority.**

Now that the Court has determined that traditional principles of vicarious liability apply to the FACE Act, it must determine how those principles apply to CodePink and PYM. CodePink is a California nonprofit corporation. FAC ¶¶ 40, 47. PYM is an unincorporated association with chapters in multiple locations, including California. *Id.* ¶ 49.

While these are different types of organizations, the same standard of vicarious liability applies to both: "any [] organization of course may be held responsible for the acts of its agents . . . that are undertaken within the scope of their actual or apparent authority." *Claiborne*, 458 U.S. at 930 (cleaned up); *see also Meyer*, 537 U.S. at 285 ("It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment.").

This rule applies to both unincorporated associations and corporations. Cal. Corp. Code § 18250 ("Except as otherwise provided by law, an unincorporated association is liable for . . . the act or omission of its director, officer, agent, or employee, acting within the scope of the office, agency or employment."); *United States v. Trans Cont'l Affiliates*, No. 95-cv-1627, 1997 WL 26297, at *5 (N.D. Cal. Jan. 8, 1997) ("A corporation can only act through its agents. Therefore, it has been well established that a corporation may be held liable for the acts of its agents within the scope of their authority."); *United States v. Aerolite Chrome Corp.*, 990 F.2d 1261, at *2 (9th Cir. 1993) ("It is well-settled law that a corporation can act only through its officers and agents."). Applying these "traditional vicarious liability rules" to this case, CodePink and PYM are only liable "for the acts of their agents" acting "in the scope of their authority." *See Meyer*, 537 U.S. at 285.

This approach is also consistent with how the Ninth Circuit implicitly found vicarious liability in *Planned Parenthood*. There, the court upheld FACE Act claims against the organization American Coalition of Life Activists ("ACLA") for displaying threatening posters. *Planned Parenthood*, 290 F.3d

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

at 1063. Importantly, the posters were presented at ACLA's own events, and ACLA's leadership was directly involved. *Id.* at 1064 (describing the individual defendants involved in the presentation of the threatening posters as "directors of ACLA" who were "actively involved in its affairs"); *id.* at 1064-65 ("ACLA presented the Deadly Dozen poster during a January 25, 1995 press conference"). So yes, *Planned Parenthood* confirms that organizations can be liable under the FACE Act—but only when their own agents, acting within the scope of their roles, are the ones carrying out the conduct. That's exactly what happened there: ACLA's directors made the threats, at ACLA's events, on ACLA's behalf. *See id.*

> **iii.    Plaintiffs have not plausibly alleged that the people who violated the FACE Act were agents of the Organizing Defendants acting within the scope of their authority.**

With the standard of vicarious liability applied, the final question for the Court is whether Plaintiffs have plausibly alleged that those who violated the FACE Act were agents of CodePink or PYM acting within the scope of their authority. The Court, for the following reasons, holds that the answer is no.

An agency relationship exists when "one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and ***the agent manifests assent or otherwise consents to so act***." *Henderson v. United Air Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019) (quoting Restatement (Third) of Agency § 1.01) (emphasis added).[12] There are three ways to create an agency relationship: actual authority, apparent authority, and ratification.

"While the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed." *Sapan v. Shore Cap. Corp.*, No. 8:23-cv-01974, 2024 WL 4002620, at *7 (C.D. Cal. May 31, 2024). Plaintiffs do not allege facts sufficient facts to establish any theory of agency.

---

[12] The Court applies federal agency law because the FACE Act is a federal statute, and courts often apply federal agency law when evaluating vicarious liability for federal statutes. *See, e.g.*, *Henderson*, 918 F.3d at 1073 (applying federal agency law when evaluating vicarious liability under the Telephone Consumer Protection Act).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

###### a.    Actual Authority

Actual authority may be express or implied. Express authority "derives from an act specifically mentioned to be done in a written or oral communication." *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017) (quotations omitted). Implied authority, on the other hand, "comes from a general statement of what the agent is supposed to do," in which case "an agent is said to have the implied authority to do acts consistent with that direction." *Id.* Either way, to form an actual agency relationship, "both the principal and the agent must manifest assent to the principal's right to control the agent." *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010) (citing Restatement (Third) Agency § 1.01).

Plaintiffs do not plausibly allege that the protestors had actual authority to act as agents of CodePink or PYM, as they do not allege any facts showing that the protestors "manifest[ed] assent to [CodePink or PYM's] right to control them" or an assent to "act on the [their] behalf." *See id.* (right to control); *Henderson*, 918 F.3d at 1073 (act on their behalf). In fact, beyond alleging "on information and belief" that members of CodePink and PYM "were among those who physically obstructed [Plaintiffs] from accessing the Synagogue," Plaintiffs allege ***no facts*** regarding the relationship between CodePink and PYM on one side and the allegedly culpable members on the other.[13]

