IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DANIEL FAORO,** *Plaintiff,* v. **JEWISH VOICE FOR PEACE,** *et al.*, *Defendants.* | **Case No. 1:25-cv-00289** Hon. Amy Berman Jackson |

### DEFENDANT PALESTINIAN YOUTH MOVEMENT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND FOR SANCTIONS AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Palestinian Youth Movement respectfully submits this memorandum of points and authorities in support of their motion to dismiss Plaintiff Daniel Faoro's ("Plaintiff") Verified Complaint ("Complaint"), ECF No. 1, and all claims brought against them, with prejudice.

### INTRODUCTION

Palestinian Youth Movement ("PYM") is a grassroots movement that organizes people of conscience around the country to advocate for the liberation of the Palestinian people and the end of the ongoing genocide in Palestine.[1] PYM members participate in conferences, provide educational workshops, and engage in frequent First Amendment activity, all motivated by their deeply held convictions.

This lawsuit seeks to punish PYM and the other Defendants for objecting to Israel's genocide and for engaging in expressive conduct at the core of the First Amendment's protections.

---

[1] *See* Palestinian Youth Movement, "Who We Are," https://palestinianyouthmovement.com/about.

1

At bottom, Plaintiff alleges that he was "inconvenienced" by a demonstration in Washington, D.C., on February 1, 2024, because it caused traffic.

When stripped of incendiary rhetoric and conclusory allegations, the Complaint fails on the most rudimentary pleading grounds. It does not identify *anything* that PYM did beyond advertising a rally at Union Station on February 1, 2024, on its social media account and posting updates on the event thereafter. Compl. ¶¶ 37, 48-49, 54. It does not allege any facts to support its conclusory allegation that PYM and the other Defendants "agree[d] to blockade traffic." *Id.* ¶ 37. Fairly read, the Complaint merely alleges that there was a protest in Washington, D.C., on February 1, 2024, and that Plaintiff was caught in traffic for less than an hour. *Id.* ¶ 36. Both protests and traffic are, of course, daily occurrences in Washington, D.C., but do not generally give rise to $5 million class action lawsuits.

The fact that this lawsuit is being brought at all might beggar belief if it were not clearly an effort by Plaintiff and his counsel to silence the views of those with whom they disagree. Whatever entitlement Plaintiff and his counsel have to their feelings on the views of PYM and the other Defendants, they have no such entitlement to haul them into federal court without any legal basis in a naked attempt to suppress their activism. As discussed below, the Complaint fails to state a claim for which relief can be granted on either count and this politically motivated lawsuit should be dismissed with prejudice without leave to amend.

## FACTUAL ALLEGATIONS

Plaintiff alleges that, on February 1, 2024, he experienced traffic on Route 50 on his way to Washington, D.C., that he believes was caused by various expressive assemblies taking place that morning at five intersections several miles from his location. Compl. ¶ 2. He further claims that he was stuck in this traffic for "close to an hour" before he decided to return home. *Id.* ¶ 36.

Plaintiff does not clarify whether he was able to work from home that day, but alleges that the experience caused him to suffer "loss of wages or income;" "annoyance, inconvenience and physical discomfort, anxiety and emotional distress by being confined in a stationary vehicle for an unreasonable period of time and uncertainty about when they might be free to resume traveling;" "loss of time that could otherwise have been spent working, taking care of personal business, or enjoying time with family and friends;" and finally, "loss of personal freedom." *Id.* ¶¶ 78, 82.

The Complaint alleges that PYM "conspired" with "hundreds" of others to "blockade[] traffic for approximately two hours." *Id.* ¶ 28. The only support offered in the Complaint for this allegation are social media posts by PYM and others advertising a rally at Union Station that morning and, later, updating their followers on what transpired thereafter. *Id.* ¶¶ 37, 48-49, 54. The Complaint alleges, based purely on a reporter's speculation, the posts regarding the Union Station rally were intended to "fool" law enforcement. *Id.* ¶ 64. It does not acknowledge that the rally at Union Station did, in fact, occur.[2]

Plaintiff does not allege that PYM or any of the other Defendants were present at the blocked intersections, directed others to participate in blocking traffic, or were in any way affiliated with the twenty-three individuals arrested. The Complaint contains no allegations that the individuals who participated in these actions communicated with PYM or other Defendants before or during the protests.

