**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DANIEL FAORO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:25-cv-289 |
| | ) | |
| v. | ) | Hon. Amy Berman Jackson |
| | ) | |
| JEWISH VOICE FOR PEACE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**DEFENDANT JEWISH VOICE FOR PEACE'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

ARGUMENT ................................................................................................................. 4

    I.    This Suit Should be Dismissed Under Fed. R. Civ. P. 12(b)(1) Because Being Stuck in Traffic for Less than an Hour Is Not a Concrete Injury that Confers Article III Standing......... 4

    II.    All of Plaintiff's Claims Should Be Dismissed Pursuant to Fed. R. Civ. P 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted ................................................... 8

        a.    Plaintiff Fails to State a Claim for Public Nuisance (Count I) ....................................... 9

        b.    Plaintiff Fails to State a Claim for False Imprisonment (Count II) ............................. 11

        c.    To the Extent Plaintiff Pleads a Civil Conspiracy Claim, He Fails to State a Claim ... 14

    III.    Plaintiff's Lawsuit Is Retaliatory, Sanctionable, and Should be Dismissed with Prejudice 16

CONCLUSION ............................................................................................................. 19

i

# TABLE OF AUTHORITIES

## Cases

*Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328 (D.C. Cir. 2015)...................................... 16

*Abourezk v. New York Airline, Inc.*, 705 F. Supp. 656 (D.D.C. 1989) ......................................... 11

*\*Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1 (D.D.C. 2010)........................................................ 4, 7, 8

*American Jewish Congress v. Vance*, 575 F.2d 939 (D.C. Cir. 1978)........................................... 6

*Armstrong v. Navient Solutions, LLC*, 292 F. Supp. 3d 464 (D.D.C. 2018)................................. 7

*\*B & W Management, Inc. v. Tasea Inv. Co.*, 451 A.2d 879 (D.C. 1982) .................................... 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 16

*Bond v. Floyd*, 385 U.S. 116 (1966) ......................................................................................... 17

*Brady v. Livingood*, 360 F. Supp. 2d 94 (D.D.C. 2004) ............................................................ 15

*Brendlin v. California*, 551 U.S. 249 (2007) ............................................................................. 14

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)......................................................................... 19

*City of Houston, Tex. v. Hill*, 482 U.S. 451 (1987)..................................................................... 18

*Dent v. May Dep't Stores Co.*, 459 A.2d 1042 (D.C. 1982) ........................................................ 12

*District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633 (D.C. 2005) ................................ 10

*\*Faniel v. Chesapeake & Potomac Tel. Co. of Maryland*, 404 A.2d 147 (D.C. 1979).......... 12, 13

*FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ............................................. 5, 8

*Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996)................................................................ 18

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000). 5

*Gable v. Universal Acceptance Corp.*, 338 F. Supp. 3d 943 (E.D. Wis. 2018)............................ 13

*Gerwaski v. State ex rel. Board of Regents of the Nevada System of Higher Education*, No. 2:24-cv-00985-APG-MDC, 2025 WL 1294107 (D. Nev. May 5, 2025).......................................... 16

*Hall v. Dept. of Homeland Security*, 219 F. Supp. 3d 112 (D.D.C. 2016) ............................ 18, 19

ii

*Hamilton v. Sanofi-Aventis U.S., Inc.*, 628 F. Supp.2d 59 (D.D.C. 2009)...................................... 4

*Harvey v. Kasco*, 109 F. Supp. 3d 173 (D.D.C. 2015) .................................................. 15

*Holloway v. Bristol-Myers Corp.*, 327 F. Supp. 17 (D.D.C. 1971) ................................ 9

*Humane Soc'y of U.S. v. Babbitt*, 46 F.3d 93 (D.C. Cir. 1995)....................................... 7

*In re Science Applications International Corp. (SAIC) Backup Tape Data Theft Litigation*, 45 F. Supp. 3d 14 (D.D.C. 2014) ................................................................................................ 6

*J.H.C. by Clarke v. District of Columbia*, No. 20-cv-1761 (CRC) 2021 WL 4462359 (D.D.C. Sept. 29, 2021) ....................................................................................................................... 14

*Jonathan Woodner Co. v. Breeden*, 665 A.2d 929 (D.C. 1995) .................................... 10

*Jones v. District of Columbia*, No. 16-cv-2405 (DLF) 2019 WL 5690341 (D.D.C. June 13, 2019) ........................................................................................................................................ 13

*Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37 (D.D.C. 2019)............................... 15, 16

*LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899 (D.C. Cir. 1998) ..................... 18

*Manhart v. National Students for Justice in Palestine, et al.*, No. 24-cv-8209 (N.D. Ill. Jan. 29, 2025) ...................................................................................................................................... 17

*Martinez v. Constellis/Triple Canopy*, No. 20-cv-153 (RC), 2021 WL 1226747 (D.D.C. Apr. 1, 2021) ...................................................................................................................................... 13

*Mattiaccio v. DHA Group, Inc.*, 20 F. Supp. 3d 220 (D.D.C. 2014) ............................ 15

*Nader v. Democratic National Committee*, 567 F.3d 692 (D.C. Cir. 2009)................... 14

*National Telephone Co-op. Ass'n v. Exxon Corp.*, 38 F. Supp. 2d 1 (D.D.C. 1998) .................. 10

*Ortberg v. Goldman Sachs Group*, 64 A.3d 158 (D.C. 2013) ....................................... 10

*Parizer et al. v. AJP Education Foundation et al.*, No. 1:24-cv-724 (E.D. Va. July 9, 2024) ..... 16

*Pollak, et ano. v. CodePink Women for Peace, et al.*, No. 2:24-cv-6253 (C.D. Cal. July 24, 2024) ...................................................................................................................................... 16

*Robertson v. Cartinhour*, 883 F. Supp. 2d 121 (D.D.C. 2012)..................................... 18

