IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DANIEL FAORO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:25-cv-289 (ABJ) |
| | ) | |
| v. | ) | |
| | ) | |
| JEWISH VOICE FOR PEACE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**DEFENDANT WESPAC FOUNDATION INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant WESPAC Foundation, Inc. ("WESPAC") respectfully submits this Reply Memorandum of Points and Authorities in support of its Motion to Dismiss Plaintiff Daniel Faoro's Complaint pursuant to Fed. R. Civ. P. 12(b)(1), (2) and (6).

## INTRODUCTION

Plaintiff is right that WESPAC did not commit "civil disobedience," and utterly wrong and malicious in suggesting that WESPAC engaged in "civil terrorism" in this case. Plaintiff's Opposition Brief ("Opp. Br."), Doc. 58, at 1. WESPAC had no awareness or involvement at all in the Union Station protest, the D.C. traffic jam, or any relevant events of the day. WESPAC did not disobey any laws and terrorized no one. Indeed, Plaintiff does not allege WESPAC did anything in relation to those events. Accordingly, WESPAC violated no one's rights and conspired with no one to "shut DC down[.]" *Id.* In accusing WESPAC of emphasizing rhetoric over law, *id.*, Plaintiff and his counsel are describing their own vice, not WESPAC's.

Plaintiff's Opposition Brief does not dispute that Plaintiff has not and cannot allege that WESPAC (1) had any knowledge of either the Union Station protest or the "blockade" that

1

occurred elsewhere in the District, or in Virginia where Faoro was allegedly inconvenienced in traffic for an hour; (2) went to or participated in any of the relevant events; (3) urged anyone (including PYM) to go to them; (4) communicated with anyone about them; (5) wrote about them in any social media post or otherwise; (6) provided any funds for them; or (7) did anything else in relation to them, in this District or elsewhere.

1. **Plaintiff Has Effectively Conceded the Lack of Any Causal Connection Between His Injuries and WESPAC's Fiscal Sponsorship of PYM**

In our initial Brief ("Init. Br."), Doc. 49, we explained repeatedly that without allegations that WESPAC itself did anything in connection with the traffic blockage or that WESPAC provided PYM with funds used in connection with it, there can't possibly be any causal connection between WESPAC's fiscal sponsorship of PYM and Plaintiff's alleged injury arising out of that blockage. Doc. 49 at 2, 3, 12, 16.[1] Since Plaintiff fails to allege that any money from WESPAC was ever used in connection with the alleged events, he has failed to plead that his alleged injury arose from any activity by WESPAC, *as a fiscal sponsor or otherwise,* let alone activity in or directed to this District. Plaintiff has therefore failed to allege any basis either the validity of his claims against WESPAC or for the exercise of personal jurisdiction over it.

Plaintiff's Opposition Brief does not address, let alone dispute, these fundamentally dispositive points. Indeed, it is particularly revealing that Faoro concedes – with an off-hand

---

[1] As emphasized in our initial Brief (at 12), "because Plaintiff has not and cannot truthfully allege that WESPAC transmitted any money to PYM or anyone else knowing or intending that it would be used in connection with this protest, or that any funds transmitted by WESPAC were actually used in connection with the protest, Plaintiff has simply failed to plead that his alleged injuries arose from any activity by WESPAC as PYM's fiscal sponsor. Plaintiff has also failed to plead that PYM itself did anything in connection with the protest, or spent any funds related to it. Therefore, not only would there be no violation by WESPAC of any legal duty to Plaintiff even if one existed, but there is also no causal connection between WESPAC's fiscal sponsorship of PYM and Plaintiff's injuries."

2

"Perhaps" – that he "cannot truthfully allege that WESPAC transmitted any money to PYM . . . knowing or intending that it would be used in connection with this protest." Opp. Br. at 41.

### 2. Two Courts Have Now Rejected Plaintiff's Baseless Fiscal Sponsorship Vicarious Liability Theory, Holding that WESPAC Had No Legal Duty to Plaintiff or Any Other Alleged Tort Victim Arising from Its Fiscal Sponsorship of PYM or any other Fiscal Sponsoree

We noted in our Initial Brief Judge Wilson's decision and reasoning in *StandWithUs v. Code Pink Women for Peace, et al.,* holding that "fiscal sponsorship of PYM is not enough to establish [WESPAC's] liability or support personal jurisdiction over them." Init. Br. at 6.[2]

Plaintiff's Opposition Brief does not meaningfully contest Judge Wilson's reasoning, but in the sentence that immediately follows the revealing concession set forth immediately above, Plaintiff confirms that he relies solely on the same bankrupt theory that *StandWithUs* categorically rejected; *i.e.,* that WESPAC's acting generally as a fiscal sponsor to PYM automatically subjects it to liability for anything anyone associated with PYM allegedly did to anyone, anywhere:

> Perhaps, but Faoro has plausibly alleged that WESPAC was PYM's fiscal sponsor, and as such had received tax-deductible donations intended for PYM and was then responsible for distributing and overseeing the use of such donations to ensure that the use of the funds aligned with WESPAC's tax-exempt mission.

