IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DANIEL FAORO, | ) | |
| Plaintiff | ) | |
| | ) | |
| V. | ) | No. 1:25-cv-289 (ABJ) |
| | ) | |
| JEWISH VOICE FOR PEACE, ET AL | ) | |
| Defendants | ) | |

**DEFENDANT DISSENTERS'S REPLY
IN SUPPORT OF MOTION TO DISMISS**

Defendant Dissenters hereby replies to "Plaintiff Faoro's Omnibus Response in Opposition to Defendants' Rule 12 Motions (ECF Nos. 46, 47, 49, 50, 52, 55)," ("Opposition") [ECF 58].

After Plaintiff filed his Opposition, another U.S. district court in a similar litigation brought by the same counsel representing the Plaintiff here conclusively rejected the same novel theories alleged in Faoro's Complaint. On August 7, 2025, the U.S. District Court for the Northern District of Illinois ruled that a motorist stuck in their car in a traffic jam does not suffer false imprisonment and has no cause of action against demonstrators who may have caused the traffic jam. *Manhart v. WESPAC Foundation, Inc.*, No. 24-cv-8209, 2025 U.S. Dist. LEXIS 152019 (N. D. Ill. Aug. 7, 2025), a copy of which was filed with this court August 14, 2025, [ECF 60-1].

*Manhart* was essentially the same case as this. Demonstrators locked arms and blocked the highway leading to O'Hare airport, so Manhart and others were held up. Indeed, the harm

1

there alleged was much greater than here; the blockage was not cleared for two-and-a-half hours and Manhart himself missed his flight out of O'Hare. Nevertheless, the *Manhart* court dismissed all of Manhart's claims with prejudice (*Manhart*, 2025 U.S. Dist. LEXIS 152019, at *50), denounced the use of litigation to suppress public expressions of opinion (*id.*, at *43-44), and imposed sanctions on Manhart or the attorneys behind his suit, Hamilton Lincoln Legal Institute (HLLI) (*id.*, at *41-50). As in *Manhart*, Mr. Faoro's entire Complaint must be dismissed with prejudice.

## I. PLAINTIFF FAORO HAS WITHDRAWN HIS CLAIM FOR MONEY DAMAGES FOR PUBLIC NUISANCE BY CLAIMING FOR THE CLASS MEMEBERS.

Since the legal concept of *nuisance* originally rested on interference with the use of land, and only later under the label *public nuisance* was extended to some enumerated threats to public morality and community order (such as brothels and gambling dens), blocking a roadway is not a public nuisance; it is a simple misdemeanor to be handled by the police. Plaintiff's only relevant citation, *B&W Management v. Tasea,* 451 A.2d 879 (D.C. 1982) says in a leading paragraph that the demand for an injunction was moot because the offending nuisance, a parking garage, had gone away, and that the court would only consider the claim for damages, which it went on to deny. 451 A.2d at 881. Neither *B&W Management* nor any other cited case has ever held a demonstration blocking a roadway to be a public nuisance.

Assuming a public nuisance, Plaintiff and HLLI rely on Restatement (Second) of Torts § 821C (Am. Law Inst. 1965), discussing money damages and injunctive relief:

> Who Can Recover for Public Nuisance
>
> (1) In order to recover damages in an individual action for a public nuisance, one must have suffered harm of a kind different from that suffered by other members of

2

the public exercising the right common to the general public that was the subject of interference.

(2) In order to maintain a proceeding to enjoin to abate a public nuisance one must
(a) have the right to recover damages, as indicated in Subsection (1), or
(b) have authority as a public official or public agency to represent the state or a political subdivision in the matter, or
(c) have standing to sue as a representative of the general public, as a citizen in a citizen's action or as a member of a class in a class action.

Restatement (Second) Torts § 821C.

### A. After the withdrawal of all claims for money damages for the class members, there are no money damages claims remaining.

Plaintiff cannot get personal damages under subsection (1) because to sue as an individual for a public nuisance he must claim that his damages were qualitatively and not merely quantitatively different from the public's in general. But that would defeat his claim to champion a class action. Plaintiff and HLLI abandon any attempt to present Mr. Faoro's delay as distinguishable from those of the rest of the public by asking that a class action be certified and that he be accepted as its representative champion.

