## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DANIEL FAORO,**

       *Plaintiff,*

   v.

**JEWISH VOICE FOR PEACE,** *et al.***,**

       *Defendants.*

**Case No. 1:25-cv-00289**

Hon. Amy Berman Jackson

## DEFENDANT PALESTINIAN YOUTH MOVEMENT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS (ECF NO. 50)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 1

LEGAL STANDARDS ................................................................................................... 3

ARGUMENT .................................................................................................................. 3

   I.   **Plaintiff Fails to State a Claim for False Imprisonment.** ................................. 3

      *A.   Plaintiff Cannot Establish Total Restraint.* ..................................................... 3

      *B.   Plaintiff Lacks Standing Because He Does Not Sufficiently Allege False Imprisonment.* 6

   II.  **Plaintiff's Public Nuisance Claim Fails.** ......................................................... 7

      *A.   Plaintiff Lacks Standing to Pursue a Claim for Public Nuisance.* ................. 7

      *B.   Plaintiff Does Not Have Standing to Obtain Injunctive Relief.* ..................... 8

   III. **Plaintiff Fails to State a Claim for Conspiracy.** .............................................. 10

   IV. **PYM Incorporates the Arguments Made by Co-Defendants to the Extent Their Reasoning Applies to PYM.** ......................................................................... 13

CONCLUSION .............................................................................................................. 13

CERTIFICATE OF SERVICE ...................................................................................... 14

# TABLE OF AUTHORITIES

## Cases

*Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81 (D.D.C. 2010) ..........................................12

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015)..........................................................................3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................3

*B&W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879 (D.C. 1982)................................................7, 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...................................................................10

*Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856 (D.C. Cir. 2022) ............................................3

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........................................................................8

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ...................................................................8

*Faniel v. Chesapeake and Potomac Tel. Co. of Maryland*, 404 A.2d 147 (D.C. 1979) .................4

*Fox v. District of Columbia*, 851 F. Supp. 2d 10 (D.D.C. 2012) .....................................................9

*G'Sell v. Carven*, 724 F. Supp. 2d 101 (D.D.C. 2010) .................................................................6

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) .................................................................10

*Holloway v. Bristol-Myers Corp.*, 347 F. Supp. 17 (D.D.C. 1971) ............................................7, 8

*In re Navy Chaplaincy*, 697 F.3d 1171 (D.C. Cir. 2012) .............................................................9

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)...........................................................................3

*Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233 (D.D.C. 2012)............................................8, 9

*NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77 (D.C. Cir. 2012) ....................................9

*Owens v. BNP Paribas, S.A.*, 897 F.3d 266 (D.C. Cir. 2018) .........................................................3

*Robertson v. District of Columbia*, 269 A.3d 1022 (D.C. 2022) ..................................................10

*Romany v. Museum of the Bible*, 2019 D.C. Super. LEXIS 310 (D.C. Super. Ct. 2019) ...........5, 6

*Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*, 134 F.4th 585 (D.C. Cir. 2025)........3
*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ...............................................................................7

*Taylor v. F.A.A.*, 351 F. Supp. 3d 97 (D.D.C. 2018) ........................................................6

*United States v. Tarantino*, 846 F.2d 1384 (D.C. Cir. 1988)..........................................12

*United Transp. Union v. I.C.C.*, 891 F.2d 908 (D.C. Cir. 1989).....................................3

*Warth v. Seldin*, 422 U.S. 490 (1975) ...........................................................................3

**Statutes**

Va. Code Ann. § 46.2-1200.1 ...........................................................................................5

**Other Authorities**

*Manhart v. WESPAC Foundation, Inc, et al.*, Case No. 24-cv-8209 (N.D. Ill. Aug. 7, 2025) ....1, 5

**Rules**

Fed. R. Civ. P. 12(b)(6)......................................................................................................3

**Treatises**

Restatement (Second) of Torts § 36 .............................................................................4, 5

Restatement (Second) of Torts § 821C...........................................................................7

