## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Daniel Faoro,

       Plaintiff,

   v.

Jewish Voice for Peace, Inc. D/B/A
Occupation Free DC, Dissenters,
Palestinian Youth Movement, WESPAC
Foundation, Inc., Harriet's Wildest
Dreams, Inc., Dornethia "Nee Nee"
Taylor, Party of Socialism and Liberation,
Brian Becker, Maryland2Palestine, Hannah
Shraim, and 23 John And Jane Does,

       Defendants.

Case No.  1:25-cv-00289-ABJ

### DEFENDANT HANNAH SHRAIM'S
### REPLY TO PLAINTIFF'S RESPONSE TO HER
### <u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

**TABLE OF CONTENTS**

I.    INTRODUCTION _____ 1

II.   DISCUSSION _____ 2

    A.   THE COMPLAINT ALLEGATIONS ARE INSUFFICIENT TO STATE A
        CLAIM THAT MS. SHRAIM WAS PART OF A CIVIL CONSPIRACY
        UNDER RULE 8 _____ 2

    B.   MS. SHRAIM IS NOT AN AUTHORIZED AGENT FOR SERVICE ON
        MARYLAND2PALESTINE AND JURISDICTIONAL DISCOVERY IS NOT
        WARRANTED _____ 5

    C.   UNDERSIGNED COUNSEL FAILED TO ADEQUATELY VET ALL OF THE
        CASES CITED IN MS. SHRAIM'S MOTION TO DISMISS _____ 9

III.  CONCLUSION _____ 10

## I.    INTRODUCTION

Plaintiff's opposition to Ms. Shraim's motion to dismiss is just as deficient as his Complaint in establishing that Ms. Shraim is a proper defendant in this lawsuit. Plaintiff only mentions Ms. Shraim in a single paragraph of his Complaint that has nothing to do with the February 1, 2024 protest underlying this lawsuit ("Protest"). Despite this, Plaintiff makes the bold claim that somehow Ms. Shraim was part of a conspiracy to commit a public nuisance and false imprisonment through the Protest—claims that themselves have no basis in fact or law.

In his opposition brief, Plaintiff claims that he alleged enough facts to show that Ms. Shraim was a leader of Maryland2Palestine ("MD2P"), one of the groups he accuses of planning the Protest, which he seems to believe is enough to hold her liable. But the cursory facts he cites do not demonstrate that Ms. Shraim had any role—leadership or otherwise—with MD2P at any relevant time. In the absence of any other facts connecting Ms. Shraim to the February 1, 2024 Protest, it is impossible to hold Ms. Shraim liable under a conspiracy theory. And any amendment would be futile, because Ms. Shraim had not held a leadership role with MD2P or participated in planning any events for at least six months before the Protest at issue. Plus, she was three hours away, attending law school in Williamsburg, Virginia, at the time of the Protest—she did not personally participate in the events underlying this lawsuit. The claims against Ms. Shraim should be dismissed with prejudice.

Plaintiff has similarly failed to show that service on MD2P through Ms. Shraim was proper. The fact that Ms. Shraim held a leadership role with MD2P over two years ago does not authorize her to accept service of process under Federal Rule of Civil Procedure 4(h), as Rule 4(h) requires that the recipient of service on behalf of an organization be actively

integrated with or have a role within the organization. Indeed, the very cases on which Plaintiff relies make this point. Because Plaintiff improperly served MD2P through Ms. Shraim, the Court should also dismiss the claims against MD2P with prejudice.

