**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DANIEL FAORO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:25-cv-289 |
| | ) | |
| v. | ) | Hon. Amy Berman Jackson |
| | ) | |
| JEWISH VOICE FOR PEACE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**DEFENDANT JEWISH VOICE FOR PEACE'S REPLY IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM OF LAW IN
SUPPORT**

**INTRODUCTION**

As of the writing of this brief, the death toll in Gaza since October 2023 has surpassed

60,000.[1] That number rises daily and will undoubtedly be higher by the time this Court rules on

this motion. More than half a million people face imminent starvation in a famine of Israel's

making.[2] The images and stories coming out of Palestine on a daily basis are shocking and

intolerable to people of conscience from every nationality and background.

Against the backdrop of this era-defining international tragedy, Plaintiff Daniel Faoro has

sued a group of activists and organizations who have spoken out against what they view as

---

[1] Wafaa Shurafa & Samy Magdy, *Over 60,000 Palestinians have Died in the Israel-Hamas War, Gaza's Health Ministry Says*, PBS NEWS, July 29, 2025, https://www.pbs.org/newshour/world/over-60000-palestinians-have-died-in-the-israel-hamas-war-gazas-health-ministry-says.

[2] *Famine in Gaza: 'A Failure of Humanity Itself', Says UN Chief*, UNITED NATIONS NEWS, Aug. 22, 2025, https://news.un.org/en/story/2025/08/1165702; Peter Beaumont, *Declaration of Famine in Gaza Lays Bare Israel's Disregard for Humanitarian Duty*, GUARDIAN, Aug. 24, 2025, https://www.theguardian.com/world/2025/aug/24/gaza-famine-declaration-israel-humanitarian-duty-analysis.

1

unjustifiable atrocities. Plaintiff Faoro has purportedly brought this lawsuit because one of their protests allegedly caused him to be stuck in traffic for less than an hour during his morning commute into Washington, D.C. Plaintiff's ridiculous attempt to make a proverbial federal case out of the type of mundane inconvenience that impacts countless commuters around the world every day would be laughable if his intentions were not so harmful. In his response to Defendants' motions to dismiss, Plaintiff continues to demonstrate that the purpose of this lawsuit is not to recover for the "inconvenience" of becoming stuck in traffic, but rather to suppress a political movement that he disagrees with. Plaintiff's obviously meritless legal theories have no business in federal court. One federal judge in Chicago recently agreed, dismissing with prejudice a highly similar lawsuit brought by Plaintiff's counsel and awarding sanctions because the case was brought for the improper purpose of harassing the defendants. Ex. 1, *Manhart v. WESPAC Foundation, Inc. et al.*, 2025 WL 2257408, No. 24-cv-08209, Dkt. 109, Order Granting Defs.' Mots. to Dismiss (N.D. Ill. August 7, 2025). This Court should follow suit and dismiss this frivolous and harassing lawsuit with prejudice.

## ARGUMENT

I.    **This Suit Should be Dismissed Under Fed. R. Civ. P. 12(b)(1) Because Being Stuck in Traffic for Less than an Hour Is Not a Concrete Injury that Confers Article III Standing**

As a threshold matter, Plaintiff's lawsuit should be dismissed because the stress and inconvenience of being temporarily stuck in traffic are not the types of injuries that confer Article III standing. Plaintiff argues that that he has standing because he alleged a false imprisonment claim, a long-established tort with historical roots, but that is beside the point.[3]

---

[3] Plaintiff's arguments regarding his public nuisance claim are addressed below. *See infra*, Section II(a).

Dkt. 58, Pl.'s Resp. to Defs.' Mots. to Dismiss, at 6–9. Defendant JVP does not contest that Plaintiff would have standing if he had been falsely imprisoned, but he was not. He was stuck in traffic. Per his Complaint, Plaintiff was not "deprived of his liberty and freedom of movement." *Id.* at 10. He was free to leave his car at any time but chose not to. Plaintiff's frivolous claim which does not resemble cases, historical or otherwise, in which a false imprisonment claim has been recognized, does not establish Article III standing. *See Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 70–71 (1978) (noting that for an Article III court to have jurisdiction over a case, the plaintiff must have a "colorable" claim, not one that is "patently without merit").

