## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DANIEL FAORO,**

                Plaintiff,

    v.

**JEWISH VOICE FOR PEACE, INC., et al.,**

        Defendants.

No. 1:25-cv-289-ABJ

ELECTRONICALLY FILED

---

### PLAINTIFF FAORO'S SUR-REPLY IN OPPOSITION TO
### DEFENDANTS' RULE 12 MOTIONS (ECF NOS. 46, 47, 49, 50, 52, 55)

---

In their replies in support of their motions to dismiss, Defendants cite *Manhart v. WESPAC*, 24-cv-08209, 2025 U.S. Dist. LEXIS 152019, 2025 WL 2257408 (N.D. Ill. Aug. 7, 2025), issued after Faoro filed his opposition brief. Although *Manhart* also arises from an unlawful traffic blockade, that time outside Chicago's O'Hare International Airport, and has some overlapping defendants with this case, the similarities end there. *Manhart* is largely inapposite because it is decided on Illinois state-law claims and is currently on appeal because many of the issues were wrongly decided. Here, District of Columbia law applies, and Faoro's standing is different than *Manhart*'s plaintiff's standing.

**1.    False Imprisonment.** Relying on Restatement (Second) Torts § 36(3), comment *d*, an authority also relied upon by Defendants here, *Manhart* erroneously held that the defendants did not "confine" the plaintiff. 2025 U.S. Dist. LEXIS 152019, at *12-*13. Because the defendants "*did not place any obstacles* on Plaintiff's way of leaving" the interstate, they prevented the plaintiff from traveling "in only one direction" and thus were not liable for false imprisonment. 2025 U.S. Dist. LEXIS 152019, at *16-*17. The court further held that the Illinois Vehicle Code did not foreclose the plaintiff from escaping by abandoning his car because the Code imposes liability only if a driver abandons his vehicle for a week or longer. *Id.* at *18. These erroneous holdings misinterpret the Restatement and do not apply relevant state law that is more favorable to Faoro's claim here.

First, *Manhart* is wrong that comment *d* is applicable, as the Third Restatement confirms.[1] The Third Restatement establishes that a traffic blockade like that here can constitute false imprisonment; any contrary reading of the 1965 Second Restatement is either incorrect or outdated.[2] "[I]f a person desires to go in a particular direction that is the

---

[1] Faoro addressed the proper interpretation of Restatement (Second) Torts § 36, comment *d* in his opposition brief and will not repeat his arguments here. ECF 58 at 25-26.

[2] RESTATEMENT (THIRD) TORTS: INTENTIONAL TORTS TO PERSONS has been formally approved by the American Law Institute, but the official text is still in preparation. Several courts recognize the Restatement (Third) Torts as persuasive authority. *See, e.g.*, *Twitter Inc.*

*only* means of exit then available, an actor who prevents the person from proceeding in that direction is subject to liability for false imprisonment." Restatement (Third) of Torts: Intentional Torts to Persons § 8, cmt. *b*, Tentative Draft No. 3 at 45 (ALI 2018) ("Third Restatement") (emphasis in original). Section 36(3) and comment *d* from the Second Restatement are not in the Third Restatement, and nothing in the Third Restatement suggests that blockading a highway cannot be grounds for a false imprisonment claim. This is correct given that interstate travel is a right "so important that it is assertable against private interference as well as governmental action ... a virtually unconditional personal right, guaranteed by the Constitution to us all." *Saenz v. Roe*, 526 U.S. 489, 498 (1999) (internal quotes omitted).

Second, *Manhart* applied comment *d* incorrectly, even if it is applicable. Contrary to what *Manhart* held, Defendants effectively did place obstacles in Faoro's path in both directions of the roadway. They intentionally created gridlock and "shut down" roads into the District such that no vehicles could travel in any direction, and celebrated their success in that regard. *See* ECF 58 at 24-25 (citing complaint and accompanying declaration). Restatement (Second) Torts § 43 confirms this interpretation: "If an act done with the intention of affecting a third person imposes a confinement upon another, the actor is subject to liability to such other as fully as though it were intended so to affect him." The reasonable, even obvious, inference is that Defendants intended to directly and indirectly confine thousands of travelers in their cars as they attempted to travel into the District. At this stage, the Court is to grant Faoro, as the non-movant, "the benefit of all inferences that can be derived from the facts alleged," both in the complaint and documents attached thereto. *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 677 (D.C. Cir. 2009). Even

