# EXHIBIT 2

No. 25-2382

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

◆

CHRISTOPHER MANHART, *individually and on behalf of all others similarly situated*,

*Plaintiff-Appellant*,

v.

NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, *et al.*,

*Defendants-Appellees.*

◆

On Appeal from the U.S. District Court for the
Northern District of Illinois, No. 1:24-cv-08209
The Honorable Mary Rowland, Judge.

### BRIEF OF IOWA AND 11 OTHER STATES AS *AMICI CURIAE* SUPPORTING PLAINTIFF-APPELLANT

BRENNA BIRD
  Attorney General of Iowa
ERIC H. WESSAN
  Solicitor General
Office of the Attorney General
Hoover Building, Second Floor
1305 E. Walnut St.
Des Moines, IA 50263
(515) 823-9117
eric.wessan@ag.ia.gov

*Counsel for State of Iowa*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii

INTRODUCTION AND INTEREST OF AMICI CURIAE ............. 1

ARGUMENT ..................................................................................... 5

A.  Blockading a highway and trapping a person in its vehicle can be illegal confinement ................................................................... 5

B.  The appearance of bias justifies reassigning this case on remand ................................................................................................... 12

CONCLUSION ............................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*BCS Services, Inc. v. Heartwood 88, LLC,*
　　637 F.3d 750 (7th Cir. 2011) ............................................................... 13

*Hale v. Pace,*
　　2011 WL 1303369 (N.D. Ill. Mar. 31, 2011) ........................................ 5

*In re United States,*
　　614 F.3d 661 (7th Cir. 2010) ............................................................... 14

*Kusay v. United States,*
　　62 F.3d 192 (7th Cir. 1995) ................................................................. 13

*Lopez v. Winchell's Donut House,*
　　466 N.E.2d 1309 (1984) ................................................................. 10, 11

*Morris v. Faulkner,*
　　361 N.E.2d 112 (Ill. App. Ct. 1997) .................................................. 5, 6

*Osman v. Ford Motor Co.,*
　　833 N.E.2d 1011 (Ill. 2005) .................................................................. 7

*Robinson v. Miller,*
　　494 N.E.2d 962 (Ill. App. 4 Dist. 1985) ............................................... 6

*Zahn v. N. Am. Power & Gas, LLC,*
　　815 F.3d 1082 (7th Cir. 2016) .............................................................. 7

## Statutes

625 I.L.C.S. 5/4-201 ................................................................................ 8
625 ILCS 5/4-203 ......................................................................... 8, 9, 16

## Rules

Ill. Sup. Ct. R. 23(e) ............................................................................... 7

## Other Authorities

Restatement (Second) of Torts § 35 (1965) ............................................. 7
Restatement (Second) of Torts § 36 (1965) ................................. 6, 7, 9, 11
Restatement (Second) of Torts § 37 (1965) ............................................. 8
Restatement (Second) of Torts § 43 (1965) ............................................. 8
Restatement (Second) of Torts § 45 (1965) ............................................. 8

## INTRODUCTION AND INTERESTS OF AMICI CURIAE

October 7, 2023 was a pogrom. Hamas and its affiliates massacred Jews (and non-Jews alike) in their successful terror attack into Israel. Hamas's attack remains the worst mass-murder of Jews since the holocaust. In the wake of that attack, Israel responded to secure its own borders. A hot war erupted between Israel and Hamas.

Protests erupted too—some beginning on October 8. And those protests opposed Israel, many explicitly endorsing Israel's enemy in the conflict Hamas. Others only implicitly supported Hamas in the wake of its terrible attack.

At the motion to dismiss stage, the district court here found that demonstrators in Chicago blockaded I-190 "at or around 7:00AM" and "linked their arms together with PVC piping to create a continuous wall across the interstate." Dkt. 109 at 2. It continued, finding that "blockade" was intended to "protest the United States's support of Israel in the war that has ensued between Israel and Hamas." *Id.* at 2–3. So either explicitly or implicitly, the protesters here were opposing Israel and supporting Israel's counterparty in the war, Hamas.

The support for terror was made worse by the tactics the demonstrators embraced. Highway blockade puts lives at risk—emergency services and ambulances rely on highways to get victims to hospitals. But blocking a major city's arterial roadway near one of the nation's largest airports raises the stakes even more.