Rather, Plaintiffs (incorrectly) rely on their allegations that CodePink and PYM endorsed disruptive and/or violent protest through their social media posts. But even if this is true, that CodePink and PYM *instructed* their members to protest violently does not mean that those members agreed to do so *on behalf of* CodePink and PYM and *subject to* their control. *See Doe v. Mckesson*, 71 F.4th 278, 287 (5th Cir. 2023) (holding that a protester was not an agent of the defendant, even though he "organized the protest, was its leader, and often directed the protesters' movements" because the plaintiff "fail[e]d to

---

[13] To plead actual authority, Plaintiffs would need to plausibly allege that the members obstructed the Synagogue on behalf of CodePink and PYM. This could be shown in many ways. For example, Plaintiffs could allege that the protesters wore CodePink or PYM paraphernalia, chanted CodePink or PYM's names—any allegation showing that the members were acting as agents of CodePink or PYM, rather than individuals who opposed the activities at the Synagogue, would suffice. Plaintiffs make no such allegations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|----------|------------------------|------|----------------|

| Title | *StandWithUs Center for Legal Justice v. CodePink et al* |
|-------|---------------------------------------------------------|

allege that the protesters . . . were subject to [the defendant's] right to control").

### b.    Apparent Authority

Apparent authority exists when a principal says or does something—or allows something to happen—that reasonably leads a third party to believe that someone else (i.e., the purported "agent") has the power to act or speak on the principal's behalf, even if they don't have that authority.[14]  *See Salyers v. Metro Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017).

No such authority exists here. Plaintiffs allege no facts plausibly showing that anyone present at the Synagogue "reasonably . . . believe[d]" that those obstructing the Synagogue's entrance or otherwise violating the FACE Act were doing so on behalf of CodePink or PYM.[15]  *See id.*

### c.    Ratification

"Ratification is the affirmance of a prior act done by another," in which case "the act is given effect as if done by an agent acting with actual authority." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting Restatement (Third) of Agency § 4.01).

There are no allegations that CodePink or PYM affirmed the obstruction of the Synagogue or any other FACE Act violation that occurred during the riot. Rather, CodePink's social media posts after the riots construe their members protest as "peaceful," and accuse counter-protestors of violence. *See* FAC ¶¶ 328-41. Meanwhile, no facts are alleged regarding any PYM statements about the riot after the fact. While Plaintiffs surely contest CodePink's characterizations of the riot, those characterizations are not evidence of CodePink or PYM ratifying FACE Act violations.

---

[14] In more formal terms, apparent authority "results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have." *Salyers v. Metro Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017).

[15] Again, information about individuals in the mob is almost entirely missing from the allegations in the complaint. No facts point to even circumstantial indications of apparent authority, such as individuals wearing CodePink or PYM regalia.

Initials of Preparer                    :
                                        PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

In sum, the facts alleged do not "support a reasonable inference" of an agency relationship between the Organizing Defendants and any of its members who violated the FACE Act. *See Sapan*, 2024 WL 4002620, at *7. Without this relationship, CodePink and PYM cannot be vicariously liable for the actions of the protestors.

Therefore, the FACE Act claims against PYM must be dismissed in their entirety because PYM's social media post is not plausibly a threat nor have Plaintiffs sufficiently alleged an agency relationship between PYM and any protestors at the Synagogue. The Court similarly dismisses the FACE Act claims against Schirf and Ibrahim. The only allegations against Schirf and Ibrahim are that they controlled PYM's social media accounts. As explained above, PYM's social media posts are not a basis for liability and therefore Schirf and Ibrahim are not liable.

In contrast, although Plaintiffs also fail to sufficiently allege an agency relationship between CodePink and the protesters, they have plausibly alleged that CodePink independently violated the Act through its threatening social media posts. Accordingly, Defendants' motion to dismiss Plaintiffs' FACE Act claim against CodePink is denied.

## VI. The Sponsoring Defendants

As a preliminary matter, Plaintiffs' claims against the Sponsoring Defendants fail because they depend on PYM's liability. Plaintiffs do not allege that the Sponsoring Defendants organized or participated in the protest themselves; rather, they seek to hold them liable solely for financially supporting PYM. Because the Court has found that Plaintiffs fail to state a claim against PYM, the claims against the Sponsoring Defendants necessarily fail as well.

But even if Plaintiffs could state a claim against PYM, the Sponsoring Defendants' fiscal sponsorship of PYM is not enough to establish their liability or support personal jurisdiction over them. Accordingly, the Court grants the Sponsoring Defendants' motion to dismiss for these additional reasons, as explained below.

Initials of Preparer      :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

A.    **Fiscal Sponsorship**

The complaint describes fiscal sponsorship as an arrangement where a tax-exempt 501(c)(3) organization allows a non-exempt group to receive tax-deductible donations through it. According to Plaintiffs, the Sponsoring Defendants serve as PYM's fiscal sponsors, as PYM's website directed donors to send checks payable to the Sponsoring Defendants.