## LEGAL STANDARDS

A plaintiff bears the burden of establishing that he has standing to invoke a federal court's jurisdiction. *Lujan v. Defs of Wildlife*, 504 U.S. 555, 561 (1992); *Arpaio v. Obama*, 797 F.3d 11,

---

[2] *Pro-Palestine demonstrators rally at Union Station, shut down major roadways in DC*, WUSA9 (Feb. 1, 2024 12:24PM), https://www.wusa9.com/video/news/nation-world/israel-hamas-conflict/65-4902bfca-aabb-40f5-ba59-aba99dd6e131.

19 (D.C. Cir. 2015). Standing cannot be established on the basis of alleged injuries to others, including putative class members. A plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975). The standing inquiry is "more rigorous" when a plaintiff seeks declaratory and injunctive relief against predicted future injury. *Arpaio*, 797 F.3d at 21 (quoting *United Transp. Union v. I.C.C.*, 891 F.2d 908, 913 (D.C. Cir. 1989)).

Courts assessing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) must accept the plaintiff's factual allegations as true and draw all reasonable inferences from those allegations in his favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* "A claim cannot survive a motion to dismiss if based on inferences 'unsupported by facts' or legal conclusions disguised as factual allegations." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 866 (D.C. Cir. 2022) (quoting *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272 (D.C. Cir. 2018)). The Court need not accept inferences that are unsupported by facts, or any legal conclusions disguised as facts in the complaint. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). In determining whether a claim is plausible, the Court may "draw on its judicial experience and common sense." *Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*, 134 F.4th 585, 591 (D.C. Cir. 2025) (internal citations omitted).

## ARGUMENT

### I. Plaintiff Lacks Article III Standing

The Court should dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction because Plaintiff has failed to allege that he experienced any particularized harm caused by Defendants. Litigants seeking to invoke federal court jurisdiction

4

must claim a "concrete and particularized" injury, rather than a generalized grievance. *Lujan*, 504 U.S. at 560. "The injury must also be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Estate of Boyland v. United States Dep't of Agric.*, 913 F.3d 117, 123 (D.C. Cir. 2019), *cert. denied sub nom. Estate of Boyland v. Dep't of Agric.*, 140 S. Ct. 947 (2020) (quoting *Lujan*, 504 U.S. at 560).

Plaintiff alleges that he was caught in traffic for less than an hour along with thousands of other drivers in the D.C. area on the morning of February 1, 2024. Such an allegation is exactly the sort of generalized grievance that does not establish Article III standing—for good reason. If drivers in and around the District of Columbia could file a federal lawsuit every time they experienced traffic delays they allege to be caused by some faraway act, the courts would handle little else. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 391 (2024) (declining to find plaintiffs had standing where doing result in a flood of litigation). The District Court for the Eastern District of Virginia rejected Plaintiff's theory of standing in *Taubman Realty Grp. Ltd. P'ship v. Mineta*, finding that avoiding traffic is "[an interest] common to anyone living or working in the affected region. The federal courts are not appropriate fora in which to seek generalized grievances of this sort." 198 F. Supp. 2d 744, 757 (E.D. Va. 2002).

Plaintiff's speculative allegation that purported class members may have experienced "[l]oss of wages or income", Compl. ¶¶ 78, 82, does not aid him. "[T]he possibility that other members of the class might have had standing had they brought suit does not thereby confer standing on the named representatives; the actual plaintiffs must show that they have personally suffered an injury redressable by the courts." *American Jewish Congress v. Vance*, 575 F.2d 939, 944 (D.C. Cir. 1978) (citing *Warth*, 422 U.S. at 502). Nor can Plaintiff's allegation that he experienced emotional distress establish standing. *Humane Soc. of U.S. v. Babitt*, 46 F.3d 93, 98

(D.C. Cir. 1995) ("general emotional harm, no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes") (internal quotations omitted). Plaintiff's alleged inconvenience does not confer standing either. *Armstrong v. Navient Sols., LLC*, 292 F. Supp. 3d 464, 474 (D.D.C. 2018) ("[A] plaintiff's loss of time and convenience is not generally sufficient to establish standing.").

Even assuming that Plaintiff's inconvenience constitutes an injury, he still lacks standing because that injury cannot be fairly traced to Defendants' conduct. *See Collins v. Yellen*, 594 U.S. 220, 223 (2021) ("[T]he relevant inquiry is whether the plaintiffs' injury can be traced to allegedly unlawful conduct of the defendant.") (internal quotations omitted); *All. for Hippocratic Med.*, 602 U.S. at 383 ("The "'line of causation between the illegal conduct and injury' – the 'links in the chain of causation' – must not be too speculative or too attenuated.") (internal citations omitted). Plaintiff cannot possibly establish causation on these alleged facts. Traffic is caused by countless decisions by thousands of people reacting to all sorts of circumstances. The link between Plaintiff's alleged inconvenience and the brief period during which the demonstrations allegedly became unlawful (*i.e.*, following dispersal orders) is simply too attenuated and speculative.