*Schneider v AMP, et al.*, No. 24-cv-1067 (M.D. Fla. May 2, 2024) ............................. 16

*Snyder v. Phelps*, 562 U.S. 443 (2011) ................................................................ 11, 17

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ............................................................... 5

*Tah v. Global Witness Publishing, Inc.*, 991 F.3d 231 (D.C. Cir. 2021) ..................................... 16

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ............................................................ 4

*United States v. Alvarez*, 567 U.S. 709 (2012) ............................................................ 11

*United States v. Grace*, 461 U.S. 171 (1983) ............................................................. 11

*United States v. Texas*, 599 U.S. 670 (2023) ............................................................ 4, 5

*US Ecology, Inc. v. U.S. Dept. of Interior*, 231 F.3d 20 (D.C. Cir. 2000) .................................. 7

*Valle v. Karagounis*, No. 22-7167, 2024 WL 3738445 (D.C. Cir. Aug. 9, 2024) ............................... 12

*Warth v. Seldin*, 422 U.S. 490 (1975) ..................................................................... 6

**Statutes**

28 U.S.C. § 1927 ......................................................................................... 18

D.C. Code §§ 16-5501–16-5505 ............................................................................. 16

**Other Authorities**

*Death Toll in Gaza Rises to 52,000, Territory's Health Ministry Says, as Israel Continues Offensive*, CBS NEWS, Apr. 27, 2025, https://www.cbsnews.com/news/war-gaza-israel-death-toll-april-2025/ ................................................................................ 1

Francesca Albanese (Special Rapporteur), *Anatomy of a Genocide: Report of the Special Rapporteur on the Situation of Human Rights in the Palestinian Territories Occupied Since 1967*, U.N. Doc. A/HRC/55/73 (Jul. 1, 2024), https://documents.un.org/doc/undoc/gen/g24/046/11/pdf/g2404611.pdf ................................ 1

Hamilton Lincoln Law Institute, *Faoro v. Jewish Voice for Peace Inc., et al.* https://hlli.org/faoro-v-jvp/ (last accessed June 9, 2025) ........................................... 17

*Human Rights Watch Founder Accuses Israel of Genocide*, BBC NEWS, June 2, 2024, https://www.bbc.co.uk/programmes/p0j1rk0c ......................................................... 1

Marissa J. Lang, *D.C. is Becoming a Protest Battleground. In a Polarized Nation, Experts Say That's Unlikely to Change*, WASHINGTON POST, Jan. 1, 2021,

https://www.washingtonpost.com/local/washington-dc-protests/2021/01/01/da743c20-4a68-11eb-839a-cf4ba7b7c48c_story.html.................................................................................... 5

*Report of the Special Committee to Investigate Israeli Practices Affecting the Human Rights of the Palestinian People and Other Arabs of the Occupied Territories*, U.N. Doc. A/79/363 (Sep. 20, 2024), https://documents.un.org/doc/undoc/gen/n24/271/19/pdf/n2427119.pdf ........ 1

*\*Restatement (Second) of Torts* § 36, comment d (1965).......................................................... 7, 13

*Restatement (Second) of Torts* § 821B(1) (1979) ........................................................................ 9

*Restatement (Second) of Torts* § 821C, comment a (1979) ......................................................... 9

*\*Restatement (Second) of Torts* § 821C, comment i (1979).......................................................... 10

*Restatement (Second) of Torts* §§ 35, 36 (1965)......................................................................... 12

*Restatement (Second) of Torts* §§ 38–41 (1965).......................................................................... 12

United Nations Regional Information Centre for Western Europe, *South Africa vs Israel: 14 Other Countries Intend to Join the ICJ Case* (Oct. 30, 2024), https://unric.org/en/south-africa-vs-israel-14-other-countries-intend-to-join-the-icj-case/ .......................................................... 1

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ................................................................................. 4, 8

Federal Rule of Civil Procedure 12(b)(6) ................................................................................. 4, 8

## INTRODUCTION

For more than a year and a half, individuals across the country and around the world, including Defendants, have engaged in First Amendment protected activity opposing what they view as the unjustified slaughter of Palestinians in Gaza by the state of Israel, which has left more than 52,000 Palestinians dead, and many others homeless, wounded, or orphaned.[1] Defendants and others have decried what they see as a genocide, a characterization shared by United Nations committees, state governments around the world, and international human rights experts.[2] This increase in activism against Israel's atrocities has been met with a retaliatory backlash, of which this lawsuit is just one example.

Plaintiff Daniel Faoro alleges that a demonstration in Washington, D.C. against the Israeli military's actions in Gaza "inconvenienced" him by causing him to be stuck in traffic for less than an hour while he was on his way to work. For this inconvenience, he sues three individuals and seven organizations, all of whom Plaintiff characterizes as active in the Palestinian liberation movement, bringing claims for public nuisance and false imprisonment. Plaintiff's alleged injuries—the anxiety and inconvenience of being temporarily stuck in

---

[1] *Death Toll in Gaza Rises to 52,000, Territory's Health Ministry Says, as Israel Continues Offensive*, CBS NEWS, Apr. 27, 2025, https://www.cbsnews.com/news/war-gaza-israel-death-toll-april-2025/.