Opp. Br. at 41-42.

Now, however, as WESPAC noted in its August 12, 2025 Notice of Supplemental Authority, Doc. 59, a second federal court has also firmly rejected that same theory. On August 7, 2025, Judge Mary M. Rowland in the United States District Court for the Northern District of Illinois dismissed all claims against WESPAC (and all defendants) in another harassing lawsuit

---

[2] In our initial Brief, at 2 n. 4, and 6, we cited *StandWithUs* as *Pollak, et ano. v. Code Pink Women for Peace, et al.*, using the first named plaintiff on the amended complaint that was dismissed. However, StandWithUs was the first named plaintiff on the original complaint, and the Central District of California retains the first named plaintiff in the original complaint when titling its cases. We regret any confusion.

3

also predicated upon WESPAC's serving as a fiscal sponsor. *Manhart v. WESPAC et al.*, 24-cv-08209, 2025 WL 2257408 (N.D. Ill. Aug. 7, 2025). Judge Rowland also imposed sanctions, given that the claims were frivolous and pursued for an improper purpose, *id.* at *15-18, as they are here.[3] Echoing Judge Wilson's words with respect to WESPAC in *StandWithUs,* Judge Rowland held that "Plaintiff cites no case or legal authority from any jurisdiction suggesting or even contemplating that *any* IRS rule could *ever* create a legal duty sufficient to substantiate a tort claim." *Manhart*, 2025 WL 2257408 at *12 (emphasis in original). Plaintiff's claims here against WESPAC fail as a matter of law for the same reasons.

Plaintiff now tries to distinguish *StandWithUs* by disclaiming reliance on any agency theory of liability. Opp. Br. at 33. He claims that WESPAC's liability is based solely on the "obligations and responsibilities it undertook when it agreed to be PYM's direct fiscal sponsor." *Id.*, at 33. But the alleged "obligations and responsibilities" of fiscal sponsorship here are the identical ones frivolously invoked in both the California and Illinois cases. Plaintiffs' claims against WESPAC in those cases and this one depend upon the same purported legal duty *to Plaintiff* – rather than to the government in return for a tax exemption – sought to be imposed on WESPAC. *That legal duty simply does not exist.*

Like Plaintiff here, none of the plaintiffs in those two cases have ever come up with one case anywhere in the nation supporting the existence of such duty "sufficient to substantiate a tort claim," in Judge Rowland's words. When offered the opportunity to fully brief this issue on motions to dismiss in *StandWithUs*, plaintiffs there "cite[d] *no legal authority* holding that fiscal

---

[3] *See, e.g.,* Init. Br. at 2, noting that "[t]his baseless Complaint is one of a number of SLAPP suits seeking to hold WESPAC liable for injuries purportedly resulting from protests that WESPAC had nothing to do with, *i.e.,* was not aware of in advance, did not participate in, did not promote, and did not fund."

4

sponsorship alone creates such liability." *StandWithUs,* Doc. 131 at 33 (emphasis added). And Judge Wilson, despite best efforts, found "none," noting that "[t]he most relevant case Plaintiffs cited, *New York ex rel. TZAC, Inc. v. New Israel Fund*, 520 F. Supp. 3d 362 (S.D.N.Y.), *actually undercuts* their argument." *Id.* (emphasis added).

Faoro effectively acknowledges this absence of legal authority by relying on a single IRS Private Letter Ruling ("PLR"). Opp. Br. at 33. But a PLR "may not be relied on as precedent by other taxpayers or IRS personnel."[4] Moreover, that PLR is solely concerned with the unidentified fiscal sponsor's tax exemption, a matter solely between a 501(c)(3) fiscal sponsor and its government. The PLR does not discuss or support Plaintiff's baseless claim that a fiscal sponsor has any legal duty to a plaintiff with a tort claim, arising from its tax exemption or fiscal sponsorship.[5]

Moreover, since no WESPAC money ever went to fund this protest, imposing vicarious liability on WESPAC for any injury to Plaintiff or his purported class as a result of WESPAC's fiscal sponsorship of PYM is not only legally baseless, but illogical. Not only is causation entirely lacking as addressed above, but even if WESPAC had some legal duty to Plaintiff to exercise discretion or control over the use of donors' money that WESPAC provided to PYM (it did not), WESPAC could not have violated such duty since not one dime originating from WESPAC was ever used to harm him. Thus, Plaintiff's claims against WESPAC would be frivolous and illogical no matter what form WESPAC's fiscal sponsorship took with PYM – whether it was a non-agency relationship between distinct legal entities (which it was), an agency relationship between distinct

---

[4] *See* Understanding IRS Guidance – A Primer, at https://www.irs.gov/newsroom/understanding-irs-guidance-a-brief-primer:
[5] Plaintiff also relies on a book about fiscal sponsorships that, for all Plaintiff says about it, also apparently never mentions or supports a fiscal sponsor's legal duty to plaintiffs with tort claims.

legal agencies (it was not), or one legal entity joined at the hip (it was not). Plaintiff's Opposition Brief has nothing to say about any of these obvious fundamental defects in its case against WESPAC.