Even without the class action, Plaintiff Faoro seeks to remedy the same problem that the police and prosecutors dealt with back on February 1, 2024. Such duplication of remedies and possible confusions and contradictions is the reason that private damage suits for public nuisances are not allowed unless the particular plaintiff's damages differ in kind from those of the rest of the public. Accordingly, any parts of Faoro's Complaint demanding damages for himself have to be dismissed.

As for damages for the members of the class, Plaintiff in his Opposition states that he "seeks only injunctive relief for this class." Opposition 12. On page 28 he states that "Faoro seeks solely injunctive relief and pursues the claim as a class action." This concession robs the Complaint of any claim to the amount in controversy needed for Federal diversity jurisdiction.

3

28 U.S.C. § 1332(d) does allow aggregation of the claims of class members to reach the jurisdictional minimum, but if the claims are waived they aggregate to zero, however numerous they may be. More importantly, the concession takes away the *in terrorem* effect of the $5,000,000 damages demand.

If in fact Plaintiff Faoro does mean to claim personal money damages, such damages are nowhere alleged; if, as many contemporaries routinely do, he accomplished as much at home as he would have had he got to his office, his damages would be fair compensation for brief inconvenience and annoyance—an amount more appropriate for the small claims division of D.C. Superior Court than for a U.S. District Court.

### B. Any remaining claims for injunctive relief would infringe upon the powers and responsibilities of the public authorities.

Withdrawal of the class action money claims leaves Plaintiff only claiming injunctive relief under subsection (2) of Restatement § 821C. That subsection requires that suits to enjoin public nuisances be brought by persons with money damages, § (2)(a), or by the public authorities described in § (2)(b), and leaves the door open only for private suitors who "have standing to sue as a representative of the general public, as a citizen in a citizen's action, or as a member of a class in a class action," § (2)(c). That refers to those drawn into a pre-existing class action. To read it more broadly, to assume that anyone who alleges a class action has thereby made himself a "representative of the general public," would make the exception swallow the rule. It would make public nuisances more exposed to an individual's or a class's injunctive interference than to an individual's demand for damages. That would be even more contrary to the underlying reason that individuals are barred from suing for damages against public nuisances to prevent inconsistent remedies; inconsistent injunctions would be even more onerous than cumulative damages judgments. *Cf.* Mark A. Rothstein, "Private Actions for Public

4

Nuisance: The Standing Problem," 76 W. Va. L. Rev. 453, 455-456 (1974). To the extent prosecutors got probation orders or deferred action agreements to refrain from future traffic blockage, the equivalent of appropriate injunctive relief has been properly exacted by the proper public agent.

In *Manhart,* although the public nuisance claim had already been abandoned, one of that court's reasons for rejecting false imprisonment was that it was deemed to be merely public nuisance back in a different guise. *Manhart,* 2025 U.S. Dist. LEXIS 152019, at * 22-23. Plaintiff here tries to explain away his counsel's abandonment of the public nuisance claim in *Manhart* as a merely tactical decision based on a non-recurring event, Opposition 28 n.9, but the record in *Manhart* shows that counsel's decision was driven by the untenable nature of the claim. A January 6, 2025, letter from defense counsel to HLLI pointed out that "There is no private right of action to sue for obstructing a highway as a public nuisance" (page 2, middle paragraph, ECF 76-1, an exhibit attached to the February 2, 2025 motion for sanctions, ECF 76, in *Manhart*) and promised to seek sanctions if the spurious claim was not withdrawn. HLLI's explanation in its Opposition here that Manhart could not ask for an injunction because his trip to O'Hare was not a regularly recurring event does not explain why a claim for public nuisance damages would not have been left in their second amended complaint. Obviously HLLI dropped the claim because it was spurious enough to expose them to Rule 11 sanctions; if it was spurious in *Manhart* it too is spurious to survive a dismissal motion in the instant case.

## II. PERSONS DETAINED IN A TRAFFIC JAM ARE NOT VICITIMS OF THE TORT OF FALSE IMPRISONMENT.

Manhart's second amended complaint was dismissed in its entirety. It consisted of nine counts, each ingeniously demanding damages on various theories, all of them in effect invoking

5

the idea that a defendant who has intentionally blocked a highway has falsely imprisoned those caught in the resulting jam.  As Defendants have repeatedly pointed out in this case, the Restatement of Torts is explicit that persons caught in a highway blockage are not suffering false imprisonment:

> Blocking highway. In order to make the actor liable for false imprisonment . . . . it is necessary that he shall have confined another in a particular area, the boundaries of which are fixed by the will of the actor. It is not enough that the other's freedom of movement has been improperly restricted. Thus, one who blocks off a highway, intending to prevent the public from passing along it, is not liable for false imprisonment to one whose privilege to use the highway has been thus denied . . . .