## INTRODUCTION

Plaintiff's claims fail for the same reasons an indistinguishable case failed several weeks ago. In *Manhart v. WESPAC Foundation, Inc., et al.*, the Northern District of Illinois dismissed with prejudice a substantially similar complaint arising from a protest-related highway blockage brought by the same counsel for Plaintiff. The *Manhart* court held that temporarily blocking one direction of travel on a highway does not confine motorists within boundaries fixed by defendants, and that any inability to depart one's vehicle due to surrounding traffic or local vehicle-abandonment rules is legally irrelevant to the element of confinement in a false imprisonment claim. The court concluded that there is no false imprisonment where a defendant obstructs only forward travel and "other individuals who the defendant does not control subsequently prevent the plaintiff from exiting in another direction." Mem. Op. & Order, at 13, *Manhart v. WESPAC Foundation, Inc, et al.*, Case No. 24-cv-8209 (N.D. Ill. Aug. 7, 2025) (ECF No. 109). It further explained that the "means of escape" inquiry is separate from, and cannot substitute for, the requirement that defendants actually confine the plaintiff.

The same result should follow here. Plaintiff alleges that he sat in traffic for less than an hour because of protest activity occurring miles away, and he pleads no facts showing that Defendant Palestinian Youth Movement ("PYM") fixed the boundaries of any confinement—or that PYM even participated in, directed, or communicated with those who temporarily blocked certain intersections. Those are precisely the defects *Manhart* found fatal to nearly identical claims.

## FACTUAL BACKGROUND

Plaintiff alleges that, on February 1, 2024, he experienced traffic on Route 50 on his way to Washington, D.C., which he believes was caused by various expressive assemblies taking place that morning at five intersections several miles from his location. Compl., ECF No. 1 ¶ 2. He

further claims that he was stuck in this traffic for "close to an hour" before he decided to return home. *Id.* ¶ 36.

Plaintiff does not clarify whether he was able to work from home that day, but alleges that the experience caused him to suffer "loss of wages or income;" "annoyance, inconvenience and physical discomfort, anxiety and emotional distress by being confined in a stationary vehicle for an unreasonable period of time and uncertainty about when they might be free to resume traveling;" "loss of time that could otherwise have been spent working, taking care of personal business, or enjoying time with family and friends;" and finally, "loss of personal freedom." *Id.* ¶¶ 78, 82.

The Complaint alleges that PYM "conspired" with "hundreds" of others to "blockade[] traffic for approximately two hours." *Id.* ¶ 28. The only support offered in the Complaint for this allegation are social media posts by PYM and others advertising a rally at Union Station that morning and, later, updating their followers on what transpired thereafter. *Id.* ¶¶ 37, 48-49, 54. The Complaint alleges, based purely on a reporter's speculation, the posts regarding the Union Station rally were intended to "fool" law enforcement. *Id.* ¶ 64. It does not acknowledge that the rally at Union Station did, in fact, occur.

Plaintiff does not allege that PYM or any of the other Defendants were present at the blocked intersections, directed others to participate in blocking traffic, or were in any way affiliated with the twenty-three individuals arrested. The Complaint contains no allegations that the individuals who participated in these actions communicated with PYM or other Defendants before or during the protests.

## LEGAL STANDARDS

A plaintiff bears the burden of establishing that he has standing to invoke a federal court's jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). Standing cannot be established on the basis of alleged injuries to others, including putative class members. A plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975). The standing inquiry is "more rigorous" when a plaintiff seeks declaratory and injunctive relief against predicted future injury. *Arpaio*, 797 F.3d at 21 (quoting *United Transp. Union v. I.C.C.*, 891 F.2d 908, 913 (D.C. Cir. 1989)).

Courts assessing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) must accept the plaintiff's factual allegations as true and draw all reasonable inferences from those allegations in his favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* "A claim cannot survive a motion to dismiss if based on inferences 'unsupported by facts' or legal conclusions disguised as factual allegations." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 866 (D.C. Cir. 2022) (quoting *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272 (D.C. Cir. 2018)). In determining whether a claim is plausible, the Court may "draw on its judicial experience and common sense." *Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*, 134 F.4th 585, 591 (D.C. Cir. 2025) (internal citations omitted).

## ARGUMENT

**I.    Plaintiff Fails to State a Claim for False Imprisonment.**

*A.  Plaintiff Cannot Establish Total Restraint.*

Plaintiff's false imprisonment claim fails for a very simple reason—he cannot establish that he was confined. His arguments in opposition do not make it otherwise. "To constitute imprisonment, the restraint of [Plaintiff's] freedom of movement . . . must have been total." *Faniel v. Chesapeake and Potomac Tel. Co. of Maryland*, 404 A.2d 147, 151 (D.C. 1979). Moreover, "[t]he evidence must establish a restraint against the plaintiff's will, as where [he] yields to force, to the threat of force or to the assertion of authority." *Id.* at 151-52.