## II.    DISCUSSION

### A.    The Complaint Allegations Are Insufficient to State a Claim That Ms. Shraim Was Part of a Civil Conspiracy Under Rule 8

Plaintiff has far from met his burden of plausibly alleging that Ms. Shraim was in any way involved in the February 1, 2024 action such that she could be held liable under a conspiracy theory. As Ms. Shraim previously argued, because Plaintiff's underlying claims for public nuisance and false imprisonment are legally deficient, "any derivative conspiracy claim necessarily fails as well." *J.H.C. by Clarke v. District of Columbia*, No. 20-cv-1761 (CRC), 2021 WL 4462359, at *6 (D.D.C. Sept. 29, 2021). But even if Plaintiff had plausibly alleged the two underlying torts, his attempt to lasso Ms. Shraim into the alleged conspiracy remains woefully deficient. In Plaintiff's motion to dismiss opposition, he argues that "it is reasonable to infer" that Ms. Shraim "participated in the planning and execution of the direct-action Protest" and that she had control over the content published to MD2P's social media account, which was a "key tool[] used to organize and promote" the February 1 Protest. Doc. 58 at 57-58. Not so.

Specifically, the Complaint allegations about Ms. Shraim do no more than connect Ms. Shraim to MD2P at a time in the past. But Plaintiff makes no allegations whatsoever that Ms. Shraim occupied a leadership role within MD2P at or around the time of the Protest, or that she personally participated in the Protest. Plaintiff mentions Ms. Shraim's name in only a single paragraph of the Complaint and the accompanying declaration. *See* Doc. 1, Compl., ¶ 24 (only Complaint paragraph in which Ms. Shraim's name is mentioned); Doc. 1-1,

Declaration of Neville S. Hedley (Hedley Decl.), ¶ 43 (only Declaration paragraph in which Ms. Shraim's name is mentioned). To attempt to establish her culpability, Plaintiff relies on an Instagram post from May 6, 2023—nine months before the relevant Protest—in which Ms. Shraim identifies herself as the co-chair of MD2P. Hedley Decl. at 99. Plaintiff also misleadingly relies on an undated screenshot of Ms. Shraim's Instagram profile to contend that she self-identifies as "an organizer for @md2palestine." Compl. ¶ 24; Hedley Decl. ¶ 43. But the screenshot simply reflects that her profile says "organize @md2palestine," not that she is an active organizer with MD2P. Doc. 1-1 at 101; *see also* Declaration of Hannah Shraim ("Shraim Decl.") ¶ 8 (explaining that the organize @md2palestine" in her Instagram bio was intended as a call to action for people to organize, and that she tagged MD2P to alert people to an organization with which they can organize).[1]

Contrary to what Plaintiff contends, neither of these exhibits gives rise to the reasonable inference that Ms. Shraim was an active leader or organizer with MD2P as relates to the Protest underlying this lawsuit. Beyond that, Plaintiff simply alleges that Ms. Shraim has spoken at events put on by MD2P, including in March of 2023. Compl. ¶ 24. At bottom, neither Ms. Shraim's historical leadership role with the organization nor her occasional participation in MD2P events suffices to hold her liable for a conspiracy alleged to have occurred in February 2024. *See generally Gill v. Islamic Republic of Iran*, 249 F.Supp.3d 88, 101

---

[1] Ms. Shraim recognizes that it is typically improper for a court to consider declarations at the motion to dismiss stage, and that doing so converts the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d). But in a seeming attempt to give the paper-thin allegations in his Complaint a veneer of legitimacy, Plaintiff appended a declaration to his Complaint and has relied upon it in his motion to dismiss briefing. *See* Hedley Decl.; Doc. 58 at 57. Ms. Shraim submits a controverting declaration in turn. Even if the Court disregards the declaration for the purpose of evaluating the sufficiency of Plaintiff's allegations, it demonstrates why it would be futile to give Plaintiff an opportunity to amend the claims against Ms. Shraim. *See infra* at 4-5.

(D.D.C. 2017) (explaining that elements of civil conspiracy include an agreement to commit an unlawful act); *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 51-52 (D.D.C. 2019) ("'To establish the existence of an agreement, the plaintiff must set forth more than just conclusory allegations of the agreement,' but must provide 'facts to support its existence.'").