Plaintiff is correct that emotional and intangible harms can be sufficient to provide standing if they bear a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Dkt. 52 6–7 (*citing Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–41 (2016)). But that is as far as Plaintiff's argument goes. As far as Defendant JVP's research shows, being stuck in traffic has never been recognized as a basis for a lawsuit in an English or American court, and Plaintiff has not cited a single case in which such a cause of action was recognized. In her recent decision in *Manhart* dismissing a highly similar lawsuit brought by the same law firm that represents Plaintiff, Judge Mary Rowland of the Northern District of Illinois rejected Plaintiff's argument, noting that she "ha[d] been able to locate a vanishingly small number of historical sources even contemplating that a plaintiff could be falsely imprisoned on a public highway. To the extent they exist, they contemplate a situation where a defendant forcibly detains someone by, for example, holding them at knifepoint."[4]

---

[4] In his response to certain Defendants' notices of supplemental authority regarding the *Manhart* decision, Plaintiff argued that the decision is not relevant authority because it applies Illinois law rather than D.C. law. Dkt. 61 at 1. However, there is no meaningful difference between the law

*Manhart*, 2025 WL 2257408 at *13 n. 8 (*citing Bloomer v. State*, 35 Tenn. 66, 68 (1855)). She went on to note that "Plaintiff cannot rely on the existence of the tort of false imprisonment at the time of the founding to establish Article III standing when the actions forming the basis for his claim could not themselves substantiate a false imprisonment claim under either the common law at the time of the founding or under Illinois law today." *Id.* at 28–29.[5]

Searching desperately for any doctrine to salvage his suit, Plaintiff posits that he has alleged sufficient injuries to open the doors to federal court because courts have recognized the existence of a constitutional "right to interstate travel." Dkt. 52 at 10–11. But no court has declared that there is a constitutional right to be free from interstate *traffic*, a ridiculous proposition that would make every traffic accident or lane closure a federal case. The case that Plaintiff inexplicably relies on, *Saenz v. Roe*, 526 U.S. 489, 498 (1999), provides a clear picture of the context in which this right has actually been applied. In *Saenz*, the Supreme Court explained that the "right to travel" described in its cases:

> "[P]rotects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily

---

of Illinois and D.C. regarding the elements of false imprisonment and public nuisance. *Compare Marcano v. Northwestern Chrysler-Plymouth Sales, Inc.*, 550 F. Supp. 595, 602–03 (N.D. Ill. 1982) *with Faniel v. Chesapeake & Potomac Tel. Co. of Maryland*, 404 A.2d 147, 150 (D.C. 1979). Both jurisdictions apply the *Restatement (Second) of Torts* to state-law tort claims, and the *Restatement* played a significant role in the *Manhart* judge's reasoning. *See Manhart*, 2025 WL 2257408 at *5–6. Therefore, the *Manhart* decision, in which the judge considered a nearly identical lawsuit brought by the same law firm, is highly persuasive authority.

[5] The judge in *Manhart* concluded that the plaintiff had narrowly established standing not because he pleaded a false imprisonment claim but because the Seventh Circuit has held that loss of time can be enough to confer standing. *Manhart*, 2025 WL 2257408 at *13. D.C. courts, by contrast, have rejected that notion. *See Armstrong v. Navient Solutions, LLC,* 292 F. Supp. 3d 464, 474 (D.D.C. 2018) ("loss of time and convenience is not generally sufficient to establish standing."); *US Ecology, Inc. v. U.S. Dept. of Interior,* 231 F.3d 20, 25 (D.C. Cir. 2000) (party's "disappointment at having invested—and perhaps lost—time and money" in a proposed project that did not come to fruition was insufficient, without more, to establish standing).

present in the second State, and, for those travelers who elect to become permanent

residents, the right to be treated like other citizens of that State.