---

*v. Taamneh*, 598 U.S. 471, 495 (2023) (citing Restatement (Third) Torts: Intentional Torts to Persons); *Mills v. Anadolu Agency, NA*, 105 F.4th 388, 399 (D.C. Cir. 2024) (citing Restatement (Third) Torts: Apportionment of Liability); *Freyberg v. DCO 2400 14th St., LLC*, 304 A.3d 971, 978 n.4 (D.C. 2023) (citing Restatement (Third) Torts).

without such inference, Faoro's complaint and accompanying declaration readily allege Defendants blocked Faoro from moving in any direction.

Finally, unlike *Manhart*'s (incorrect)[3] determination that the Illinois Vehicle Code did not prevent the plaintiff from abandoning his car on the interstate to walk away, Defendants don't dispute that the relevant provisions of the Virginia Code are far more strict and would have exposed Faoro to criminal penalties. *See* ECF 58 at 26.

**2.    Public Nuisance.** *Manhart* did not adjudicate a public nuisance claim because Manhart did not allege such a claim in his operative complaint. Not letting that fact stop them, Defendants wildly speculate about the reasons for Manhart's strategic decision to exclude a public nuisance in his operative complaint—though Faoro stated the common-sense reason on the record. ECF 58 at 28 n.9. Unlike Faoro, plaintiff Manhart's damages arise out of his travel from his home in Indiana to O'Hare Airport, a trip that he makes occasionally but not on any regular basis that would provide standing for him to seek injunctive relief. Faoro's damages, in contrast, arise from his being trapped by Defendants' blockade during his regular commute into his office in Washington, D.C. ECF 1 ¶ 8. A plaintiff can pursue a public nuisance claim as a class action when the requested relief is to enjoin or abate the public nuisance, even if he or she does not suffer special damages distinct from the general public. *See* ECF 58 at 28. Accordingly, Faoro has standing to seek injunctive relief on behalf of a class of similarly situated individuals to prevent Defendants from engaging in this public nuisance again, as their *modus operandi* is to cause traffic blockades and other public interruptions. *E.g.*, ECF 1 ¶¶ 3-4.

---

[3] The *Manhart* district court misstates the Illinois Vehicle Code. Section 4-201(a) applies to "vehicles," defined at Section 1-217, not "abandoned vehicles," defined at Section 1-101.05. But even if the statutorily undefined term "abandonment" means something other than "abandonment" in Section 4-201(a), Section 4-203 calls for the towing of an "unattended" vehicle at the expense of the owner if left unattended on a highway for more than two hours. *Compare* 2025 U.S. Dist. LEXIS 152019, at *18.

      **3.**    **Claim in the Alternative for Negligence or Recklessness Against WESPAC.**  *Manhart* dismissed the plaintiff's claim in the alternative for negligence or recklessness against WESPAC primarily because it found that the plaintiff had not alleged tortious conduct by the entity that WESPAC had sponsored, National Students for Justice in Palestine ("NSJP"). *Manhart* also found that the source of WESPAC's duty to control and supervise NSJP was "not clear"; however, it made this finding without considering, or having before it, the IRS Private Letter Ruling 201712014 (the "PLR") cited in Faoro's opposition brief, as well as similar PLRs. *See* ECF 58 at 33. The IRS emphasized in the PLR that a fiscal sponsor is responsible for exercising control and discretion of fiscally sponsored projects to ensure donations are used for tax-exempt purposes. Relevant here, "an organization that is the sponsor of activities involving civil disobedience is considered an organization which violates law and public policy and therefore cannot be exempt under section 501(c)(3)." PLR, 2016 PLR LEXIS 1103, at *31 (Dec. 29, 2016). Because the sponsored project's activities did not qualify as tax-exempt pursuits, the IRS revoked the fiscal sponsor's tax-exempt status. *See id.* at *10-*11, *30-*44; Private Letter Ruling 201740022, 2016 PLR LEXIS 3810 at *30-*34, 2017 WL 4465393 (Dec. 29, 2106). Thus, although *Manhart* stated that it found no authority that an "IRS rule could *ever* create a legal duty sufficient to substantiate a tort claim," 2025 U.S. Dist. LEXIS 152019, at *33-*34, the court did not have the benefit of the PLRs before it. Both PLRs demonstrate that the IRS does attribute the activities of sponsored entities or projects to the fiscal sponsor. The fiscal sponsorship creates legal obligations and responsibilities for both the sponsor (WESPAC) and the sponsored project (PYM), with legal consequences for the sponsor (WESPAC) when the sponsored project (PYM) engages in unlawful activities.