The district court found that the protest was "done as part of" a nationwide organizing effort attempting to disrupt American cities to support Hamas. *Id.* at 3. The district court recognized that the protesters' intent was to "cause pain to the economy" and to "disrupt and blockade economic logistical hubs and the flow of capital." *Id.* And the district court identified the role of each organizational and individual plaintiff in facilitating this "pain" in support of Hamas. *See, e.g., id.* (Tides Center created a bail fund); *id.* at 3–4 (Jewish Voices for Peace ("JVP") selected the location and provided other support); *id.* at 4 (National Students for Justice in Palestine ("NSJP") was "instrumental" in coordinating the protest); *id.* at 4–5 (WESPAC acted as fiscal sponsor and legal entity to support NSJP); *id.* at 5 (Dissenters "helped organize" the protest and selected the location); *id.* (recognizing role of individual defendants). And the district court evinced skepticism of arguments made that Defendants' venue,

personal jurisdiction, and other arguments about non-participation are unavailing. *Id.* at 9 n.4.

Plaintiff sued because he and thousands of others were trapped in their cars with no recourse and no way to leave. They plead, among other causes, a straightforward false imprisonment claim for the thousands of individuals illegally trapped on the highway with nowhere to go and no legal way to leave. The highly disruptive event risked lives—imagine an ambulance stopped during an emergency—or, as Plaintiff alleges, with important flights to catch. The district court recognized that Defendants' pro-Hamas day of action was a success: for a few hours a major arterial road in America's Second City was blocked. Yet the district court granted a motion to dismiss.

Blocking highways violates State and federal law. Blocking highways to airports has a clear interstate effect. Indeed, blocking highways and airports directly implicates the relationship between the States. Protests on interstate highways in any State have effects that ripple across the country. Such illegal road-blocking causes harm raised in the Complaint should not present an impermissible bar to recovery.

Amici States appear here today to urge this Court to reverse and remand for further proceedings to ensure that if people act illegally (here, in support of designated foreign-terror organization Hamas) that there is no special pleading requirement to disallow the case to proceed.

And Amici States appear here to weigh in on the unfortunate appearance of impropriety that has attached itself to this case. The district court acknowledged Defendants' support of Hamas and actions taken in support of their international mission to delegitimize the State of Israel by blocking a highway and trapping thousands of people in their cars. Yet the district court granted sanctions on the basis that Plaintiff's claims "were neither supported by existing law nor nonfrivolous arguments in favor of the extension or modification of existing law." *Id.* at 34. And the district court found the modest ask of $36 million in damages—to compensate the thousands of affected drivers blocked on a federal highway—as evidence of an intent "to harass Defendants." *Id.*

States often face novel arguments with far less historical support than raised here. Some of those claims include eye-popping damages claims. And while Amici States contend dismissal here is improper, they strongly contest imposing sanctions here.

4

The opinion strays from neutral adjudication into apparent bias—
bias that led not only to a bad result but imposition of Rule 11 sanctions.
*Id.* at 39. This Court should take seriously the request for a motion for
reassignment on remand to a judge more likely to avoid even the appear-
ance of bias in issuing an opinion.

## ARGUMENT

### A. Blockading a highway and trapping a person in its ve-
hicle can be illegal confinement.

The district court accurately lays out the legal basis relying on
longstanding Illinois law for why Plaintiff's claim should proceed. "Under
Illinois law, false imprisonment 'is the unlawful restraint of an individ-
ual's liberty or freedom of locomotion.'" Dkt. 106 at 9 (quoting *Morris v.
Faulkner*, 361 N.E.2d 112, 114 (Ill. App. Ct. 1997). "Imprisonment has
been defined as any unlawful exercise or show of force by which a person
is compelled to remain where he does not wish to remain or to go where
he does not wish to go." *Id.* (quoting *Hale v. Pace*, 2011 WL 1303369, at
*11 (N.D. Ill. Mar. 31, 2011)). "In order for there to be false imprisonment
to be present, there must be an actual or legal intent to restrain." *Id.*
(citation omitted). "Actual force is not a requisite to an action for false
imprisonment." *Id.* (citation modified). It is not enough for a plaintiff to

have felt compelled, evidence "must establish a restraint against the plaintiff's will." *Id.* (citation modified).

Indeed, the district court recognized that Plaintiff here was effectively trapped on the highway due to Defendants' blockade and vehicles behind him. *Id.* at 14. But the district court also concluded that Defendants did not confine Plaintiff to his car against his will because he could have abandoned his car on the highway. *Id.* at 10, 15. And thus the court granted a motion to dismiss despite accepting as reasonably pled all the elements for a false imprisonment claim.