Plaintiffs argue that the Sponsoring Defendants' fiscal sponsorship of PYM creates an agency relationship that makes them liable as principals for PYM's actions. They rely on IRS Revenue Ruling 68-499, which states that "[a]n organization will not jeopardize its exemption under section 501(c)(3) of the Code, even though it distributes funds to nonexempt organizations, provided it ***retains control and discretion over use of the funds*** for 501(c)(3) purposes." Rev. Rule 68-489, 1962-2 C.B. 210 (1968) (emphasis added). Plaintiffs also invoke the presumption "that the ordinary course of business was followed and the law was obeyed; also that the official duty was regularly and faithfully performed." *United States v. 313.34 Acres of Land, More or Less, Situated in Jefferson Cnty., State of Wash.*, 923 F.2d 698, 703 (9th Cir. 1991) (quoting *United States v. State of Washington,* 233 F.2d 811, 816 (9th Cir. 1956)). Taken together, Plaintiffs contend, these principles require a finding that the Sponsoring Defendants exercised "control and discretion" over PYM and are therefore liable for its conduct.

Even assuming the Sponsoring Defendants complied with this IRS revenue ruling, their role as PYM's fiscal sponsors does not create a sufficient link to PYM's conduct to support liability or personal jurisdiction. That ruling requires fiscal sponsors to retain "control and discretion" over how donated funds are used, but only in order to preserve their tax-exempt status—not to create an agency relationship or vicarious liability.

Plaintiffs cite no legal authority holding that fiscal sponsorship alone creates such liability, and the Court finds none. The most relevant case Plaintiffs cite, *New York ex rel. TZAC, Inc. v. New Israel Fund*, 520 F. Supp. 3d 362 (S.D.N.Y.), actually undercuts their argument. There, a nonprofit was accused of misrepresenting its tax-exempt status by funding groups that engaged in political campaigning. *Id*. at 370. The court allowed the grantees' conduct to be attributed to the nonprofit—but only to assess whether the

Initials of Preparer                :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|----------|----------------------|------|---------------|

| Title | *StandWithUs Center for Legal Justice v. CodePink et al* |
|-------|----------------------------------------------------------|

nonprofit had misled the state on its tax forms. *Id*. at 388 (cleaned up). The court did not hold the nonprofit liable for grantees' actions themselves. All to say, this case does not support Plaintiffs' attempt to hold the Sponsoring Defendants liable for PYM's conduct.

Nor have Plaintiffs plausibly alleged an agency relationship between the Sponsoring Defendants and PYM. At most, Plaintiffs alleged that the Sponsoring Defendants exercised general "control and discretion" over funds donated to PYM and approved PYM's activities as aligning with their charitable purposes. But these vague assertions fall short of establishing an agency relationship. There are no allegations that the Sponsoring Defendants authorized, directed, or even knew about PYM's social media posts or the protest outside the Synagogue.[16] Nor are there any facts suggesting that PYM acted with actual or apparent authority on behalf of the Sponsoring Defendants. Without plausible allegations of authorization, control, or ratification, Plaintiffs have not stated a viable theory of agency or vicarious liability.

In short, Plaintiffs seek to hold the Sponsoring Defendants liable for PYM's actions without alleging any direct involvement, control, or endorsement. The Court declines to stretch fiscal sponsorship into a basis for liability. It accordingly dismisses the claim against the Sponsoring Defendants.

**B.      Personal Jurisdiction**

For similar reasons, Plaintiffs have failed to sufficiently allege the existence of personal jurisdiction over the Sponsoring Defendants. Plaintiffs allege almost no contacts by the Sponsoring Defendants that would submit them to personal jurisdiction in California. The Sponsoring Defendants are not residents of California. Plaintiffs do not allege that the Sponsoring Defendants—or any of their members—organized or participated in the mob. Nothing in the Complaint suggests that the Sponsoring Defendants purposefully directed any activities at California or otherwise availed themselves of the privileges of California. In other words, there are no allegations sufficient to support general or specific

---

[16] The allegations, based on the revenue ruling, are insufficient to show actual knowledge of the social media posts. Per the revenue ruling, at most the Sponsoring Defendants had some level of "control and oversight" over the use of their sponsoring funds. It does not logically follow that the Sponsoring Defendants have knowledge of all activities of PYM.

:

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06253-SVW-PVC | Date | June 13, 2025 |
|---|---|---|---|
| Title | *StandWithUs Center for Legal Justice v. CodePink et al* | | |

jurisdiction.

There is only one link between the Sponsoring Defendants and California: the Sponsoring Defendants' fiscal sponsorship relationship with PYM. This is not enough for personal jurisdiction. It does not create an agency relationship. And even if the Court viewed fiscal sponsorship as a contract, that alone is not enough to establish personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.") (emphasis in original).

In sum, Plaintiffs fail to establish that there is personal jurisdiction over the Sponsoring Defendants. This is yet another reason to dismiss the claims against them.


**VII.    Conclusion**

For the foregoing reasons, Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART. Specifically, the Court DENIES Defendants' motion to dismiss Plaintiffs' FACE Act claims against CodePink. The Court GRANTS Defendants' motions to dismiss Plaintiffs' remaining claims. The dismissed claims are dismissed WITHOUT PREJUDICE.

Plaintiffs are ordered to file an amended complaint within fourteen days consistent with this order.

**IT IS SO ORDERED.**

Initials of Preparer                          :

PMC