For these reasons, the Complaint should be dismissed for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## II.     Plaintiff's Claims Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted

If the Court disagrees and finds that Plaintiff has standing, the Complaint should still be dismissed pursuant to Fed. R. Civ. P 12(b)(6) for failure to state a claim upon which relief can be granted.

A. *Plaintiff Fails to State a Claim for Public Nuisance*

In the District of Columbia, "'[a] public nuisance is an unreasonable interference with a right common to the general public.'" *Nat'l Tel. Co-Op. Ass'n v. Exxon Corp.*, 38 F. Supp. 2d 1, 13 (D.D.C. 1998) (quoting *B & W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881 (D.C. 1982)). Formulation of the claim is adopted from the Restatement (Second) of Torts § 821B(1) (1979). *See District of Columbia v. Beretta*, 872 A.2d 633, 646 (D.C. 2005) (*en banc*) (accepting that the "RESTATEMENT provides the appropriate definition" for a public nuisance); *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 166 (D.C. 2013) (explaining that since 2000, the D.C. Court of Appeals has relied on nuisance definitions from the Restatement). "As an independent tort, claims of nuisance have . . . not been viewed favorably by [D.C. courts]. *Beretta*, 872 A.2d at 646.

    i.    <u>Plaintiff Has Not Alleged Special Damages</u>

Typically, "only governmental authorities or other representatives of the general public have standing to attack a public nuisance in court (absent statutory authorization)." *Nat'l Tel.*, 38 F. Supp. 2d at 13 (internal quotation and citation omitted). The one exception to this general rule provides that "a private party may sustain an action to enjoin or recover damages for a public nuisance if that party can allege and prove special damages, distinct from that common to the public." *Id.* (internal quotation and citations omitted); Restatement (Second) of Torts § 821C (addressing the standing requirements for a claim of public nuisance and explaining that the plaintiff must "have suffered harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of interference"); Restatement (Second) of Torts § 821C, comment i (1979) (rejecting public nuisance in the context of highway obstruction: "When a highway is obstructed, the delay or inconvenience of a detour is a kind of harm suffered by any member of the public who travels that way. The delay or

inconvenience suffered by a particular plaintiff, even though it may be greater in degree, is not particular harm of a different kind and will not support an action for the public nuisance.").

Here, the Plaintiff merely recites the elements of a public nuisance claim without providing any factual support that he has suffered special harm of a kind different from that suffered by other members of the public. Indeed, he alleges quite the opposite. *See* Compl. ¶¶ 67, 78 (alleging Plaintiff's and the other class members' "damages are of the same type" and vaguely listing damages suffered by "Plaintiff and others"). Plaintiff's skeletal pleading reflects the reality that he suffered no harm distinct or more severe than any other motorist in the D.C. area on any given weekday.[3] Plaintiff does not even allege that he had to delay his workday, or to what extent the "close to an hour" he was stuck in traffic differed from his regular commute times. His allegations both of harm and an interference with a public right consist entirely of legal conclusions disguised as facts. *See id.* ¶ 76 ("Because of the Defendants' conspiracy and concerted actions . . . a public nuisance was created[.] Plaintiff and thousands of others [were] deprived of their right to freely travel public roads and highways without unreasonable interference"). Accordingly, his claim for public nuisance should be dismissed. *See Holloway v. Bristol-Myers Corp.*, 327 F. Supp. 17, 24 (D.D.C. 1971) (dismissing public nuisance claim where plaintiff failed to allege that she suffered any special damage); *Acosta Orellana v. Croplife Int'l*, 711 F. Supp. 2d 81, 101-02 (D.D.C. 2010) (dismissing public nuisance claim because "the plaintiffs merely recite the elements of a public nuisance claim without providing any factual support for the allegation that a right common to the general public has been harmed, rendering the claim deficient").

---

[3] *See, e.g.*, Sean Golonka, *Stuck in traffic? Drivers in these cities have it the worst*, Consumer Affairs (Sept. 4, 2024), https://www.consumeraffairs.com/automotive/cities-with-the-worst-traffic.html (Washington D.C. ranked no. 2 among top 10 cities with the worst traffic).