[2] *See, e.g. Report of the Special Committee to Investigate Israeli Practices Affecting the Human Rights of the Palestinian People and Other Arabs of the Occupied Territories*, at ¶ 69, U.N. Doc. A/79/363 (Sep. 20, 2024), https://documents.un.org/doc/undoc/gen/n24/271/19/pdf/n2427119.pdf; Francesca Albanese (Special Rapporteur), *Anatomy of a Genocide: Report of Special Rapporteur on the Situation of Human Rights in the Palestinian Territories Occupied Since 1967*, at 1, U.N. Doc. A/HRC/55/73 (Jul. 1, 2024), https://documents.un.org/doc/undoc/gen/g24/046/11/pdf/g2404611.pdf; United Nations Regional Information Centre for Western Europe, *South Africa vs Israel: 14 Other Countries Intend to Join the ICJ Case* (Oct. 30, 2024), https://unric.org/en/south-africa-vs-israel-14-other-countries-intend-to-join-the-icj-case/; *Human Rights Watch Founder Accuses Israel of Genocide*, BBC NEWS, June 2, 2024, https://www.bbc.co.uk/programmes/p0j1rk0c.

traffic—are not cognizable injuries that confer Article III standing. Moreover, Plaintiff fails to state a claim for any of his purported causes of action: only governmental actors can maintain a suit for public nuisance absent special injury, and being stuck in traffic does not constitute false imprisonment under Washington, D.C. law. In short, this is not a lawsuit brought in good faith. This is a targeted attack on a political movement that Plaintiff disagrees with. Plaintiff's attempt to wield civil litigation as a weapon against activists whose views he dislikes runs contrary to the most fundamental values of this country enshrined in the First Amendment to the United States Constitution. This Court should grant Defendant Jewish Voice for Peace's motion to dismiss for lack of standing or for failure to state a claim upon which relief can be granted.

## FACTUAL BACKGROUND

Plaintiff alleges that on the morning of February 1, 2024, activists protesting in solidarity with the people of Palestine, and against Israel's actions in Gaza and the United States government's military support of those actions blocked several highways and roads at five different locations in Washington, D.C., or leading into it. Dkt. 1, Complaint, ¶¶ 2, 28, 46. According to Plaintiff, the purpose of the blockades was to "exert pressure on Congress and the Biden administration to end arms sales to Israel." *Id.* ¶ 28. The demonstrators blocked "most of the major routes into downtown Washington, Foggy Bottom, and Capitol Hill." *Id.* ¶ 29. Some of the activists chained themselves together or linked their arms with PVC piping to block the road. *Id.* ¶ 32. Others chanted slogans critical of the state of Israel. *Id.* ¶ 31. The blockades caused a traffic jam, both on the highways and roads that were blockaded and on multiple side streets. *Id.* ¶¶ 30, 34. Police cleared the blockades and arrested 23 unidentified people, who are named as John and Jane Doe Defendants, and charged them with offenses including "crowding, obstructing, or incommoding." *Id.* ¶ 33. The blockades lasted up to two and a half hours. *Id.* ¶ 34.

On the morning of the protest, Plaintiff Daniel Faoro was on his way from his home in Virginia to his office in D.C. *Id.* ¶¶ 8, 35, 75. Because of the blockades, he was stuck in traffic "without moving or barely moving" for less than an hour. *Id.* ¶ 36. Faoro was "on Route 50 near where it curves past Fort Myer when he finally learned the cause of why he was stuck in traffic." *Id.* Faoro eventually was able to "navigate out of the blocked traffic" and went home. *Id.* The experience caused him "[a]nnoyance, inconvenience, physical discomfort, anxiety and emotional distress." *Id.* ¶ 78. Plaintiff purports to bring this lawsuit on behalf of himself and a class of similarly situated individuals. *Id.* ¶¶ 59–73.

In addition to the 23 John and Jane Doe Defendants who were arrested at the protests, Plaintiff sues Defendants "Jewish Voice for Peace d/b/a Occupation Free DC" ("JVP" and "OFDC," respectively),[3] Dissenters, Palestinian Youth Movement ("PYM"), WESPAC Foundation ("WESPAC"), Harriet's Wildest Dreams ("HWD"), Party for Socialism and Liberation ("PSL"), and Maryland2Palestine ("MD2P") (collectively, "Organizational Defendants"), who he alleges planned and organized the action. *Id.* ¶ 37. Plaintiff points to social media posts made by some of the Organizational Defendants advertising a protest and general strike at Union Station at 7:00 AM on the day of the blockades and listing some of the Organizational Defendants as the organizers. *Id.* ¶¶ 42–45. According to Plaintiff, those posts were intended to deceive law enforcement about the true locations of that day's planned protests. *Id.* ¶¶ 46, 54. Some of the Organizational Defendants also posted on social media in support of the blockades and the arrestees during and after the protest. *Id.* ¶¶ 47–57. Plaintiff also alleges that Defendants Dornethia "Nee Nee" Taylor, Brian Becker, and Hannah Shraim, hold leadership

---

[3] Plaintiff alleges that OFDC is an affiliate of the D.C. chapter of JVP ("JVP DC-Metro") and that JVP DC-Metro manages OFDC. *Id.* ¶ 10.

roles in HWD, PSL, and MD2P, respectively. *Id.* ¶¶ 20, 22, 24. Plaintiff alleges that WESPAC is

liable for PYM's actions because WESPAC is PYM's fiscal sponsor. *Id.* ¶ 14–15.

## ARGUMENT

I. **This Suit Should be Dismissed Under Fed. R. Civ. P. 12(b)(1) Because Being Stuck in Traffic for Less than an Hour Is Not a Concrete Injury that Confers Article III Standing**

Plaintiff's lawsuit is doomed from the outset because he fails to satisfy the threshold

requirement of federal litigation: Article III standing. Article III of the U.S. Constitution "limits

the 'judicial power' of the United States to the resolution of 'cases' and 'controversies,'" and the

doctrine of standing serves to identify those cases that are "appropriately resolved through the

judicial process." *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 14 (D.D.C. 2010). Standing is a

"bedrock constitutional requirement" rooted in separation-of-powers principles that help

"safeguard the Judiciary's proper—and properly limited—role in our constitutional system. By

ensuring that a plaintiff has standing to sue, federal courts prevent the judicial process from

being used to usurp the powers of the political branches." *United States v. Texas*, 599 U.S. 670,

675–76 (2023) (internal citations and quotation marks omitted). A motion to dismiss for lack of

standing is analyzed under Federal Rule of Civil Procedure 12(b)(1). *Al-Aulaqi*, 727 F. Supp. 2d

at 13. Courts examining a Rule 12(b)(1) motion construe the complaint in favor of the

complaining party, but must give the factual allegations in the complaint "closer scrutiny" than

they would when resolving a Rule 12(b)(6) motion because subject-matter jurisdiction implicates

the Court's power to hear the claim. *Id.* at 13–14; *Hamilton v. Sanofi-Aventis U.S., Inc.*, 628 F.