### 3. Plaintiff Does Not Plausibly Claim that WESPAC and PYM Were One Legal Entity

In our initial Brief at 12-13, we noted that Plaintiff had pleaded his "alter-ego" or "integrated entity" theory upon information and belief, with no specific factual allegation reflecting such integration. Complaint ¶ 14.[6] Plaintiff's Opposition Brief doesn't meaningfully address those deficiencies. It offers no case law teaching that such an unsupported and conclusory pleading, upon information and belief, might pass muster. Nor does Plaintiff or his counsel deny that they pleaded such theory knowing of WESPAC's certified disclosures in *StandWithUs* and *Manhart* making clear that WESPAC and PYM were never alter-egos or one integrated entity with no separate legal identity. *Id.*, at 13 n. 10. WESPAC's corporate disclosure statement here also certifies as much. Doc. 48.

The allegation that PYM was not a corporation and lacked a 501(c)(3) tax-exemption of its own does not in any way suggest that WESPAC was the kind of "direct" fiscal sponsor that "took PYM in house" with no separate legal existence" or identity, purportedly described in the Colvin book. Opp. Br. at 32. Plaintiff manufactured this out of whole cloth. He cites no case or even an IRS regulation which automatically makes a fiscal sponsorship a "direct" one such that the sponsor is required to take on the liabilities of all fiscal sponsorees that are not corporate

---

[6] Neither does the Hedley Declaration's paragraphs dealing with WESPAC contain any factual support for the allegation that WESPAC was a "direct" fiscal sponsor of PYM, or that WESPAC and PYM were alter egos or one integrated entity. Doc. 1-1, ¶¶ 16-19 (stating only that "WESPAC acted as fiscal sponsor and the formal legal entity to accept tax-exempt donations for PYM pursuant to I.R.C. Section 501©(3)." ¶ 18).

6

entities, and we have found none.  Nor does Colvin suggest that all fiscal sponsors are, or must be, integrated entities required to take on all liabilities of their projects to anyone, anywhere on the planet. Nor could he.[7]

### 4. Plaintiff's Defense of His Assertion of Personal Jurisdiction Over WESPAC is Baseless

Because Faoro's Complaint does not allege that anyone on behalf of WESPAC was aware of, participated in, promoted or funded these events; or had any presence or transacted any business or committed any tortious acts injuring Plaintiff in this District, Plaintiff's personal jurisdictional claim is baseless.  Plaintiff's Opposition Brief effectively concedes that his only theory as to how personal jurisdiction could be exercised over WESPAC is based on WESPAC's fiscal sponsor relationship with PYM.  Opp. Br. at 32-42; or more precisely, theorizing that if

---

[7] A Tides Foundation whitepaper containing the findings of the first actual survey of fiscal sponsorships may be found at wp_fiscalsponsorfieldscan(1)(1).pdf  and shows that fiscal sponsorships are actually quite varied in form and roles, and that the majority are not integrated entities:

"The practice of fiscal sponsorship varies greatly. At the most fundamental level, a fiscal sponsor is a tax-exempt, nonprofit corporation that receives and disburses funds for programs that may or may not be incorporated. The fiscal sponsor often provides administrative and financial services to these groups, which may lack administrative or fiscal capacity. Fiscal sponsors vary greatly in the roles they play, the support they offer, the degree of liability they assume and the organizational models they utilize." At 3.

"The level of contact between fiscal sponsors and their projects varies greatly.  All have some contact, but a surprising number have very limited contact."  31% of fiscal sponsors meet with their projects once a year or less.  Only half make site visits at least once a year.  At 18.  "Only half of fiscal sponsors say that they have full discretion and control over project funds.  Just over a quarter say that discretion and control is shared between the sponsor and the project."  At 22.  "The legal relationship between project staff and their fiscal sponsor varies considerably.  Most commonly (57%), project staff are independent contractors of the projects (not the fiscal sponsor) for which they work.  Only one-quarter (26%) of fiscal sponsors say that project staff are employees of the fiscal sponsors."  At 24.

7

there is personal jurisdiction over PYM, there must automatically be personal jurisdiction over WESPAC because they are legally one entity. *Id.* at 38-42.