Restatement (Second) of Torts §36 cmt. d. The *Manhart* court relied on this comment and went on to say that the Restatement is clear that intentionally blocking someone from going in a particular direction is not false imprisonment. *Manhart*, 2025 U.S. Dist. LEXIS 152019, at *12-13 (quoting Prosser and Keeton on Torts (5th ed., 1984) at 47, "[T]he restraint must be total, rather than a mere obstruction of the right to go where the plaintiff pleases.").

The *Manhart* court also considered and rejected arguments Plaintiff makes here, that the practicalities of modern highway traffic—numerous cars keeping anyone from backing out the jam, laws against abandoning a vehicle, etc.—should limit the rule that blocking a roadway is not false imprisonment. *Manhart*, 2025 U.S. Dist. LEXIS 152019, at *17-19; Opposition 26. After the dismissal of Manhart's claim, the secondary authorities cited by Defendants here are now endorsed by express, well-reasoned judicial authority. Plaintiff's "Count II: False Imprisonment" must be dismissed.

## III. ISSUE PRECLUSION AND PUBLIC POLICY REQUIRE PROMPT DISMISSAL OF THE ENTIRE COMPLAINT WITH PREJUDICE.

The real party in interest behind both *Manhart* and this suit is the Hamilton Lincoln Legal Institute. That is clear enough from the de minimis damages of the nominal plaintiffs and the

6

fulsome rhetoric throughout the complaints and the plaintiffs' other pleadings, but HLLI spells it out explicitly in its plea to be made counsel for the class action here. *See* "Plaintiff's Motion for Class Certification and Appointment of Class Counsel and Memorandum of Law in Support," [ECF 42] 19-20 (explaining that HLLI also filed the *Manhart* case making the same claims as Faoro and against the some of same defendants as Faoro). HLLI is a group of lawyers motivated by a particular political viewpoint and dedicated to silencing those it disagrees by vexatious litigation. It is all on their web site, https://hlli.org.

Therefore the *Manhart* decision is more than persuasive authority supporting dismissal of this Complaint; it requires dismissal of this Complaint by the doctrine of issue preclusion or collateral estoppel. "Under the federal law of res judicata, a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." *Aerojet-General v. Askew,* 511 F.2d 710, 719 (5th Cir. 1975). In *Manhart* and *Faoro* the nominal plaintiffs' interests are in fact closely aligned, but the true plaintiff is HLLI. *See Jackson v. Hayakawa,* 605 F.2d 1121, 1126 (9th Cir. 1979), recognizing the importance of identity of legal representation. In *Jackson*, the parties were distinct arrested persons challenging the effects of their individual arrests under a statute of questionable validity. But because it was their counsel whose previous litigation had resulted in the courts upholding the statute, re-litigation of its validity was issue precluded. The identity of counsel HLLI as the real party in interest in *Manhart* and *Faoro* requires complete dismissal of *Faoro*.

## **CONCLUSION**

Dissenters and the other Defendants have emphasized what is obvious on the face of the Complaint: It is a polemical document aimed at putting a prohibitive price ($5,000,000) on support for one particular viewpoint in an internationally debated issue. Dissenters hereby

7

incorporates by reference all relevant and effective arguments made in the other Defendants' replies to the Opposition, refraining from repeating them all so as not to unnecessarily enlarge the record.

*Manhart* recognizes and affirms that a private citizen may not sue to recover damages from a public nuisance if their damages are qualitatively the same as those of the general public; nor will a class action lie; nor may a person inconvenienced and detained in a traffic jam claim false imprisonment. For the reasons stated above and in Defendants' respective motions to dismiss, Plaintiff Faoro's complaint must be dismissed, with prejudice, in its entirety.

September 3, 2025                                              Respectfully submitted,

/s/ *Frank Panopoulos*
Frank Panopoulos, DC Bar No. 459365
26 Trailridge Ct.
Potomac, MD 20854
fpanopoulos@icloud.com
Tel: 301-956-4249

/s/ *Ann C. Wilcox*
Ann C. Wilcox, DC Bar No. 421908
13830 Tabiona Drive
Silver Spring, MD  20906
Ann1Wilcox@gmail.com
202-441-3265

*Counsel for Defendant Dissenters*

8