Though he does not squarely address totality of restraint in his opposition brief, Plaintiff makes clear that his theory of false imprisonment relies on both the alleged blockade in front of him and the cars behind him. *See* ECF No. 58 at 24. But that is a problem because Defendants did not place the cars behind him. False imprisonment requires "boundaries fixed by the defendant" — not by happenstance or the ordinary structure of traffic. *Faniel*, 404 A.2d at 150. Allegations that motorists behind Plaintiff prevented him from turning around does not transform Defendants' alleged frontage obstruction into a total restraint within boundaries fixed by Defendants.

This is one reason why the Restatement (Second) of Torts says blocking traffic in one direction cannot support a false imprisonment claim. *See* § 36, comment d. Plaintiff argues that *comment d* refers to a motorist prevented from entering a highway altogether after a blockade has already caused traffic who thus cannot establish false imprisonment. This reading is quite unnatural. *Comment d* discusses individuals "passing along" a highway, not entering one. The most obvious reading of *comment d* describes this case. Plaintiff "contrasts" *comment d* with *Illustration 11* to support his reading, but *Illustration 11* is clearly a hypothetical illustrating the application of *comment d*. Regardless, it explains that if one places a barrier in front of a motorist, but not behind him, that person is not liable for false imprisonment. That is the situation here.

Perhaps understanding that he has a problem with establishing that the Defendants were responsible for his alleged restraint, Plaintiff distorts the elements of a false imprisonment claim. He claims that "[d]efendants are thus incorrect when they assert [] that the blockade did not establish fixed boundaries of confinement, because the Defendants' intent was to confine motorists like Faoro in their vehicles on gridlocked roadways leading into the District." ECF No. 50 at 25. Accepting as true that Defendants intended such a thing, intending to restrain Plaintiff is not the same thing as actually restraining him. Plaintiff cannot rescue his attempt to establish the restraint element by transforming it into an inquiry into intent. To accept that a plaintiff can establish an actual physical restraint by alleging a defendant intended to restrain him would stretch the tort of false imprisonment too far.

Plaintiff also objects to Defendants' argument that he was able to exit his vehicle at any time by pointing that he would have "risk[ed] criminal penalties" under Va. Code Ann. § 46.2-1200.1 which prohibits abandoning vehicles. ECF No. 58 at 26. That is irrelevant. As the *Manhart* court explained, "In a claim for false imprisonment, whether a plaintiff had a reasonable means of escape is a separate inquiry from whether the defendant confined the plaintiff." Memorandum Opinion and Order at 14, *Manhart v. Wespac Foundation, Inc.*, Case No. 24-cv-08209 (N.D. Ill. Aug. 7, 2025) (ECF No. 109) (citing *Restatement (Second) of Torts* § 36(1)-(2)). While the non-existence of a reasonable means of escape is a basis to find confinement, it does not establish that the defendant confined the plaintiff. *Id.* "Whatever conditions prevented Plaintiff from exiting his car on the highway are present every time Plaintiff is in his car on the highway; Defendants did not impose them on Plaintiff." *Id.* The *Manhart* court's logic applies with equal force here.

The cases cited by Plaintiff are of no help to him either. Plaintiff explains that the court in *Romany v. Museum of the Bible*, 2019 D.C. Super. LEXIS 310 (D.C. Super. Ct. 2019), found the

plaintiff's allegation that the defendants blocked their only exit was sufficient to establish detention. ECF No. 58 at 23. Plaintiff also indicates that the court in *G'Sell v. Carven*, 724 F. Supp. 2d 101 (D.D.C. 2010), declined to dismiss a false imprisonment claim because the plaintiff alleged that a defendant trapped them in an elevator. ECF No. 58 at 22. Plaintiff's treatment of these cases helpfully points out the key fact that distinguishes them from this case: the defendants blocked the only exits. Unlike in those cases, Plaintiff does not allege that Defendants "'were physically blocking Plaintiff's only exit.'" ECF No. 58 at 23 (quoting *Romany*, 2019 D.C. Super. LEXIS 310, at *15-*17). That distinction is fatal to his false imprisonment claim.

For the reasons above and those raised in Defendants' motions, Plaintiff has not stated a plausible claim for false imprisonment.