The *Thompson* case on which Plaintiff relies is entirely distinguishable. There, the court found that there were sufficient facts connecting the Oath Keepers and Proud Boys leader Enrique Tarrio to the January 6 insurrection by way of civil conspiracy with the Proud Boys. 590 F.Supp. 3d 46, 106-07 (D.D.C. 2022). Plaintiff overlooks facts that were key to the court's analysis. With respect to the Oath Keepers, the court noted that the complaint alleged that a *leader* of the Oath Keepers posted on Facebook that he had "organized an alliance between Oath Keepers . . . and Proud Boys. We have decided to work together and shut this shit down," and that a few days later, another *leader* of the Oath Keepers posted that the Oath Keepers had "orchestrated a plan with the Proud Boys." *Id.* at 106. Likewise, the court found that Tarrio was sufficiently connected to the conspiracy because "as the leader of the Proud Boys, he would have participated in forming the announced "alliance" and "orchestrated plan" with the Oath Keepers." *Id.* at 107. Stated differently, leadership in the organizations alleged to be part of a conspiracy was a key factor in determining that a conspiracy existed. Only then could the court conclude that *respondeat superior* liability applied, or that it was irrelevant that Tarrio was not physically present in the District at the time of the January 6 insurrection. *See id.* Because the Complaint fails to establish Ms. Shraim's leadership role in MD2P at any relevant time, the *Thompson* case is irrelevant.

Critically, there is no possible way for Plaintiff to amend his Complaint to plausibly tie Ms. Shraim to any alleged conspiracy related to the February 1, 2024 Protest. Ms. Shraim

stepped down from her leadership position with MD2P approximately six months before the February 1 Protest, in August 2023, because she was starting law school in Williamsburg, Virginia. Shraim Decl." ¶¶ 1-2. Williamsburg is approximately three hours away from the District of Columbia by car, and Ms. Shraim would sometimes visit, but only during her school breaks. She was in Williamsburg on February 1, attending a meeting with the Dean of Student Affairs in the morning, and a law school class in the afternoon. *Id.* ¶¶ 1, 3; *see also* Declaration of Brian Wall ("Wall Decl.") ¶ 3 (confirming that he met with Ms. Shraim in person at his office in Williamsburg on the morning of February 1, 2024). Stated simply, Ms. Shraim had no connection to either MD2P or the February 1, 2024 Protest that would remotely make her a proper defendant in this case.[2]

Absent any facts demonstrating Ms. Shraim's direct or indirect participation in the February 1 Protest, the claims against Ms. Shraim are subject to dismissal. Dismissal should be with prejudice, because there is no possible way for Plaintiff to cure the infirmities in his pleading. *See Petworth Holdings, LLC v. Bowser*, 333 F.R.D. 297, 299 (D.D.C. 2019) (court may deny leave to amend complaint if amendment would be futile).

**B.    Ms. Shraim is Not an Authorized Agent for Service on Maryland2Palestine and Jurisdictional Discovery is Not Warranted**

Not only has Plaintiff wrongfully hauled Ms. Shraim into court for an incident she had nothing to do with and no prior knowledge of, but he has also improperly attempted to serve organizational defendant MD2P through her. Ms. Shraim stopped having an organizational leadership role or any affiliation with MD2P months before the incident in question. Service was thus improper and jurisdictional discovery from Ms. Shraim—who is an improper

---

[2] Ms. Shraim maintains that Plaintiff's causes of action fail to state a claim as to any defendant in this case.

defendant in this lawsuit—has no legal basis. The Court should dismiss the claims against MD2P under Rule 12(b)(5) for Plaintiff's failure to properly effectuate service.