*Id.* at 500. The *Saenz* Court struck down a regulation that placed duration of residency

requirements on citizens' qualification for state welfare benefits. *Id.* at 505–07. The case

involved the right of citizens to change their *residence* from state to state, and to be treated as an

equal once they had done so. It did not involve traffic. The facts Plaintiff alleges here do not

remotely resemble the scenarios that have been found to implicate the constitutional right to

interstate travel.

Because Plaintiff lacks standing to maintain this action, this lawsuit should be dismissed

under Federal Rule of Civil Procedure 12(b)(1).

## II.    All of Plaintiff's Claims Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted

In the alternative, Plaintiff's Complaint should be dismissed pursuant to Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

### a.    Plaintiff Fails to State a Claim for Public Nuisance (Count I)

As every Defendant pointed out in their motions to dismiss, Plaintiff's public nuisance

claim is not viable because under long-established, controlling D.C. law, a private party like

Plaintiff cannot maintain a suit for public nuisance unless he suffered a "special injury" distinct

from that of the general public. *B & W Management, Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881

(D.C. 1982) (citing *Restatement (Second) of Torts* § 821B(1) (1979)). In his response, Plaintiff

does not even attempt to articulate any special damage that he may have suffered. Instead, he

declares that he "doesn't need to allege special damages" because he is pursuing injunctive relief

as the representative of a putative class. Dkt. 52 at 28. According to Plaintiff, the *Restatement*

*(Second) of Torts* § 821C(2)(c) "specifically states that a special injury is unneeded to pursue a

public nuisance claim 'when the requested relief is to enjoin or abate the public nuisance' as long

as the plaintiff has 'standing to sue … as a member of a class in a class action.'" Dkt. 52 at 28.

He maintains that the D.C. Court of Appeals in *B & W Management* endorsed the concept that a

plaintiff can maintain a suit for public nuisance absent special injury if he is seeking an

injunction on behalf of a class. *Id.* at 12.

 Plaintiff's argument misstates the law to a degree that suggests deliberate

misrepresentation. Out of a desire (which Plaintiff apparently does not share) to waste no more

of the Court's time with discussion on matters that are thoroughly decided under binding

precedent, Defendant JVP will attempt to address the numerous flaws with this argument as

succinctly as possible.[6]

 First, Plaintiff explicitly seeks monetary damages—$50 million in damages in fact—not

only injunctive relief, and Plaintiff makes no attempt to explain how pleading an injunctive claim

would somehow excuse him from the requirement of showing a special injury to support his

damages claim. Dkt. 1-1, Civil Cover Sheet; Dkt. 1, Complaint, at p. 22(d). "[S[tanding is not

dispensed in gross." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017)

(cleaned up). "A plaintiff must demonstrate standing for each claim he seeks to press and for

each form of relief that is sought." *Id.* Therefore, even if his novel theory about the impact of

seeking injunctive relief on the pleading requirements for a public nuisance claim were correct

---

[6] Plaintiff will not, for instance, clog this brief with a recitation of the numerous reasons why the
possibility of Plaintiff succeeding on his motion for class certification is remote. *See Manhart*,
2025 WL 2257408 at *16 n. 10 (noting that the court "has a difficult time imagining how
potential members of the class might be identified and how Rule 23 questions might be answered
if this case were to go forward," but that the issue was not relevant to whether the plaintiff stated
a claim).

(which, as will soon be addressed, it is not), Plaintiff has not proffered any legal basis that would support his damages claim.