      In any event, this claim is in the alternative; WESPAC is liable for PYM's torts because PYM was not a separate corporate entity from WESPAC in 2024. ECF 58 at 34-35.

**4.    Standing.** *Manhart* found that the plaintiff had Article III standing based on his alleged loss of time injuries. 2025 U.S. Dist. LEXIS, at 152019, at *36-*37. Like the Seventh Circuit, this Circuit also recognizes standing for such injury. ECF 58 at 10-11.

**5.    Sanctions.** Defendants stretch the overlap between this case and *Manhart* to seek sanctions here, when Faoro has done nothing remotely sanctionable. While Faoro alleges two causes of action that Manhart also alleged, *Manhart* expressly found that "there is nothing per se frivolous about the legal theories identified in the [operative complaint]." *Manhart*, 2025 U.S. Dist. LEXIS 152019, at *44. The court's decision to impose sanctions was based on *Manhart*-specific details that do not apply here and, in any event, are highly contested in the appealed case. For example, Faoro makes none of the allegations in his complaint that the court cited in *Manhart* to support its decision. *Compare* ECF 1 with *Manhart*, 2025 U.S. Dist. LEXIS 152019, at *42-*43. As another example, the court believed Manhart's counsel had not conducted a reasonable inquiry as to a specific section of the Illinois Vehicle Code not applicable here; so too with specific cases relating to the Illinois Citizen Participation Act. *Id.* at *48-*49. These and the other supposed reasons for sanctions are disconnected from Faoro and strongly contested by Manhart, who has appealed to the Seventh Circuit; the *Manhart* district court misstates and even misquotes relevant precedents, and improperly divined an improper purpose because the plaintiff sought punitive damages for an intentional tort. Notably, it is Defendants, not Faoro, that have misquoted cases and cited phantom cases here, actions which other courts have sanctioned. *See* ECF 58 at 44; ECF 65 at 9 (admitting failure to "vet" phony cases in motion to dismiss).

Dated:  September 18, 2025                    Respectfully submitted,


                                             By:   */s/ Anna St. John*
                                                   Anna St. John (DC Bar No. 983914)
                                                   Neville S. Hedley (DC Bar No. 458259)
                                                   (admitted but not yet sworn)
                                                   HAMILTON LINCOLN LAW INSTITUTE
                                                   1629 K Street NW, Suite 300
                                                   Washington, DC 20006
                                                   Telephone: (917) 327-2392
                                                   anna.stjohn@hlli.org
                                                   Telephone: (312) 342-6008
                                                   ned.hedley@hlli.org

                                                   *Attorneys for Plaintiff Daniel Faoro*

**Certificate of Service**

I certify that on September 18, 2025 I served a copy of the above on all counsel of record by filing a copy via the ECF system.

Additionally, I served a copy of this motion and the accompanying documents on by first-class U.S. Mail to the following recipients:

*Defendants Harriet's Wildest Dreams, Inc.*
*and Dornethia "Nee Nee" Taylor*:

Harriet's Wildest Dreams, Inc.
Dornethia "Nee Nee" Taylor
6368 Coventry Way, Suite 313
Clinton, MD 20735-2265

Harriet's Wildest Dreams, Inc.
Dornethia "Nee Nee" Taylor
3215 Martin Luther King, Ave., SE,
Washington, DC 20032

Dated: September 18, 2025

*/s/ Anna St. John*
Anna St. John