The district court granted both the motion to dismiss and sanctions primarily based on (1) a comment on the Second Restatement of Torts and (2) due to a disagreement about how to use a longstanding unpublished Illinois precedent. *See*, *e.g.*, *id.* at 10 (citing Restatement (Second) of Torts § 36, *comment d* (1965) and distinguishing *Robinson v. Miller*, 494 N.E.2d 962 (Ill. App. 4 Dist. 1985)). In part, the district court disregarded the unpublished Illinois Court of Appeals opinion because of the Illinois Supreme Court's rule that unpublished opinions are not precedential and may be cited only for certain purposes. *Id.* at 11 (citing Ill. Sup. Ct. R. 23(e)). While that Rule is binding in Illinois Courts, it is

not binding when federal courts are asked to make *Erie* guesses as to how a state court may rule on a case. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1093 (7th Cir. 2016) (recognizing that unpublished Illinois appellate court decisions may be cited for their "reasoning and logic") (quoting *Osman v. Ford Motor Co.*, 833 N.E.2d 1011, 1016–17 (Ill. 2005)).

Before coming to the facts here, it is necessary to understand how the district court erred even on its own terms applying the Restatement Second's sections on illegal confinement. The elements of illegal confinement defined in section 35 impose liability on an actor if he: (a) intends to confine a third person within boundaries fixed by the actor; (b) his act directly or indirectly results in such a confinement; and (c) the other is conscious of the confinement or harmed by it. Restatement (Second) of Torts § 35 (1965).

Section 36 clarifies that the confinement "must be complete" which means that the confinee does not know of "a reasonable means of escape" and that there is no alternative direction the confinee may go. Restatement (Second) of Torts § 36. So long as confining someone is the intent, it does not matter if that confinement is directly or indirectly caused by the bad actor. Restatement (Second) of Torts § 37 (1965). If the act is done

to affect a third person but confines someone, the actor is liable "as fully
as though it were intended to affect him." Restatement (Second) of Torts
§ 43 (1965). If the actor may "aid in such release by providing a means of
escape, his refusal to do so with the intention of confining the other is a
sufficient act of confinement to make him subject to liability. Restate-
ment (Second) of Torts § 45 (1965).

Here, Plaintiff alleged that he was completely confined to his car on
a highway with a flight to catch during the two-and-a-half-hour blockade
of I-190 bringing traffic "to a standstill." Dkt. 109 at 2–3; *see* Dkt. 69
¶¶ 66–80. As pleaded, the car could not move forward nor could it move
backward—Plaintiff was trapped in gridlock.

Plaintiff abandoning his car on the highway is prohibited under Il-
linois law. 625 I.L.C.S. 5/4-201. Had Plaintiff illegally left the vehicle on
the highway at the beginning of the blockade, by the time the blockade
ended law enforcement could remove the vehicle "by a towing service."
625 ILCS 5/4-203 (authorizing removal of unattended vehicles left on an
interstate highway for "2 hours or more"). Abandoning the vehicle would
leave Plaintiff "responsible for all towing and storage charges." 625 ILCS
5/4-203(g)(2). Abandoning the car on the highway—beyond commonsense

danger—also opens Plaintiff up to potential criminal liability. 625 ILCS 5/4-203(f). Defendants collectively could have effectuated Plaintiff's escape by voluntarily ending their intentional confinement of Plaintiff—and similarly situated drivers trapped in their dangerous road blocking protest. Despite that, the district court found that Plaintiff was not confined, primarily relying on two illustrations to the Restatement.

*First*, the district court improperly applied *comment d* to section 36 of the Second Restatement to find that blocking a highway cannot be an illegal confinement.

> *Blocking highway*. In order to make the actor liable for false imprisonment . . . , it is necessary that he shall have confined another in a particular area, the boundaries of which are fixed by the will of the actor. ***It is not enough that the other's freedom of movement has been improperly restricted. Thus, one who blocks off a highway, intending to prevent the public from passing along it, is not liable for false imprisonment to one whose privilege to use the highway has been thus denied.*** Indeed, the actor does not incur any liability by so doing, since the public is merely privileged to travel the public highways and has not a right to do so; that is, the interest of the members of the public in such travel is not protected by a right of action in them.

Dkt. 109 (quoting Restatement (Second) of Torts § 36, *comment d* (1965)).