> ii. Nuisance Is Not An Independent Tort and Traffic Is Not An Unreasonable Interference with a Public Right

Not only does Plaintiff not have standing to pursue a public nuisance claim, he fails to sufficiently plead any underlying tortious conduct required to establish nuisance. "Nuisance, in short, is not a separate tort[.] Liability must be based on some underlying tortious conduct, such as negligence." *Tucci v. D.C.*, 956 A.2d 684, 696-97 (D.C. 2008). Plaintiff's claims for false imprisonment fails for reasons set forth below and cannot support a separate nuisance claim.

Even assuming that Plaintiff could establish special damages based on another underlying tort, his claim for public nuisance would still fail because the "right to freely travel public roads and highways without unreasonable interference" is not a right common to the public. Compl. ¶ 36. "[N]o one has a right to drive; driving on public highways is a privilege subject to revocation for a number of reasons." *Winsley v. Cook Cnty.*, 563 F.3d 598, 604 (7th Cir. 2009). As put by the *Restatement of Torts*, adopted for purposes of nuisance law by the D.C. Court of Appeals, *Nat'l Tel.*, 38 F. Supp. 2d at 13, "[T]he public is merely privileged to travel the public highways and has not a right to do so; that is, the interests of the members of the public in such travel is not protected by a right of action." Restatement (Second) of Torts § 36, comment i (1965).

For the reasons stated above, Plaintiff's public nuisance claim should be dismissed pursuant to Fed. R. Civ. P 12(b)(6).

B. *Plaintiff Fails to State a Claim for False Imprisonment*

In the District of Columbia, "[f]alse imprisonment is defined . . . as the restraint by one person of the physical liberty of another without consent or legal justification." *Faniel v. Chesapeake & Potomac Telephone Co.*, 404 A.2d 147, 150 (D.C. 1979). "The essential elements of the tort are (1) the detention or restraint of one against his will, within boundaries fixed by the defendant, and (2) the unlawfulness of the restraint." *Id.* The restraint on the plaintiff's freedom of

9

movement must be "total." *Id.* at 151. The restraint must also be forceful, effectuated through the use or threat of force, or the assertion of authority. *Smith v. D.C.*, 306 F. Supp. 3d 223, 260 (D.D.C. 2018). "Indeed it cannot be false imprisonment where the 'prisoner' voluntarily submits, without proof of duress or force legally sufficient to vitiate the apparent consent." *Faniel*, 404 A.2d at 152.

Plaintiff's false imprisonment claim fails simply because was not imprisoned, let alone imprisoned under force or threat of force. At any time during the less-than-an-hour he was "imprisoned" he could have exited his vehicle. No one forced him to remain in his vehicle and the decision to do so was his own. Furthermore, Plaintiff did, admittedly, avail himself of his freedom to stay or go, by "navigat[ing] out of the blocked traffic and return[ing] to his home." Compl. ¶ 36. Indeed, Plaintiff's ability to argue that being stuck in traffic constitutes false imprisonment has been thoroughly foreclosed:

> [O]ne who blocks off a highway, intending to prevent the public from passing along it, is not liable for false imprisonment to one whose privilege to use the highway has been thus denied. Indeed, the actor does not incur any liability by so doing, since the public is merely privileged to travel the public highways and has not a right to do so; that is, the interest of the members of the public in such travel is not protected by a right of action.

Restatement (Second) of Torts § 36, comment d (1965).

Plaintiff does not even attempt to allege the other necessary elements of a false imprisonment claim. He does not allege that he was compelled to remain in his vehicle by force, threats of force, or assertions of authority, nor does he make clear where he was "imprisoned." If he alleges to have been imprisoned within his vehicle, that is simply untrue because he could have exited at any time. If he claims to have been imprisoned with his vehicle within the traffic jam, even if that were a plausible form of imprisonment, which it is not, that is also clearly false because he eventually navigated his vehicle away.

Plaintiff's false imprisonment claim is frivolous and, for the reasons stated above, should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

C. *If Plaintiff Intended to Plead a Civil Conspiracy Claim, It Too Fails.*

It is not clear if the Complaint includes a separate claim for civil conspiracy, but it repeatedly refers to a "conspiracy" and to Defendants as "co-conspirators." Compl. ¶¶ 1-2, 7, 28-29, 35, 37-58, 65, 76, 81. If Plaintiff does plead a civil conspiracy, he has failed to state a claim.

D.C. law does not recognize civil conspiracy as an independent tort but instead requires an underlying tortious or wrongful act. *See Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009). Because, as outlined above, Plaintiff has failed to state claims for public nuisance and false imprisonment, any civil conspiracy claim derived therefrom also fails. Alternatively, Plaintiff has not met the elements of a civil conspiracy.