Supp.2d 59, 62 (D.D.C. 2009). As the party invoking federal jurisdiction, Plaintiff bears the

burden of demonstrating that he has standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–

31 (2021).

To have standing to sue in federal court, Plaintiff must demonstrate that he has suffered an injury in fact that is "concrete and particularized." *See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180 (2000); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016). A lawsuit may proceed only if the plaintiff suffered an injury "traditionally thought to be capable of resolution through the judicial process." *Texas*, 599 U.S. at 676. Plaintiff's allegations that he was stuck in traffic for less than an hour during his morning commute into Washington, D.C., do not adequately plead such an injury. If they did, then thousands of commuters would have a basis for federal litigation most days of the week, and courts would have time for little else. *See FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 391 (2024) (declining to find plaintiffs had standing where doing so would open the floodgates to a class of lawsuits that had not previously been recognized and would result in empowering citizens to sue over virtually everything). In a major metropolitan area like D.C., the potential causes of a 45-minute traffic backup during rush hour are too numerous to list. By Plaintiff's logic, anything from construction work to presidential motorcades to long trains could be a basis for a federal class action lawsuit, provided they delay at least one person going to work. Such an outcome would be ludicrous anywhere, but particularly in our nation's capital, which is the site of thousands of demonstrations a year, many of which have at least some impact on traffic.[4]

---

[4] Marissa J. Lang, *D.C. is Becoming a Protest Battleground. In a Polarized Nation, Experts Say That's Unlikely to Change*, WASHINGTON POST, Jan. 1, 2021, https://www.washingtonpost.com/local/washington-dc-protests/2021/01/01/da743c20-4a68-11eb-839a-cf4ba7b7c48c_story.html (noting that D.C. averaged over 800 permitted demonstrations annually, a figure that does not include the numerous unpermitted protests that happen every year).

Plaintiff's Complaint has very little to say about his purported injuries. In his 85-paragraph Complaint, Plaintiff included a sum total of two paragraphs that pertain to his experience on the day of the protest. Dkt. 1 ¶¶ 35–36. He asserts three categories of supposed damages in the "claims" section of his Complaint. *Id.* ¶¶ 78, 82. First, he alleges that he and other members of his purported class suffered "[l]oss of wages or income," but there are no facts to support that Plaintiff suffered any financial injury. *Id.* Indeed, Plaintiff does not even state what he does for a living or that he missed any work, let alone maintain that he lost any wages. In fact, Plaintiff declares that after being stuck in traffic for less than an hour, rather than continue to his office, he went home. *Id.* ¶ 36. There is nothing in the Complaint to suggest that Plaintiff suffered any monetary harm as a result of the protest.

Plaintiff's unsupported speculation that other unidentified members of his purported class may have lost wages or income does not create a particularized injury that would support Article III standing for Plaintiff. The D.C. Circuit has recognized that "the possibility that other members of the class might have had standing had they brought suit does not thereby confer standing on the named representatives; the actual plaintiffs must show that they have personally suffered an injury redressable by the courts." *American Jewish Congress v. Vance*, 575 F.2d 939, 944 (D.C. Cir. 1978) (*citing Warth v. Seldin*, 422 U.S. 490, 502 (1975)). "Even in the class-action context, all named Plaintiffs must allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *In re Science Applications International Corp. (SAIC) Backup Tape Data Theft Litigation*, 45 F. Supp. 3d 14, 23 (D.D.C. 2014)) (quoting *Warth*, 422 U.S. at 502).

Second, Plaintiff alleges that he suffered emotional harms: annoyance, inconvenience, discomfort, anxiety, and emotional distress from being stuck in traffic. Dkt. 1, ¶¶ 78, 82. However, "emotional harm—in and of itself—is not sufficient to satisfy Article III's injury in fact requirement." *Al-Aulaqi*, 727 F. Supp. 2d at 25 (*citing Humane Soc'y of U.S. v. Babbitt*, 46 F.3d 93, 98 (D.C. Cir. 1995)). Rather, "a plaintiff can only establish an Article III injury in fact based on emotional harm if that alleged harm stems from the infringement of some legally protected, or judicially cognizable, interest that is either recognized at common law or specifically recognized as such by the Congress." *Id.* (internal citations and quotation marks omitted). Here, Plaintiff has not asserted any statutory claims, so standing based on his alleged emotional harms must derive from an interest recognized at common law, and there is no such interest. The *Restatement of Torts* states that "the public is merely privileged to travel the public highways and has not a right to do so; that is, the interest of the members of the public in such travel is not protected by a right of action." *Restatement (Second) of Torts* § 36, comment d (1965). Traffic is an unfortunate but unavoidable fact of life, and the existence of a temporary traffic jam, while undeniably annoying, is not the type of annoyance in which the law intervenes.

Finally, Plaintiff alleges that he suffered damages because he lost time that he could have spent doing something else. Dkt. 1 ¶ 78. But "loss of time and convenience is not generally sufficient to establish standing." *Armstrong v. Navient Solutions, LLC*, 292 F. Supp. 3d 464, 474 (D.D.C. 2018); *US Ecology, Inc. v. U.S. Dept. of Interior*, 231 F.3d 20, 25 (D.C. Cir. 2000) (party's "disappointment at having invested—and perhaps lost—time and money" in a proposed project that did not come to fruition was insufficient, without more, to establish standing);

*see also Alliance for Hippocratic Medicine*, 602 U.S. at 390–91 (no standing based on law requiring doctors to divert time and resources to treat certain patients).[5]

Because Plaintiff does not plausibly plead an injury that would confer Article III standing, this lawsuit must be dismissed pursuant to Rule 12(b)(1).