As noted above, Judge Wilson in *StandWithUs*, where Plaintiffs also claimed that WESPAC and PYM were legally one integrated entity,[8] rejected that jurisdictional theory. And for good reason. Plaintiffs in that case cited no case even hinting that this jurisdictional theory exists. Plaintiff here also cites no such case. Plaintiff's theory also flies in the face of both the fact that WESPAC and PYM were never one integrated entity, and that Plaintiff's Complaint does not plausibly allege that they were.

### 5. Plaintiff Effectively Concedes He Lacks Article III Standing With Respect To WESPAC

Plaintiff admits that he bears the burden of establishing standing, i.e., of showing that his injury "result[ed] from the defendant's conduct" and is "traceable directly" to that conduct, *id.*, at 4, 6. But Plaintiff claims only that he "plausibly alleges that his injury was caused by Defendants' blockade of traffic," *id.* at 2. That is effectively a concession that he lacks Article III standing with respect to *WESPAC*, because he has not alleged that WESPAC blocked traffic or funded or had any other involvement in the blockade. Similarly, Plaintiff claims that "Defendants used their social media accounts to take credit for the blockades, both during and afterwards. *Id.*, at 15. But this, like all the impermissible group pleading in the Complaint, also does not apply to WESPAC, which is not alleged to have used – and did not use – its social media accounts to take credit for the blockade; indeed, it had no prior awareness of it. In no way, therefore, can Plaintiff's injuries be said to be "traceable directly" to WESPAC. Plaintiff's claim of Article III Standing over WESPAC is therefore baseless.

---

[8] *See* Init. Br. at 13 n. 10.

Plaintiff's suggestion that WESPAC did not "raise the issue of traceability for" its actions, *id.*, at 16, ignores WESPAC's incorporation by reference of "the arguments of co-defendants that apply to WESPAC, [] without limitation[.]" Init. Br. at 4.

Moreover, that Plaintiff is suing WESPAC puts the lie to Plaintiff's statement that "[o]nly those that have been personally harmed by the intentional tort or unlawful conduct of activists like the Defendants here will have standing to sue." Opp. Br. at 20. Plaintiff persists in suing WESPAC here notwithstanding that WESPAC has committed no intentional torts or unlawful conduct but rather stands (falsely) accused only of negligent or reckless conduct.[9] What we have here is precisely the "unrestricted lawfare" and the "chilling of [WESPAC's] free speech" that Plaintiff denies. *Id.*

### 6. Plaintiff's Conspiracy Claim Against WESPAC is Frivolous

Plaintiff admits that "[a]ll coconspirators must share in the general objective." Opp. Br. at 29. While he never describes what the general objective of his alleged conspiracy was, his Complaint makes clear that the alleged objective was the blockade and the commission of the tort of false imprisonment. But that leaves WESPAC out, because WESPAC is not alleged to have had any knowledge of or participation in the blockade or the purported false imprisonment. Similarly, as evidence of the purported conspiracy, Plaintiff cites only activities of other Defendants – not WESPAC – in organizing the blockade, and in social media posts promoting it. Opp. Br. at 30-32. In short, there is nothing "plausible" in Plaintiff's contention that WESPAC joined a conspiracy whose objective was to conduct a blockade it knew nothing about.

---

[9] To address the other standing issues discussed by Plaintiff's brief,, and the issues relating to false imprisonment and the public nuisance injunctive relief claim that, according to Plaintiff, depends upon the viability of the false imprisonment claim, we again respectfully rely on the arguments of co-defendants that apply to WESPAC and incorporate them here by reference in order to avoid needless duplication.

The only "objective" WESPAC discernibly had was to promote its own speech and advocacy on behalf of Palestinians by generally engaging in fiscal sponsorships of PYM and others also inclined to engage in such advocacy.

## CONCLUSION

For the foregoing reasons and those contained in WESPAC's initial Brief, this Court should grant WESPAC's Motion to Dismiss Plaintiff's Complaint, with prejudice; together with such other and further relief which this Court deems just and proper.

Dated: August 30, 2025

Respectfully submitted,

/s/ Robert L. Herbst
Robert L. Herbst
420 Lexington Avenue, Suite 300
New York, New York 10170
(914) 450-8163
rherbst@herbstlawny.com

HUMAN RIGHTS FIRST
Joshua Colangelo-Bryan
121 West 36th Street, PMB 520
New York, New York 10018
(212) 845-5243
colangeloj@humanrightsfirst.org

/s/ George R.A. Doumar
George R.A. Doumar, D.C. Bar No. 415446
Raj H. Patel, D.C. Bar No. 240973
Doumar Martin, PLLC
1530 Wilson Boulevard, Suite 1060
Arlington, Virginia 22209
Tel: (703) 243-3737
gdoumar@doumarmartin.com

*Attorneys for Defendant WESPAC Foundation, Inc.*