### B. *Plaintiff Lacks Standing Because He Does Not Sufficiently Allege False Imprisonment.*

Plaintiff does not have standing under his own theory. Normally, "the bare allegation that a plaintiff has lost the value of [] time and resources . . . sets out an injury that is too abstract and indefinite to confer Article III standing." *Taylor v. F.A.A.*, 351 F. Supp. 3d 97, 103 (D.D.C. 2018) (internal quotation omitted). Plaintiff argues that this normal rule does not apply, and he satisfies Article III's injury-in-fact requirement because he alleges a violation of a private right recognized at common law. *See* ECF No. 58 at 7-8. Following this logic, whether Plaintiff has established an injury-in-fact depends on whether he has properly stated a claim for false imprisonment.[1] For the reasons stated above, Plaintiff has not sufficiently stated a claim for false imprisonment and therefore has not sufficiently alleged the violation of a common law private right that can support standing.

---

[1] Plaintiff's alleged public nuisance injury cannot support Article III standing either because he does not satisfy public nuisance's particular standing requirements. This is addressed in the next section.

## II.    Plaintiff's Public Nuisance Claim Fails.

### A.  Plaintiff Lacks Standing to Pursue a Claim for Public Nuisance.

Plaintiff argues that he need not allege special damages distinct from the public in order to bring his public nuisance claim because he has alleged it in a class action. ECF No. 58 at 12. This argument is meritless. Remarkably, Plaintiff claims that *B&W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879 (D.C. 1982), "recognized" that if one "represents a broad class of individuals entitled to enjoin a public nuisance," he need not allege special damages. ECF No. 58 at 12. *B&W Management* recognized no such thing. *B&W Management* cites the Restatement's coverage of the special damages requirement in Restatement (Second) of Torts § 821C, *B&W Mgmt.*, 451 A.2d at 882, but says nothing at all about § 821C(2)(c) wherein the Restatement presents a class action as an alternative to establishing special damages. In fact, *B&W Management* explains the special damages requirement by quoting *Holloway v. Bristol-Myers Corp.* which *dismissed* a class public nuisance claim because the plaintiff did not allege special damages on behalf of herself or any class member. 347 F. Supp. 17, 24 (D.D.C. 1971) ("As to plaintiff['s] claim for relief under a tort of public nuisance, a private individual may maintain an action for a public nuisance only if she suffers special damages, distinct from that common to the public. [] Plaintiff [] has made no such allegation on behalf of herself or any member of the class.").

*Holloway's* treatment of the intersection of class actions and the special damages requirement makes sense when one considers that class actions do not obviate the need for named plaintiffs to establish individual standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016). For private individuals, the tort of public nuisance requires the establishment of special damages. Without them, the individual does not have standing to bring a public nuisance claim. The fact that

Plaintiff has alleged a class claim for public nuisance simply does not matter. He still must allege special damages.

Understanding that he cannot meet the special damages requirement, Plaintiff attempts to convince the Court he does not have to by claiming *B&W Management* (the only case he cites for the proposition) "recognizes" a class action exception. This is blatantly false. Furthermore, Plaintiff conveniently ignores *Holloway*, a case directly contradicting his argument and cited in the same paragraph in *B&W Management* from which Plaintiff quotes at ECF No. 58 at 12. Plaintiff cannot establish standing to pursue a public nuisance claim and the Court should dismiss this claim.

### B. *Plaintiff Does Not Have Standing to Obtain Injunctive Relief.*

To obtain forward-looking relief, a plaintiff must show a "real and immediate threat" of repeated injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Plaintiff alleges no facts suggesting he is likely to encounter another traffic blockade organized by PYM or that such an event is imminent. At most, he speculates that Defendants may engage in future protests, but speculative fears cannot substitute for the concrete likelihood of recurrence required by Article III. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Plaintiff argues that he entitled to injunctive relief because he has made a "'more than . . . . nebulous' assertion of the existence of an ongoing pattern and practice" of "illegal blockades" by Defendants. ECF No. 58 at 13 (quoting *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 260 (D.D.C. 2012). What Plaintiff actually alleges is that Defendants have a pattern and practice of protesting. He alleges that Defendant Jewish Voice for Peace ("JVP") "illegally occupied" a Congressional office on October 18, 2023; that JVP "organized a sit-in in Grand Central Station" on October 27, 2023; that "activists" protested at Union Station "to show support for Hamas" in