Federal Rule 4(h) authorizes service on an unincorporated association only by (i) following state law for serving an individual, or (ii) delivering process to "an officer, a managing or general agent, or any other agent authorized by appointment or by law." Fed. R. Civ. P. 4(h)(1)(A)–(B). Courts strictly enforce that mandate. Ms. Shraim is not an authorized agent of MD2P, nor was she at any relevant time. While Ms. Shraim began serving as Co-Chair of MD2P in May 2021, she stepped down from MD2P's leadership entirely in August 2023 to focus on her law school studies. Shraim Decl. ¶ 2.  And because of the rigor of her law school studies, she stopped participating in the planning of any MD2P events after she stepped down from her leadership role—to include the February 1, 2024 action underlying this lawsuit. *Id.* What's more, Ms. Shraim was in Williamsburg, Virginia-approximately three hours away from the site of the Protest—at the time of the events underlying this lawsuit. *Id.* ¶¶ 1, 4; Wall Decl. ¶ 3.  She had no knowledge of the Protest until after it was over, let alone any role in planning it on behalf of MD2P. Shraim Decl. ¶ 6. Service on her as a supposed agent of MD2P was thus invalid. *Quann v. Whitegate-Edgewater*, 112 F.R.D. 649, 653–54 (D. Md. 1986).

Plaintiff's arguments that Ms. Shraim was a proper subject of service are unavailing. *American Football League v. National Football League* is inapposite. There, as Plaintiff notes, the court permitted service upon the coaches of two professional football teams because they were "so integrated with the organization that [they] will know what to do with the papers." 27 F.R.D. 264, 269 (D. Md. 1961). The court explained that the "coach of a football team is like the manager of a baseball team; he has full charge of the players in the preparation for and

playing of the games." *Id.* As such, "his relationship to the defendant and the responsibility of his position were such that it was reasonable to expect that the partners would be apprised of the suit, as in fact they were." Likewise, in *Direct Mail Specialists v. Eclat Computerized Tech., Inc.*, the court found that the receptionist of a partnership currently affiliated with the defendant organization was the proper recipient of service because "the role played by the receptionist was commensurately large in the structure of the company." 840 F.2d 685, 688 (9th Cir. 1988).

The logic underlying these holdings does not apply here—Ms. Shraim was not "integrated with the organization" at the time of the February 1, 2024 Protest, or involved with MD2P at the time of service—over a year later. Her leadership role with the organization ceased in August 2023, and she did not participate in the planning of any MD2P events after that. Shraim Decl. ¶ 2. Nor did Ms. Shraim have any knowledge of the February 1, 2024 Protest until after it was over—through a publicly available social media post. *Id.* ¶ 6. In fact, she has not been involved in planning or organizing any MD2P events in over two years. *Id.* ¶ 2. As such, whether considering Ms. Shraim's role at the time of the events underlying this lawsuit or at the time of service, there is no way she could be properly construed as an agent of MD2P.[3]

Scrambling to cure the deficiency of his service and avoid dismissal under Rule 12(b)(5), Plaintiff asks the Court in the alternative to allow limited jurisdictional discovery

---

[3] Undersigned counsel twice alerted counsel for Plaintiff that Ms. Shraim was not authorized to accept service on behalf of MD2P and had not held a leadership role with the organization since August 2023—in April 2025, and again the following month. Plaintiff's counsel insisted that service was proper and has seemingly not undertaken any efforts to identify a proper recipient of service, despite his knowledge of the infirmity of service well before Ms. Shraim moved to dismiss.

against Ms. Shraim to identify a proper agent of MD2P who can accept service on its behalf. Doc. 58 at 63. Doing so would be wildly inappropriate. Indeed, Plaintiff misconstrues the circumstances in which courts authorize jurisdictional discovery.