Second, *Restatement (Second) of Torts* § 821C(2)(c) does not say what Plaintiff says it says. On the contrary, comment j explains that "It has been the traditional rule that if a member of the public has not suffered damages different in kind and cannot maintain a tort action for damages, *he also has no standing to maintain an action for an injunction*." *Restatement (Second) of Torts* § 821C(2)(c), comment j (emphasis added). The comment goes on to note that "there are indications of a possible change" in the traditional rule based on "extensive general developments regarding class actions." *Id.* However, "standing to sue is primarily a procedural matter, not fully appropriate for a Restatement of the substantive law of Torts, [and] has been regarded as outside the scope of this Section to set forth the rules for determining when there is standing to sue for abatement or injunction." *Id.* The *Restatement* therefore did not overrule the traditional rule, but rather explicitly stated that this section of the *Restatement* does not address standing. The *Restatement* leaves jurisdictions the freedom to deviate from the default rule based on local developments in standing jurisprudence for class actions. *Id.* Therefore, D.C. law controls, and, as previously stated, D.C. law forecloses Plaintiff's claim. *B & W Management*, a case that Plaintiff willfully distorts in an attempt to salvage his doomed claim, in fact straightforwardly applies the traditional rule: "a private party may sustain an action to enjoin or recover damages for a public nuisance [only] if that party can allege and prove 'special damage, distinct from that common to the public.'" 451 A.2d at 882.

Third, as Defendant JVP briefed in its motion, the law in this Circuit is clear that a plaintiff does not have standing to represent a class based on hypothetical injuries suffered by other class members; he must have suffered an injury himself. *American Jewish Congress v.*

*Vance,* 575 F.2d 939, 944 (D.C. Cir. 1978) (*citing Warth v. Seldin*, 422 U.S. 490, 502 (1975)); *In re Science Applications International Corp. Backup Tape Data Theft Litigation*, 45 F. Supp. 3d 14, 23 (D.D.C. 2014). Plaintiff did not respond to that case law or articulate any reason why seeking an injunction would absolve him of the requirements to qualify for class representation in this Circuit, and has therefore waived any argument he may have had. *Hopkins v. Women's Div., General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

Plaintiff's persistence in defending this claim in the face of indisputable evidence that it is legally unsound, and his falsehoods about the state of the law in service of that ill-advised defense, are grounds for sanctions under Rule 11, which Defendant JVP intends to formally request in a separate filing. *See Manhart*, 2025 WL 2257408 at *15–18 (awarding sanctions and concluding the plaintiff had "gone too far" by making "false representations of law in support of his novel legal arguments" and "doubl[ing] down on arguments that a reasonable inquiry into the law would have revealed were baseless").

### b. Plaintiff Fails to State a Claim for False Imprisonment (Count II)

Being stuck in traffic does not constitute the tort of false imprisonment. Plaintiff was free to leave his car, but chose not to. The *Restatement of Torts* explicitly rejects a false imprisonment claim based on blocking a highway: "One who blocks off a highway, intending to prevent the public from passing along it, is not liable for false imprisonment to one whose privilege to use the highway has been thus denied. Indeed, the actor does not incur any liability by so doing." *Restatement (Second) of Torts* § 36, comment d (1965).

8

Plaintiff does not argue that the *Restatement* does not apply to D.C. false imprisonment claims; indeed he cites it repeatedly in support of his arguments. Dkt. 52 at 23–24, 26 (*citing Restatement (Second) Torts* §§ 36, 37, comment a, 38, 40A). Instead, he attempts to twist the straightforward text to justify having pursued this frivolous claim. He suggests that, based on ¶ 36 comment d., the *Restatement* does not apply to someone who was "already on the highway" when the obstruction began. Dkt. 52 at 25–26. The Restatement does not include any such temporal limitations, and Plaintiff provides no support for his tortured interpretation.[7] The judge in *Manhart* considered and rejected this identical argument, concluding that comment d did not "impose or foreclose liability based on the timing of the blockade vis-à-vis the timing of a plaintiff getting onto the highway," because the "salient point is that the interest of the traveler 'is not protected by a right of action.'" *Manhart*, 2025 WL 2257408 at *6.

Plaintiff similarly points to the *Restatement's* Illustration 11, which describes a scenario in which an individual encloses part of a highway but "puts no obstacle in the way of [a driver] leaving by the way in which he entered." Plaintiff suggests that the Restatement does not apply to his situation because there was an obstacle behind him, namely traffic. *Id.* at 23. Again, he provides no support for that reading, and it is likely that the drafters of the Restatement considered the possibility of traffic. Once again, the *Manhart* judge weighed and was not persuaded by this line of reasoning. She determined that Illustration 11 in fact was applicable to the facts at bar and supported defendants: the defendants did not place any obstacles the way of the plaintiff leaving, and accordingly liability did not attach. *Manhart*, 2025 WL 2257408 at *6.