The district court's misreading of its chosen emphasized text cleanly lays out its error: there is a difference between blocking the entrance to a highway and thus stopping someone with a privilege from entering the highway from doing so and blocking a highway so that drivers on the highway have no alternative but to sit in place in gridlock.

The district court misread the comment that declined to impose liability on making a driver take an alternative route to their chosen highway (not illegal confinement even if otherwise violating law) and applied it to reject liability for confining someone to their car on a highway with no legal egress. That is error.

The district court found that to plead "false imprisonment, it is not enough for the plaintiff to have felt 'compelled' to remain in' a place, 'the evidence must establish a restraint against the plaintiff's will." Dkt. 109 at 10 (quoting *Lopez v. Winchell's Donut House*, 466 N.E.2d 1309, 1312 (1984)). And the district court concluded that the highway blockade, which led Plaintiff to be unable to move his car forward and leaving him without any mechanism to leave the highway, "*did not place any obstacles* on Plaintiff's way of leaving." *Id.* Highways also do not allow cars to reverse or otherwise drive against the flow of traffic. The comment on

which the district court relied, far from being dispositive, did not address the factual situation at all.

*Second*, the district court misread illustration 11 to the Second Restatement section 36 to find Plaintiff's situation fails to plead confinement. That illustration explains that if a person enters an enclosure, and a blockader prevents the person from continuing, that there is no illegal confinement if the person could leave the way he came. *Id.* (citing Illustration 11 to § 36). The district court explained that Defendants put no obstacle in Plaintiff leaving the way he came.

But the complaint alleges Plaintiff was stuck in gridlock traffic. And the Restatement is clear that confinement may be direct, indirect, and not even specifically aimed at Plaintiff to be enough to impose liability so long as the confinement is complete. *See* Restatement (Second) of Torts §§ 36–43. The district court explained its belief there is "no legal authority for the proposition that a defendant who blocks an individual from travelling in only one direction can be liable for false imprisonment if other individuals who the defendant does not control subsequently prevent the plaintiff from exiting in another direction." Dkt. 109 at 13. Plaintiff's car was trapped on the highway and Plaintiff could not leave his car.

The intent of the blockade was to block a highway and to cause a traffic jam—the direct effect of the pro-Hamas protest. To contend that the other victims of this dangerous stunt were outside the control of the protesters—who could have desisted and ended the traffic jam at any time—is an odd defense to the pleading.

This Court should reverse the district court to allow the well-pleaded complaint to proceed to the next steps in litigation, as it would with any other case that was improperly and prematurely dismissed.

## B.    The appearance of bias justifies reassigning this case on remand.

Plaintiff alleges that the April 15 illegal highway blockade was directed by the Iranian National Guard Corps on behalf of Hamas in March 2024, with supporting evidence from President Biden's Office of the Director of National Intelligence. Dkt. 60 ¶¶ 52–53. Basing allegations of supporting Hamas is not close to Rule 11 sanctionable given the ample evidence—including the evidence and pleadings accepted as true by the district court. Granting the motion to dismiss on a straightforward and well-pled complaint alleging false imprisonment for a confinement that fits within the historical definition of that tort is odd—but sanctioning a

Plaintiff trapped by protesters opposing Israel's war against Hamas for alleging that the protesters support Hamas is eyebrow-raising.

The district court imposed Rule 11 sanctions against Plaintiff on the basis that Plaintiff's legal contentions "were neither supported by existing law nor nonfrivolous arguments in favor of the extension or modification of existing law." Dkt. 109. But the well-pled complaint supports its allegations of ties to support of Hamas. Indeed, the district court repeatedly acknowledged Plaintiffs' goals of opposing Israel and thus supporting Hamas in finding standing to sue and coordination among Defendants.

This Court has reassigned cases before when it is convinced that the district judge has predetermined the result in a case. *See*, *e.g.*, *Kusay v. United States*, 62 F.3d 192, 196 (7th Cir. 1995) (reassigning a habeas case when the judge "has made up his mind on th[e] subject"); *BCS Services, Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 761 (7th Cir. 2011) (*sua sponte* reassigning under Circuit Rule 36 to "spread the pain" of trial to a new judge after the original judge was reversed twice in the same case).