The elements of civil conspiracy are: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) the overt act was done pursuant to and in furtherance of the common scheme. *Griva v. Davinson*, 637 A.2d 830, 848 (D.C. 1994) (citation omitted).

Plaintiff's allegations that Defendants entered into an agreement to participate in an unlawful act are conclusory and unsupported by any factual allegations. "[T]he principal element of [a civil conspiracy] is an *agreement* between the parties to inflict a wrong against or an injury upon another, and an overt act that results in that damage." *Brady v. Livingwood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) (internal quotations omitted) (emphasis in original). Conspiracy claims cannot be based on conclusory statements without specific factual allegations. *Mattiaccio v. DHA*

*Group, Inc.*, 20 F. Supp. 3d 220, 230 (D.D.C. 2014) (dismissing conspiracy claim where allegations of agreement were conclusory, unsupported, and provided no "indication of when or how such an agreement was brokered").

The Complaint contains no factual allegations as to the circumstances of an alleged agreement among Defendants to commit an unlawful act. In fact, Plaintiff has not alleged any facts in support of the assertion that Defendants planned the actions in the streets he alleges to have cause traffic, *see* Compl. ¶ 37, but rather that Defendants collaboratively posted about the Union Station rally, a separate event, on their social media accounts. At best, Plaintiff has alleged that Defendants simultaneously supported a different First Amendment-protected rally on February 1, 2024, and advertised their support online, but that is not a conspiracy. Indeed, to hold otherwise would mean that anyone who shared a post made by somebody else about an ongoing current event could be held liable for that event as a conspirator, an absurd result. Even assuming Plaintiff could establish an agreement to participate in the other protests, which he cannot, it was not one to participate in unlawful activity. Gathering in a street for expressive purposes is not unlawful in the District of Columbia. D.C. Code § 5-331.05(a) ("It shall not be an offense to assemble or parade on a District street . . . without having provided notice or obtained an approved assembly plan.").

For the reasons stated above, to the extent Plaintiff alleges a civil conspiracy claim, it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.

### III. This Court Should Sanction Plaintiff and His Counsel and Dismiss this Frivolous Lawsuit with Prejudice Without Leave to Amend

A complaint may be dismissed without leave to amend on the basis of delay, bad faith, or futility, among others. *See Lover v. D.C.*, 248 F.R.D. 319, 322 (D.D.C. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). This lawsuit is a politically motived attempt to bury Plaintiff's

political opponents in litigation. Indeed, it is virtually identical to another lawsuit brought by the same counsel against an overlapping group of defendants. *See Manhart v. Nat'l Students for Justice in Palestine, et al.*, No. 24-cv-8209, Dkt. 69, Second Amended Complaint (N.D. Ill. Jan. 29, 2025). The Complaint here makes Plaintiff's political motivations abundantly clear and the claims he brings to further them are unsupported by fact and law. No amendment would cure these flaws, and this case should be dismissed with prejudice. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (dismissal with prejudice appropriate when "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency") (internal punctuation omitted).

Furthermore, Plaintiff's counsel is determined to bring more such frivolous lawsuits against "anti-Israel activists."[4] Such conduct is an improper use of federal court resources and an immense burden on those hauled into court to defend against baseless claims. As such, sanctions are appropriate pursuant to 28 U.S.C. § 1927, the purpose of which is to sanctions attorneys who multiply proceedings unreasonably and vexatiously. Alternatively, this Court should consider exercising its inherent authority to sanction bad-faith litigation practices and other abuses of the judicial process. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017); *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

IV. **PYM Joins in the Motions Filed or to be Filed by Any Co-Defendant to Dismiss Plaintiff's Complaint to the Extent they or their Reasoning Apply to PYM**

PYM joins in the arguments that may be presented in other co-defendants' motions to dismiss Plaintiff's Complaint, including arguments about lack of standing, the failure to state claims upon which relief can be granted, or requests for sanctions.

---

[4] *Faoro v. Jewish Voice for Peace, et al.*, Hamilton Lincoln Law Institute, https://hlli.org/faoro-v-jvp/.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant Palestinian Youth Movement's Motion to Dismiss and order Plaintiff and Plaintiff's counsel to pay all appropriate sanctions, attorneys' fees, and costs.

Dated: June 16, 2025                                  Respectfully submitted,

/s/*Christopher Godshall-Bennett*
Christopher Godshall-Bennett
American-Arab Anti-Discrimination Committee
910 17th St. NW, Suite 1000
Washington, D.C. 20006
(202) 465-4247
cgb@adc.org

*Counsel for Defendant*