## II.    All of Plaintiff's Claims Should Be Dismissed Pursuant to Fed. R. Civ. P 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted

In the alternative, Plaintiff's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). The "plausibility standard" asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While detailed factual allegations are not required, the complaint must contain more than mere "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Id.* (cleaned up). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* Courts need not accept "a legal conclusion couched as a factual allegation," nor need they "accept inferences that are unsupported by the facts set forth in the complaint." *Id.*; *Al-Aulaqi*, 727 F. Supp. 2d at 13. Neither of Plaintiff's claims against Defendant JVP state a plausible claim for relief.[6]

---

[5] Plaintiff also asserts he suffered "loss of personal freedom." Dkt. 1 ¶ 82. As discussed in greater detail below in Section II(b), Plaintiff's Complaint makes clear that he did not suffer any loss of freedom, and his frivolous assertions to the contrary cannot establish Article III standing. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998).

[6] Plaintiff's Count III, for Negligence or Recklessness, was brought solely against Defendant WESPAC.

### a.  Plaintiff Fails to State a Claim for Public Nuisance (Count I)

Count I charges the Defendants with conspiring to create a public nuisance. Dkt. 1 ¶¶ 74–79. A public nuisance is defined under Washington, D.C., law as "an unreasonable interference with a right common to the general public." *B & W Management, Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881 (D.C. 1982) (citing *Restatement (Second) of Torts* § 821B(1) (1979)). "At common law, the term 'public nuisance' covered a variety of minor criminal offenses that interfered, for example, with the public health, safety, morals, peace, or convenience." *Id.* Well-established law emphasizes that, absent statutory authorization, "only governmental authorities or other representatives of the general public have standing to attack a public nuisance in court." *Id.* at 882. A private party such as Plaintiff has standing to pursue an action for public nuisance only if he suffered "special damage, distinct from that common to the public." *Id.* "It is not enough that he suffers the same inconvenience or is deprived of the same enjoyment . . . as everyone else who may be exercising the same public right." *Restatement (Second) of Torts* § 821C, comment a (1979).

Plaintiff cannot maintain an action for public nuisance because he has not alleged that he suffered any special injury distinct from the general public. *See Holloway v. Bristol-Myers Corp.*, 327 F. Supp. 17, 24 (D.D.C. 1971) (dismissing public nuisance claim where plaintiff failed to allege that she suffered any special damage). On the contrary, Plaintiff has explicitly alleged that he experienced the same harm as thousands of other drivers on the road: annoyance and inconvenience from being stuck in traffic. Dkt. 1 ¶¶ 63, 78 (alleging Plaintiff "and class members" suffered the same damages as a result of the alleged public nuisance); ¶ 66 (alleging that thousands of purported class members suffered damages "of the same type" as Plaintiff's). The *Restatement of Torts* explicitly rejects Plaintiff's claim and the types of injuries he alleges he

9

suffered (delay and inconvenience) as injuries that can confer standing for public nuisance in the context of highway obstruction:

> When a highway is obstructed, the delay or inconvenience of a detour is a kind of harm suffered by any member of the public who travels that way. The delay or inconvenience suffered by a particular plaintiff, even though it may be greater in degree, is not particular harm of a different kind and will not support an action for the public nuisance. It is only when the plaintiff is able to prove that by reason of the delay he has been put to special expense of a different kind that he can recover on the basis of the particular harm.

*Restatement (Second) of Torts* § 821C, comment i (1979). The D.C. Court of Appeals has adopted the Restatement formulation of nuisance law. *National Telephone Co-op. Ass'n v. Exxon Corp.*, 38 F. Supp. 2d 1, 13 (D.D.C. 1998). Accordingly, Plaintiff's claim is thoroughly foreclosed by D.C. law.

In addition, D.C. courts have concluded that nuisance "is not a separate tort in itself but a type of damage, and the plaintiff must recover, if at all, on the theory of negligence or some other tort." *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 934 (D.C. 1995) (cleaned up). Claims of nuisance as an independent tort have "not been viewed favorably" by the D.C. Court of Appeals. *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 646 (D.C. 2005). An intentional interference with a right (as Plaintiff alleges here) is actionable as a nuisance only if it is otherwise tortious. *Ortberg v. Goldman Sachs Group*, 64 A.3d 158, 167 (D.C. 2013). Here, Plaintiff has not alleged any underlying tort against JVP other than the false imprisonment claim which, as discussed below, is not a valid claim. Therefore, the lack of a viable separate basis for tort liability provides an additional reason why Plaintiff's public nuisance claim fails.

Furthermore, allowing a civil action for public nuisance to proceed based on the conduct and injuries alleged here would significantly curtail people's ability to protest in public streets.

Most protest marches inevitably cause some traffic and disruption of drivers' ability to travel on the streets. Nevertheless, the U.S. Supreme Court has emphasized that public streets occupy a "special position in terms of First Amendment protection." *United States v. Grace*, 461 U.S. 171, 180 (1983). The Supreme Court has "repeatedly referred to public streets as the archetype of a traditional public forum, noting that time out of mind public streets and sidewalks have been used for public assembly and debate." *Snyder v. Phelps*, 562 U.S. 443, 456 (2011) (internal quotation marks omitted). If Plaintiff's public nuisance claim is allowed to proceed, then any motorist who is inconvenienced by a demonstration could pursue civil litigation. Such a result would embolden any driver who dislikes the content of a protest to act as a civil vigilante, using the law as a weapon to silence protesters and creating a dangerous chilling effect on individuals' ability to exercise their First Amendment rights. That outcome cannot be tolerated in a nation that holds free expression among its most fundamental values. *See United States v. Alvarez*, 567 U.S. 709, 723 (2012) ("The mere potential for the exercise of [censorial] power casts a chill, a chill the First Amendment cannot permit if free speech, thought, and discourse are to remain a foundation of our freedom.").