November 2023; that "anti-Israel activists" protested outside the White House on January 13, 2024; that some defendants "appear to have organized" a protest near Reagan National Airport in January 2024; that "activists" staged a protest in the Dirksen Senate Building on April 9, 2024; that "activists" protested in Lafayette Square on June 8, 2024; that "anti-Israel activists" protested in the Cannon Office Building on July 23, 2024; and that there was a protest at Union Station on July 24, 2024. Compl., ECF No. ¶¶ 3-4, 38-39. Most of these events do not involve the same actions involved in this case and are alleged to have been organized by unknown "anti-Israel activists." Only one is alleged to have been organized by PYM (the January 2024 Reagan National Airport protest) and occurred over a year ago, close in time to the February 1 protest at issue. What Plaintiff characterizes as evidence of a pattern and practice justifying injunctive relief is really a collection of anecdotes about protests Plaintiff does not approve of organized by decentralized actors, most of whom are not defendants, and characterized by activities far afield from those alleged in this case.

While the cases cited by Plaintiff acknowledge the possibility of establishing standing to pursue injunctive relief by alleging a pattern and practice, they do not support his claim to have done so here for two reasons. First, the cases are all factually distinguishable. Each one involved a government defendant enforcing a specific policy that the plaintiffs were likely to encounter again. *See NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77 (D.C. Cir. 2012) (involving a policy of denying Medicaid prescription coverage); *Nat'l Sec. Counselors*, 989 F. Supp (involving systematic noncompliance with the Freedom of Information Act); *Fox v. District of Columbia*, 851 F. Supp. 2d 10 (D.D.C. 2012) (involving the constitutionality of a Metropolitan Police Department "post-and-forfeit" policy); *In re Navy Chaplaincy*, 697 F.3d 1171 (D.C. Cir. 2012) (involving systematic employment discrimination by the Navy). Second, none of these cases disregarded the

requirement that a plaintiff allege an ongoing injury, imminent threat of future injury, or the existence of a policy to which they would be subject again. Plaintiff's injury is neither ongoing nor the result of a government policy, so he must plausibly allege an imminent threat. He does not put forth any non-conclusory allegations of such a threat and the past events he points to were either different in kind to the one at issue in this case, were organized by unknown, different individuals, or both. Plaintiff's allegations do not plausibly establish that he faces an imminent threat of Defendants delaying his commute.

Plaintiff's argument for injunctive relief is not legally sound, but it does reveal the improper purpose at the core of this lawsuit: to stop "anti-Israel activists" from protesting. The Court should decline Plaintiff's request to use the federal court's jurisdiction to prohibit future First Amendment activity he does not like.

**III.    Plaintiff Fails to State a Claim for Conspiracy.**

In the District of Columbia, conspiracy is not an independent tort but requires the establishment of some underlying tortious conduct. *Robertson v. District of Columbia*, 269 A.3d 1022, 1034 (D.C. 2022). As such, because Plaintiff fails to state a claim for false imprisonment or public nuisance, his conspiracy claim necessarily fails as well.

In any case, Plaintiff has failed to state a claim for conspiracy. To plead a civil conspiracy under D.C. law, a plaintiff must allege: (1) an agreement between two or more person; (2) to participate in an unlawful act or a lawful act in an unlawful manner; (3) an injury caused by (4) an overt act in furtherance of the agreement. *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). Bare assertions of "conspiracy" are insufficient. *Bell Atlantic Corp. v. Twombly* makes clear that allegations of "parallel conduct" or conclusory references to "agreement" do not plausibly establish a conspiratorial meeting of the minds. 550 U.S. 544, 557 (2007).

Plaintiff alleges no facts establishing the existence of an agreement among Defendants. The Complaint contains no factual allegations of communications, planning, or coordination among PYM and the other defendants to blockade traffic. The only conduct alleged against PYM is that it promoted the Union Station rally on social media through posts and re-posts. *See* ECF No. 1 ¶¶ 37, 48-49, 54; Hedley Decl., ECF No. 1-1 ¶¶ 47, 49-55, 63-64, 67. That rally occurred separately from the traffic blockade. There are no allegations linking PYM to the individuals arrested at intersections, nor any allegations that PYM directly participated in traffic blockades.