As is apparent from the case on which Plaintiff relies, *see id.*, jurisdictional discovery may be permitted when a defendant has been properly served but disputes whether the court has personal jurisdiction over her. *See, e.g., Holland v. Cardem Ins. Co., Ltd.*, No. 119CV02362TSCGMH, 2020 WL 9439381, at *11 (D.D.C. June 22, 2020). The *Holland* court explained that "jurisdictional discovery can be had only 'when the existing record is 'inadequate' to support personal jurisdiction and a party demonstrates that it can supplement its jurisdictional allegations through discovery.'" *Id.* (quoting *Estate of Manook v. Research Triangle Inst., Int'l & Unity Res. Grp., L.L.C.*, 693 F. Supp. 2d 4, 15 (D.D.C. 2010)); *see also id.* ("A party must present a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." (cleaned up)). Such is not the case here— Plaintiff seeks jurisdictional discovery not to establish the Court's personal jurisdiction over Ms. Shraim, but to "identify the individuals affiliated with MD2P that meet the requirements for service under Rule 4(h)." Doc. 58 at 63. Ms. Shraim is not aware of any authority authorizing jurisdictional discovery for this purpose.

What's more, "jurisdictional discovery 'is not appropriate in the absence of some specific indication regarding what facts additional discovery could produce.'" *Id.* (quoting *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 18 (D.D.C. 2014); *cf. United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 130 n.16 (D.D.C. 2000) (denying discovery where a party did not make a "detailed showing of what discovery it wishe[d] to conduct or what results it [through] such discovery would produce" in order to conduct jurisdictional

discovery). Plaintiff has made no such showing here. He has not provided any non-speculative basis to believe that Ms. Shraim—who was improperly hauled into court as a defendant in this lawsuit—has any relevant knowledge that he would be unable to unearth through discovery. Conversely, Ms. Shraim has established that it has been over two years since she has had any organizational affiliation or leadership with MD2P, which negates the suggestion that she would be instrumental in Plaintiff's fishing expedition.

### C.    Undersigned Counsel Failed to Adequately Vet All of the Cases Cited in Ms. Shraim's Motion to Dismiss

In his response brief, Plaintiff brings to the Court's attention a number of cases cited in Section IV.C.4 ("Plaintiff Pleads No Specific Factual Allegation Against Hannah Shraim") of Ms. Shraim's motion to dismiss, contending that they do not appear to support the proposition asserted or include quotes that are not found in the cases. Doc. 58 at 58-60. Undersigned counsel took this very seriously and scrutinized the cases that Plaintiff refers to. Regrettably, undersigned counsel does not dispute Plaintiff's characterizations.

Undersigned counsel acknowledges that he bears full responsibility for every representation he makes to the Court, including and especially in his written pleadings. Undersigned counsel is a solo practitioner and sought assistance from a number of individuals with the motion to dismiss brief, given a series of competing deadlines he had in the same time frame. It is undersigned counsel's usual practice to carefully vet any authorities cited in any portion of any court filing he submits, and particularly where he is not the only drafter or where multiple hands touched the document. Plainly, undersigned counsel failed to thoroughly do so with respect to Ms. Shraim's motion to dismiss, resulting in the inclusion of a handful of cases in one section of the brief that do not stand for the proposition for which they were cited.

Undersigned counsel deeply regrets this very serious oversight and does not take it lightly. He seeks the Court's forgiveness and commits to never making this mistake again, before this Court or any other one. Undersigned counsel agrees that it would be appropriate for the Court to strike the affected portions within Section IV.C.4 of the motion to dismiss. *See* Doc. 58 at 60. But for the reasons described above, this does not negate the fact that the Complaint is subject to dismissal.

## III.    CONCLUSION

The Court should dismiss with prejudice all claims against Ms. Shraim for Plaintiff's failure to plausibly allege any claim upon which relief may be granted, and against MD2P for Plaintiff's failure to properly effectuate service.

Respectfully submitted,

*/s/ Abdel-Rahman Hamed*

ABDEL-RAHMAN HAMED, ESQ.
DC Bar No. 1632130
**Hamed Law**
P.O. Box 25085
Washington, D.C. 20027
(202) 888-8846
advocates@hamedlaw.com

*Attorney for Hannah Shraim, Pro Bono Publico*