---

[7] In addition, as the *Manhart* judge pointed out, even if his strained reading of comment d. were correct, it would not help Plaintiff. Plaintiff alleges that the blockades lasted up to two-and-a-half hours, dkt. 1 ¶ 34, but that he was stuck in traffic for less than an hour, *id.* ¶ 36, suggesting that he got on the road and drove into traffic after the blockades had already been in progress for over an hour. *Manhart*, 2025 WL 2257408 at *6 n. 5.

Because the Restatement conclusively establishes that a claim for false imprisonment based on blocking traffic is not cognizable, this Court need not reach the question, with which Plaintiff is concerned, of whether the means of escape available to him were reasonable. *Id.* at 26. Again, no "means of escape" were necessary because Plaintiff was not confined anywhere. *See Manhart*, 2025 WL 2257408 at *6. In any event, his arguments are unpersuasive. Plaintiff believes that he was not free to leave his car, and was thus falsely imprisoned, because doing so would have required him to abandon his vehicle, violating Va. Code Ann. § 46.2-1200.1. *Id.* However, as a factual matter, there is nothing in the Complaint that suggests Plaintiff would have had to "abandon" his car at all. He alleges no facts regarding where he was when he hit traffic, so it is not at all clear that he could not have simply gotten off the highway at the next exit or pulled over and legally parked at any time before he "learned the cause of why he was stuck in traffic." Dkt. 1 ¶ 36. Plaintiff did not allege that traffic was at a stand-still and he was trapped in place, but rather that the traffic was intermittently moving and that he was able to "navigate" his way out of the traffic and go home. *Id.* In addition, the portion of the Restatement on which Plaintiff relies states that:

> [I]t is unreasonable for one whom the actor intends to imprison to refuse to utilize a means of escape of which he is himself aware merely because it entails a slight inconvenience or requires him to commit a technical invasion . . . which subjects him at most to the risk of an action for nominal damages which in practice is seldom if ever brought.

*Restatement (Second) of Torts* § 36, comment a (1965). The "criminal penalties" which Plaintiff supposedly feared are a fine of no more than $500, which falls into the "nominal" category. § 46.2-1200.1. Finally, the section of the Restatement upon which Plaintiff relies is inapposite, as there are no facts in the Complaint that suggest there was any risk to Plaintiff or his "chattels." Dkt. 58 at 26.

10

Plaintiff has not cited a single case in which a court found a cognizable false imprisonment claim based on becoming stuck in traffic. Instead he relies on cases like *Romany v. Museum of the Bible*, 2019 D.C. Super. LEXIS 310, at \*15–\*17 (July 25, 2019) and *G'Sell v. Carven*, 724 F. Supp. 2d 101, 107 (D.D.C. 2010) in which the plaintiffs were trapped in a room by security officers and in an elevator by law enforcement officers in the midst of a violent assault, respectively. Dkt. 58 at 21–24. None of the cases Plaintiff cites remotely resemble the circumstances he alleges occurred here. In short, "[t]o allow this claim to proceed would stretch the tort of false imprisonment beyond recognition." *Manhart*, 2025 WL 2257408 at \*8.

Accordingly, this Court should dismiss Plaintiff's false imprisonment claim.

### c. Plaintiff Fails to State a Claim for Civil Conspiracy

Plaintiff now clarifies that he did in fact intend to plead a claim for civil conspiracy, dkt. 52 at 29–32, but that claim necessarily fails because, for the reasons stated above, Plaintiff did not state a claim for any underlying tort, and conspiracy is not a standalone claim. *Nader v. Democratic National Committee*, 567 F.3d 692, 697 (D.C. Cir. 2009).