This Court has also ordered a "case reassigned to another judge" when "a reasonable person perceives a significant risk that the judge will

resolve the case on a basis other than the merits." *In re United States*, 614 F.3d 661, 666 (7th Cir. 2010). In *In re United States*, this Court reassigned a case because "the district judge without adequate grounds accused the government of appealing for the sole purpose of delaying the trial, and implied, again without basis in the record, that the government had acted in bad faith by not complying with the judge's discovery order." *Id.* The Court concluded that there a reasonable person could "perceive a significant risk that the judge's rulings in the case might be influenced by his unreasonable fury." *Id.*

Here, the district judge straightforwardly rejects Plaintiff's theory of the case—that concededly anti-Israel demonstrators illegally blocking a highway and keeping hundreds of people trapped for hours might be pro-Hamas. The district court took umbrage that the second amended complaint "is rife with allegations" that are "only a hair's breadth away from calling Defendants terrorists and placing the loss of innocent lives at their feet." Dkt. 109 at 34. The district court rejects *per se* claims that the anti-Israel protesters had as a goal "'extending the war' in Gaza, 'resulting in the deaths of thousands of Palestinians and Israelis.'" *Id.* (quoting Dkt. 69 ¶ 2) (citation modified). While the district judge is entitled to

her own political and policy beliefs, Plaintiff holding different viewpoints should not be sanctionable.

The district court's skepticism bled over into legal analysis in a way that leads reasonable people to reasonably question the judge's impartiality. *See* 28 U.S.C. § 455(a). For example, the district court places much emphasis on Plaintiff's characterization that an Illinois Court of Appeals decision "'superseded' *comment d* of § 36 of the Restatement." *Id.* at 36. The latter is not binding Illinois law—it is not enacted by Statute nor has the Illinois ever adopted it as law. Characterizing the *only* on point Court of Appeals decision as having "superseded" that non-binding statement of law (that is not even specific to Illinois) is not sanctionable—it may not even be error.

The district court also criticized Plaintiffs for relying on a claim that abandoning a car on a highway might be illegal. *Id.* The district court explained that Plaintiff could have left his abandoned car on a highway for a week without it becoming an "abandoned vehicle." *Id.* To state the proposition that Plaintiff and hundreds or thousands of people on an interstate highway heading toward O'Hare International Airport may abandon their vehicles on the highway without consequence is to refute

it. For one, as explained above, Plaintiff may not freely park on a highway for up to a week. For another, it is illegal to abandon a car on the highway—even if authorities must wait two hours before they can tow the car away. *See* 625 ILCS 5/4-203. Indeed, had Plaintiff abandoned his car and blocked a lane of the highway, he would be engaging in a similar category of prohibited activity to the demonstrator Defendants here. *Cf.* ACLU of Illinois, *Can protestors block traffic or entrances to a building to draw attention to their cause?* (Mar. 15, 2012) ("Protesters do not have a First Amendment right to block pedestrian or vehicle traffic").

Respectfully, the undersigned States face lawsuits with far less legal basis than the (possibly meritorious and wrongly dismissed) lawsuit here. To issue Rule 11 sanctions on this basis is out of line with the appropriate response to a novel and viable legal theory presented here. The district court's extremely discerning eye—to the point of identifying single words of disagreement ("superseded")—raises questions about the district court's impartiality.

This Court should reassign this case on remand to avoid even the perception of bias in this case that presents such an important issue.

16

## CONCLUSION

The Court should reverse and remand for further proceedings and reassign the case to a randomly assigned judge.

Respectfully submitted,

BRENNA BIRD
Iowa Attorney General

/s/ *Eric H. Wessan*
ERIC H. WESSAN
Solicitor General

Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50263
Phone:  (515) 823-9117
Email: eric.wessan@ag.ia.gov

*Counsel for State of Iowa*

17

# ADDITIONAL COUNSEL

Steve Marshall
Attorney General of Alabama

Stephen J. Cox
Attorney General of Alaska

Tim Griffin
Attorney General of Arkansas

James Uthmeier
Attorney General of Florida

Chris Carr
Attorney General of Georgia

Kris Kobach
Attorney General of Kansas

Liz Murrill
Attorney General of Louisiana

Catherine Hanaway
Attorney General of Missouri

Austin Knudsen
Attorney General of Montana

Drew Wrigley
Attorney General of
North Dakota

Gentner Drummond
Attorney General of Oklahoma

# CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limitation of Circuit Rule 29 because this document contains 3,401 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2.    This document complies with the typeface requirements of Circuit Rule 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 12-point font.

October 13, 2025

/s/ *Eric H. Wessan*
ERIC H. WESSAN
Solicitor General

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Eric H. Wessan*
ERIC H. WESSAN
Solicitor General