Plaintiff cannot maintain a claim for public nuisance and Count I should be dismissed.

**b. Plaintiff Fails to State a Claim for False Imprisonment (Count II)**

Count II alleges that, by causing him to be stuck in traffic for less than an hour, the Defendants falsely imprisoned him in his car. Dkt. 1 ¶¶ 36, 80–83. Under D.C. law,[7] false

---

[7] Defendant JVP has applied D.C. law to this claim because of the choice of venue and because the majority of the alleged conduct occurred in D.C., but acknowledges some ambiguity in the Complaint as to whether the alleged "false imprisonment" occurred in D.C. or Virigina, *i.e.* if Plaintiff was stuck in traffic in D.C., Virginia, or both. However, D.C. and Virginia law do not meaningfully diverge, and Defendants would prevail regardless of which law applies.
*See Abourezk v. New York Airline, Inc.*, 705 F. Supp. 656, 659 (D.D.C. 1989) (concluding D.C. and Virginia law did not conflict as to false imprisonment claim).

imprisonment is defined as "the restraint by one person of the physical liberty of another without consent or legal justification." *Faniel v. Chesapeake & Potomac Tel. Co. of Maryland*, 404 A.2d 147, 150 (D.C. 1979). The elements of the tort of false imprisonment are "(1) the detention or restraint of one against his will, within boundaries fixed by the defendant, and (2) the unlawfulness of the restraint." *Id.* To constitute imprisonment, the restraint on the plaintiff's freedom of movement must be "total." *Id.* at 151 (*citing Restatement (Second) of Torts §§ 35, 36 (1965)*). The confinement required to state a false imprisonment claim can be accomplished through (1) actual or apparent physical barriers, (2) overpowering physical force or submission to physical force, (3) threats of physical force, (4) other sufficiently severe duress, *e.g.*, threats to harm a family member, or (5) taking the person into custody under asserted legal authority. *Id.* at 151 n.11 (*citing Restatement (Second) of Torts §§ 38–41 (1965)*). In determining whether a false imprisonment has occurred, the relevant inquiry is not the subjective state of mind of the plaintiff, but rather the "actions or words of the defendant which must at least furnish a basis for a *reasonable* apprehension of present confinement." *Dent v. May Dep't Stores Co.*, 459 A.2d 1042, 1044 (D.C. 1982) (cleaned up, emphasis in original). It is not enough for the plaintiff to feel "mentally restrained" by the actions of the defendant. *Faniel*, 404 A.2d at 151.

Plaintiff's allegations that he was briefly stuck in traffic plainly do not come close to pleading the elements of false imprisonment. Plaintiff has not alleged that he was restrained or confined anywhere, let alone that any such restraint was "total." On the contrary, Plaintiff alleged that he continued moving intermittently and was eventually able to navigate out of the traffic jam and go home. Dkt. 1 ¶ 36; *see Valle v. Karagounis*, No. 22-7167, 2024 WL 3738445, at *6 (D.C. Cir. Aug. 9, 2024) (no false imprisonment claim where plaintiffs were not actually restrained, but rather were "able to leave"); *Martinez v. Constellis/Triple Canopy*, No. 20-cv-153

(RC), 2021 WL 1226747, at *4 (D.D.C. Apr. 1, 2021) (no false imprisonment claim where plaintiff's "own factual description suggests that he was able to walk away from the situation").

Plaintiff's Complaint does not contain a single allegation that there was any actual or apparent physical barrier or use or threat of force by anyone involved in the protest that confined him anywhere. Indeed, he was apparently so far away from the blockade that it was some time before he could even see the protesters, let alone be threatened by them. Dkt. 1 ¶ 36. There is nothing in his complaint that suggests that Plaintiff was not free at all times to navigate out of the traffic jam (as he eventually succeeded in doing). Again, in the end Plaintiff was able to drive out of the traffic and go home; there is no allegation in his Complaint that the protesters threatened or physically impeded him from doing so. In addition, nothing suggests that any action by the protesters prevented Plaintiff from pulling over and getting out of his car. Courts applying D.C. law have repeatedly held that voluntarily choosing to remain in a car does not constitute false imprisonment. *See Faniel*, 404 A.2d at 152–53; *Martinez*, 2021 WL 1226747, at *4.

The *Restatement of Torts* explicitly rejects Plaintiff's theory that obstructing a highway constitutes false imprisonment:

> In order to make the actor liable for false imprisonment, . . . it is necessary that he shall have confined another in a particular area, the boundaries of which are fixed by the will of the actor. It is not enough that the other's freedom of movement has been improperly restricted. Thus, one who blocks off a highway, intending to prevent the public from passing along it, is not liable for false imprisonment to one whose privilege to use the highway has been thus denied. Indeed, the actor does not incur any liability by so doing.

*Restatement (Second) of Torts* § 36, comment d (1965). Courts in this Circuit routinely apply the *Restatement* to false imprisonment claims. *See, e.g. Faniel*, 404 A.2d at 151; *Jones v. District of Columbia*, No. 16-cv-2405 (DLF) 2019 WL 5690341, at *5 (D.D.C. June 13, 2019). At bottom,

being stuck in traffic does not constitute false imprisonment. *See Gable v. Universal Acceptance Corp.*, 338 F. Supp. 3d 943, 957 (E.D. Wis. 2018) (parking tow truck behind plaintiff's car so plaintiff could not back up was not false imprisonment because plaintiffs were "free to leave their car"); *see also Brendlin v. California*, 551 U.S. 249, 262 (2007) (noting, in Fourth Amendment context, that being stuck in traffic as a result of a police officer pulling over someone else posed only "incidental restrictions on freedom of movement" and did not constitute a seizure).

Plaintiff's false imprisonment claim is frivolous and should be dismissed.