Plaintiff argues that Defendants "impermissibly seek to have the Court draw inferences in their favor," ECF No. 58 at 30, regarding the Union Station rally, but Defendants have merely pointed out that the inferences he asks the Court to draw are unreasonable. First, he claims Defendants ask the Court to infer that "the flyers promoting the faux Union Station protest and general strike on February 1 were not decoys designed to fool police." *Id.* Defendants do no such thing; no inferences in Defendants' favor are required to conclude that Plaintiff's allegation that the advertisements for the Union Station rally were "decoys" is implausible. The advertisements invited people to attend a *real* rally at Union Station, and they did. *See* ECF No. 50 at 3 n.2. That fact is simply incompatible with Plaintiff's allegation that the rally was faked. Second, Plaintiff points to an alleged lack of social media posts about the Union Station rally to save his implausible allegation that it did not occur. Whether Defendants posted about the rally afterwards or not is immaterial—there was news coverage of the rally at Union Station on February 1, 2024. *See, e.g.*, ECF No. 50 at 3 n.2. No inferences are needed to conclude the rally was real and there is no rule of civil procedure that requires the Court to accept demonstrably false allegations.

Plaintiff also fails to identify an unlawful objective. The Complaint acknowledges that Defendants' objective was to express their views on matters of public concern. ECF No. 1 ¶¶ 2-3.

Plaintiff tries to relabel this advocacy as "extortion" and "false imprisonment," but such conclusory characterizations cannot substitute for factual allegations that Defendants agreed to commit a tort.

Nor does Plaintiff adequately allege an overt act in furtherance of any conspiracy. Posting online about a lawful rally is not an "overt act" that can give rise to conspiracy liability, and Plaintiff does not allege with any specificity that PYM directed, encouraged, or even communicated with those who physically blocked intersections.

Plaintiff's reliance on *United States v. Tarantino*, 846 F.2d 1384, 1418 (D.C. Cir. 1988), ECF No. 58 at 30 n.10, underscores the weakness of his theory. Plaintiff cites this in support of his proposition that Defendants have "outright admi[tted] to unlawful actions," apparently to argue that co-conspirator statements may be attributed broadly to alleged conspirators, and thus he need not plead conspiracy with specificity. This argument is misplaced for at least three reasons. First, *Tarantino* is a criminal evidentiary ruling under Fed. R. Evid. 801(d)(2)(E), not a civil pleading standard case. It governs admissibility of evidence once a conspiracy has already been proven by independent evidence, not what must be pled to state a plausible claim. Second, at the motion-to-dismiss stage, Plaintiff must plead facts establishing each element of conspiracy. Courts in this jurisdiction consistently dismiss conspiracy claims that rely on group pleadings, collective allegations, or conclusory invocations of "concerted action." *See, e.g.*, *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 113–14 (D.D.C. 2010). Third, Plaintiff's suggestion that Defendants have provided "outright admissions" of unlawful conspiracy is baseless. The cited "admissions" are public posts acknowledging a political rally—protected First Amendment activity, not evidence of an unlawful agreement.

In short, Plaintiff attempts to manufacture liability through collective pleading and a misapplication of criminal evidentiary standards. The Complaint lacks factual allegations showing

an agreement, an unlawful objective, or overt acts by PYM. This Court should reject such speculative conspiracy theories and dismiss Plaintiff's conspiracy claim.

**IV.  PYM Incorporates the Arguments Made by Co-Defendants to the Extent Their Reasoning Applies to PYM.**

Defendant PYM incorporates by reference the arguments presented in the co-defendants' reply briefs to the extent their reasoning applies to PYM, including arguments about standing and Plaintiff's failure to state claims for false imprisonment, public nuisance, and conspiracy.

## CONCLUSION

For the foregoing reasons, Defendant Palestinian Youth Movement respectfully requests that the Court grant its Motion to Dismiss with prejudice.

Dated: September 3, 2025                  Respectfully submitted,

*/s/ Christopher Godshall-Bennett*
Christopher Godshall-Bennett
American-Arab Anti-Discrimination Committee
910 17th St. NW, Suite 1000
Washington, D.C. 20006
(202) 465-4247
cgb@adc.org

*Attorney for Defendant Palestinian Youth Movement*

13

## CERTIFICATE OF SERVICE

I certify that on September 3, 2025, I served a copy of the above on all counsel of records by filing a copy via the CM/ECF system.


Dated: September 3, 2025                                  */s/ Christopher Godshall-Bennett*
                                                         Christopher Godshall-Bennett