Even if he had a valid underlying claim, Plaintiff has not adequately pleaded a conspiracy. Plaintiff argues that his allegations are sufficient because he does not need to allege that there was an "express or formal agreement" or that the Defendants "sat down together." Dkt. 52 at 29. That may be true, but some allegation of agreement is nevertheless the "essential element of a conspiracy claim." *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 51 (D.D.C. 2019) (internal citations and quotation marks omitted). Here, Plaintiff has alleged only that the Defendants collaborated on a flyer for a separate protest on the same date as the relevant one, and that Defendants posted on social media in support of the relevant protest *after* it was over. Those allegations are insufficient to "nudge his claim . . . across the line from conceivable to

11

plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). In addition, to support a civil conspiracy claim, Plaintiff would also need to allege that the agreement was to participate in an unlawful act. *Id.* Any agreement to participate in First Amendment protected protest activity could therefore not support a civil conspiracy claim.

### III.    Plaintiff's Lawsuit Should be Dismissed with Prejudice

To close, it once again bears emphasizing that this is not a legitimate lawsuit but rather an improper attempt to harass Defendants and to shut down political speech that Plaintiff disagrees with. As discussed above, Plaintiff has advanced frivolous legal theories that a reasonable inquiry would have shown were not viable under D.C. law. In the face of controlling authority that dispatches his claims, Plaintiff misrepresented that authority to the Court. Moreover, Plaintiff's improper purpose is plain from the face of his pleadings. He brands Defendants as "civil terrorists" and repeatedly cites an article in which the author calls for Palestine solidarity protesters including citizens to be denaturalized and deported and for "movement leaders" to be imprisoned. *Id.* at 1, 19, 21 (quoting Tal Fortgang, *The Rise of Civil Terrorism*, CITY JOURNAL (Winter 2025)). That article, which advocates a number of methods to suppress the Palestine solidarity movement that even the author acknowledges "may seem draconian," cites this litigation approvingly, noting that it "may make a dent in the defendants' resources" through the "slow" process of discovery. Fortgang, *supra.*

Because no amendment can cure the glaring legal defects with Plaintiff's claims and the fact that this lawsuit was brought for an improper purpose, Defendant JVP respectfully requests that the Court dismiss this lawsuit with prejudice. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996); *Manhart*, 2025 WL 2257408 at *18 (dismissing similar lawsuit with prejudice

because the defects were incurable and the suit was brought for the improper purpose of harassment).[8]

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant Jewish Voice for Peace's Motion to Dismiss.

Dated: September 3, 2025                    Respectfully submitted,


                                            /s/ *Nora Snyder*
                                            Nora Snyder [admitted pro hac vice]
                                            Brad J. Thomson [admitted pro hac vice]
                                            People's Law Office
                                            1180 N. Milwaukee Ave
                                            Chicago, IL 60642
                                            773-235-0070
                                            norasnyder@peopleslawoffice.com
                                            brad@peopleslawoffice.com

                                            /s/ *Hanna Chandoo*
                                            Hanna Chandoo [admitted pro hac vice]
                                            Dan Stormer [admitted pro hac vice]
                                            Bina Ahmad [admitted pro hac vice]
                                            Hadsell Stormer Renick & Dai, LLP
                                            128 N Fair Oaks Ave
                                            Pasadena, CA 91103
                                            (626) 585-9600
                                            hchandoo@hadsellstormer.com
                                            dstormer@hadsellstormer.com
                                            bahmad@hadsellstormer.com

---

[8] In its minute order dated June 20, 2025, this Court denied without prejudice the portions of Defendants PSL, PYM, and Becker's motions that sought sanctions as premature. Although the order did not address the similar request for sanctions in JVP's motion, JVP has assumed for purposes of the brief that the ruling applied to JVP as well. Per the Court's ruling, JVP intends to file a separate motion for Rule 11 sanctions.

/s/ *Lynne Bernabei*
Lynne Bernabei, D.C. Bar No. 938936
Alan R. Kabat, D.C. Bar No. 464258
Bernabei & Kabat, PLLC
1400 16th Street NW, Suite 500
Washington, DC 20036
(202)745-1942
bernabei@bernabeipllc.com
kabat@bernabeipllc.com

**Attorneys for Defendant Jewish Voice for Peace**