### c. To the Extent Plaintiff Pleads a Civil Conspiracy Claim, He Fails to State a Claim

Plaintiff's Complaint is titled "Verified Complaint for Conspiracy" and he repeatedly refers to a "conspiracy" and "co-conspirators" in his allegations. Dkt. 1 ¶¶ 1–2, 7, 28–29, 35, 37–58, 65, 76, 81. However, Plaintiff did not plead a separate claim for civil conspiracy. To the extent he seeks to assert one, he has failed to state a claim. First, it is long-settled law in D.C. that "civil conspiracy is not actionable as a stand-alone claim." *J.H.C. by Clarke v. District of Columbia*, No. 20-cv-1761 (CRC) 2021 WL 4462359, at *6 (D.D.C. Sept. 29, 2021); *see also Nader v. Democratic National Committee*, 567 F.3d 692, 697 (D.C. Cir. 2009). Because Plaintiff's underlying claims for public nuisance and false imprisonment are not cognizable, any derivative conspiracy claim necessarily fails as well. *J.H.C.*, 2021 WL 4462359, at *6.

Second, even if Plaintiff had stated a valid underlying tort claim, he has failed to plausibly allege a conspiracy. Under D.C. law, a civil conspiracy claim requires "(1) an agreement between two or more persons; (2) to commit an unlawful action, or to commit a lawful act by unlawful means; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; and (4) the overt act was done pursuant to a common scheme." *Id.*

14

Here, Plaintiff has entirely failed to allege an agreement between two or more parties. The existence of an agreement between two or more people is the "essential element of a conspiracy claim." *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 51 (D.D.C. 2019) (internal citations and quotation marks omitted). "To establish the existence of an agreement, the plaintiff must set forth more than just conclusory allegations of the agreement," they must provide "facts to support its existence." *Id.* at 51–52. Plaintiff's allegation that the Defendants "agreed" to blockade traffic is wholly conclusory and unsupported by any factual allegations. Dkt. 1 ¶ 37; *see Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) (allegations that defendants "agreed among themselves" were insufficient to plead agreement for purposes of a conspiracy claim); *Mattiaccio v. DHA Group, Inc.*, 20 F. Supp. 3d 220, 230–31 (D.D.C. 2014) (dismissing conspiracy claim where allegations of agreement were conclusory, unsupported, and provided no "indication of when or how such an agreement was brokered").

Plaintiff relies on a flyer posted on social media listing some of the Organizational Defendants as the organizers of an action at Union Station at 7:00 a.m. on the morning of February 1, 2024—a *separate* protest from the relevant traffic blockades. *Id.* ¶¶ 42–45. Plaintiff's unsupported speculation that the flyer about a different protest was intended to draw law enforcement attention away from the traffic blockades is insufficient to raise a plausible inference that the Defendants reached an agreement to orchestrate the blockades. *Id.* ¶ 46; *Harvey v. Kasco*, 109 F. Supp. 3d 173, 178 (D.D.C. 2015) (noting that "bald speculation" is insufficient to support a claim for conspiracy at the motion to dismiss stage). Otherwise, Plaintiff relies entirely on allegations that Defendants reshared each other's social media posts supporting the protest during and after the action, but merely resharing social media posts does not constitute a conspiracy. *Id.* ¶¶ 47–57. To hold otherwise would mean that anyone who shared a

post made by somebody else about an ongoing current event could be held liable for that event as a conspirator, an absurd result. Alleging that multiple groups and individuals care about and engage in advocacy around similar issues is insufficient to plead an agreement to establish the existence of a conspiracy. *See Kurd*, 374 F. Supp. 3d at 52 (allegations that defendants acted in a "coordinated fashion" and had a "common goal" were insufficient to plead agreement, as the allegations merely pled "parallel conduct that could just as well be independent action"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) ("Without more, parallel conduct does not suggest conspiracy").

### III.    Plaintiff's Lawsuit Is Retaliatory, Sanctionable, and Should be Dismissed with Prejudice

Plaintiff has clearly targeted Defendants not because he has cognizable legal claims, but based on their advocacy on issues of public interest.[8] He is suing Defendants because of a protest against Israel's actions in Gaza, an issue of great public interest. This suit also comes on the heels of a number of similar retaliatory lawsuits targeting activists critical of Israel being filed around the country, suggesting that this suit was not motivated by Plaintiff's desire to be compensated for his alleged injuries but is rather part of a nationwide strategy to inundate Palestine solidarity activists with expensive, time-consuming litigation. *See, e.g. Gerwaski v. State ex rel. Board of Regents of the Nevada System of Higher Education*, No. 2:24-cv-00985-APG-MDC, 2025 WL 1294107, at *8–10 (D. Nev. May 5, 2025) (dismissing claims against Palestine solidarity protesters under Nevada's anti-SLAPP law); *Parizer et al. v. AJP Education*

---

[8] Under the law of this Circuit as it currently stands, D.C.'s Anti-SLAPP Act, D.C. Code §§ 16-5501–16-5505, is not applicable in federal court. *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1333–37 (D.C. Cir. 2015); *Tah v. Global Witness Publishing, Inc.*, 991 F.3d 231, 238–39 (D.C. Cir. 2021). However, it bears noting that this lawsuit meets the Anti-SLAPP Act's definition of a Strategic Lawsuit Against Public Participation ("SLAPP"), and if this suit were brought in the D.C. Superior Court, Plaintiff would seek relief under that statute.

*Foundation et al.*, No. 1:24-cv-724 (E.D. Va. July 9, 2024); *Schnaider v AMP, et al.*, No. 24-cv-1067 (M.D. Fla. May 2, 2024); *Pollak, et ano. v. CodePink Women for Peace, et al.*, No. 2:24-cv-6253 (C.D. Cal. July 24, 2024).

Indeed, the same law firm that represents Plaintiff in this case filed an extremely similar, equally meritless lawsuit in Chicago against JVP and other organizations opposed to Israel's actions in Gaza, in which the plaintiff railed at length about his pro-Israel view of the geo-political history of the occupation of Palestine and argued that all advocacy in solidarity with the people of Palestine is undertaken at the behest of Hamas. *See Manhart v. National Students for Justice in Palestine, et al.*, No. 24-cv-8209, Dkt. 69, Second Amended Complaint ¶¶ 22–37 (N.D. Ill. Jan. 29, 2025). While the Plaintiff here did not indulge in such rantings, the political motivations of this lawsuit are nonetheless obvious. Plaintiff's counsel's web page related to this lawsuit specifically solicits plaintiffs who were "injured by 'anti-Zionist' traffic blockades" or "anti-Israel activists."[9] It is apparent that Plaintiff would not be pursuing this lawsuit if he had become stuck in traffic because of any of the numerous apolitical reasons that people find themselves in traffic every day, or as a result of a protest or parade for a cause he supports.

Plaintiff's effort to silence protesters whose message he disagrees with offends this nation's core values as embodied by the First Amendment to the United States Constitution. "The central commitment of the First Amendment . . . is that debate on public issues should be uninhibited, robust, and wide-open." *Bond v. Floyd*, 385 U.S. 116, 136 (1966) (cleaned up). While Plaintiff may have found the protesters' message offensive, it is a "bedrock principle" underlying the First Amendment that speech "cannot be restricted simply because society finds

---

[9] Hamilton Lincoln Law Institute, *Faoro v. Jewish Voice for Peace Inc., et al.* https://hlli.org/faoro-v-jvp/ (last accessed June 9, 2025).

the idea itself offensive or disagreeable." *Snyder*, 562 U.S. at 458. "Speech is often provocative and challenging. . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987).

Because no amendment can cure the fact that this is a meritless, retaliatory lawsuit brought for the improper purpose of harassing Defendants and suppressing their political movement, Defendant JVP respectfully submits that this case should be dismissed with prejudice. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (dismissal with prejudice warranted where "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency") (internal citations and quotation marks omitted).

This Court also should consider imposing sanctions pursuant to 28 U.S.C. § 1927, which provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The conduct of Plaintiff's counsel in bringing this lawsuit and other similar lawsuits—with frivolous claims intended solely to harass individuals and organizations whose politics Plaintiff and his counsel oppose—is sanctionable conduct. Section 1927 sanctions are warranted where there was "evidence of recklessness, bad faith, or improper motive" present in the attorney's conduct. *LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 906 (D.C. Cir. 1998). "A court may infer this malicious intent from a total lack of factual or legal basis in an attorney's filings." *Hall v. Dept. of Homeland Security*, 219 F. Supp. 3d 112, 119 (D.D.C. 2016), *aff'd*, No. 17-7008, 2017 WL

18

2348158 (D.C. Cir. May 17, 2017) (cleaned up). Sanctions under Section 1927 are warranted where the attorney's conduct was "at least reckless," *i.e.*, "the attorney in question acted recklessly or deliberately." *Robertson v. Cartinhour*, 883 F. Supp. 2d 121, 125 (D.D.C. 2012), *aff'd*, 554 F. App'x. 3 (D.C. Cir. 2014) (imposing Section 1927 sanctions). Here, the Plaintiff's claims against JVP suffer from a total lack of factual or legal basis, since the Plaintiff not only lacks standing to bring those claims, but also failed to state any viable claim as a matter of law.

Alternatively, this Court should consider imposing sanctions pursuant to its "inherent authority to impose sanctions necessary to achieve the orderly and expeditious disposition of cases before it." *Hall*, 219 F. Supp. 3d at 119 (citing *Chambers v. NASCO, Inc*., 501 U.S. 32, 46–47 (1991)). "[A] federal court may sanction an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (cleaned up). Inherent authority sanctions may include "contempt citations, fines, awards of attorney fees, and such other orders and sanctions as the court finds necessary." *Id.* Here, sanctions are warranted pursuant to this Court's inherent authority because Plaintiff's attorneys acted in bad faith and for oppressive reasons by targeting JVP based on their disagreement with JVP's First Amendment protected advocacy. Plaintiff's attempt to use the legal system to retaliate against JVP and others for their political activity cannot be countenanced and should be loudly condemned with every tool at the Court's disposal.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant Jewish Voice for Peace's Motion to Dismiss and award sanctions including attorneys' fees and costs.

19

Dated: June 16, 2025                              Respectfully submitted,


                                                  /s/ *Nora Snyder*
                                                  Nora Snyder [admitted pro hac vice]
                                                  Brad J. Thomson [admitted pro hac vice]
                                                  People's Law Office
                                                  1180 N. Milwaukee Ave
                                                  Chicago, IL 60642
                                                  773-235-0070
                                                  norasnyder@peopleslawoffice.com
                                                  brad@peopleslawoffice.com

                                                  /s/ *Hanna Chandoo*
                                                  Hanna Chandoo [admitted pro hac vice]
                                                  Dan Stormer [admitted pro hac vice]
                                                  Bina Ahmad [admitted pro hac vice]
                                                  Hadsell Stormer Renick & Dai, LLP
                                                  128 N Fair Oaks Ave
                                                  Pasadena, CA 91103
                                                  (626) 585-9600
                                                  hchandoo@hadsellstormer.com
                                                  dstormer@hadsellstormer.com
                                                  bahmad@hadsellstormer.com

                                                  /s/ *Lynne Bernabei*
                                                  Lynne Bernabei, D.C. Bar No. 938936
                                                  Alan R. Kabat, D.C. Bar No. 464258
                                                  Bernabei & Kabat, PLLC
                                                  1400 16th Street NW, Suite 500
                                                  Washington, DC 20036
                                                  (202)745-1942
                                                  bernabei@bernabeipllc.com
                                                  kabat@bernabeipllc.com

                                                  ***Attorneys for Defendant Jewish Voice for Peace***