**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| _____ | ) | |
| DANIEL FAORO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 25-0289 (ABJ) |
| | ) | |
| JEWISH VOICE FOR PEACE, INC. | ) | |
| dba OCCUPATION FREE DC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Daniel Faoro brought this action against Jewish Voice for Peace, Inc. ("JVP");

Dissenters; Palestinian Youth Movement ("PYM"); WESPAC Foundation, Inc. ("WESPAC");

Harriet's Wildest Dreams, Inc.; Dornethia Taylor; Party of Socialism and Liberation ("PSL");

Brian Becker; Maryland2Palestine ("M2P"); Hannah Shraim; and twenty-three John and Jane

Does.  Compl. [Dkt. # 1].  He alleges that on February 1, 2024, defendants conspired to block

traffic on multiple public roads and bridges into the District of Columbia "to show support for

Palestine in the ongoing conflict between Israel and Palestine."  Compl. ¶ 2.  As one of the drivers

stuck in the ensuing traffic jam, he seeks compensatory and punitive damages based on claims of

public nuisance, false imprisonment, and negligence, and he seeks to certify the lawsuit as a class

action on behalf of all those similarly situated.  Compl. ¶¶ 71–85.

Pending before the Court are motions to dismiss filed by defendants Jewish Voice for

Peace, Dissenters, Palestinian Youth Movement, WESPAC, Party of Socialism and Liberation,

Brian Becker, and Hannah Shraim.[1]  Plaintiff has opposed the motions, and the matter is fully briefed.[2]

For the reasons stated below, the motions are **GRANTED** and the claims against Jewish Voice for Peace, Dissenters, Palestinian Youth Movement, WESPAC, Party of Socialism and Liberation, Brian Becker, and Hannah Shraim are **DISMISSED**.

## BACKGROUND

Plaintiff lives in Fairfax County, Virginia, and he regularly commutes by car into the District of Columbia for work.  Compl. ¶ 8.  On the morning of February 1, 2024, plaintiff was driving to work on Route 50 when he got caught in a traffic jam that "confined [him] in his car without moving or barely moving for close to an hour before he could navigate out of the blocked traffic and return home."  Compl. ¶¶ 8, 36.

While traveling through the traffic jam, plaintiff learned that it was caused by a protest. Compl. ¶ 36.  He alleges that defendants and their "co-conspirators" blockaded several "critical chokepoints" on most of the major routes from Virginia into the District for approximately two hours "to exert pressure on Congress and the Biden administration to end arms sales to Israel."

---

1       Def. Dissenters' Motion to Dismiss [Dkt. # 46] ("Dissenters Mot."); Defs. PSL & Becker's Motion to Dismiss [Dkt. #47] ("PSL & Becker Mot."); Def. WESPAC's Motion to Dismiss [Dkt. # 49] ("WESPAC Mot."); Def. PYM's Motion to Dismiss [Dkt. # 50] ("PYM Mot."); Def. JVP's Motion to Dismiss [Dkt. # 52] ("JVP Mot."); Def. Hannah Shraim's Motion to Dismiss [Dkt. # 55] ("Shraim Mot.").

2       Pl.'s Opp. to Mots. to Dismiss [Dkt. # 58] ("Opp."); Def. WESPAC's Reply to Opp. [Dkt. # 62] ("WESPAC Reply"); Def. Dissenters' Reply to Opp. [Dkt. # 63] ("Dissenters Reply"); Def. PYM's Reply to Opp. [Dkt. # 64] ("PYM Reply"); Def. Hannah Shraim's Reply to Opp. [Dkt. # 65] ("Shraim Reply"); Def. JVP's Reply to Opp. [Dkt. # 66] ("JVP Reply"); Defs. PSL & Becker's Reply to Opp. [Dkt. # 67] ("PSL & Becker Reply"); Pl.'s Sur-Reply in Opp. [Dkt. # 69] ("Pl.'s Sur-Reply").

Compl. ¶¶ 28–29.  As a result, motorists on the affected roads experienced delays in travel, backups "for miles" into Virginia, and limited ability to move their vehicles.  Compl. ¶¶ 30, 34, 36.

The complaint alleges that defendants coordinated the planning, organization, and promotion of the protest, and it consists of three counts.  Compl. ¶¶ 37, 74–85.  Count One alleges that defendants created a public nuisance that deprived plaintiff of the "right to freely travel public roads and highways without unreasonable interference."  Compl. ¶¶ 76–79.  Count Two asserts a claim of false imprisonment, alleging that defendants "restrained and deprived" plaintiff of his "physical liberty without consent or legal justification."  Compl. ¶¶ 80–83.  Count Three brings a claim of "[n]egligence or [r]ecklessness" against WESPAC, alleging that as a fiscal sponsor of Palestinian Youth Movement, WESPAC had a duty to control and supervise its activities and is liable for PYM's actions.  Compl. ¶¶ 84–85.

Plaintiff seeks an unspecified amount of compensatory damages for "[l]oss of wages and income," "[a]nnoyance, inconvenience and physical discomfort, anxiety and emotional distress," and "[l]oss of time" and "personal freedom"  Compl. ¶¶ 78, 82.  He also seeks punitive damages, and injunctive relief prohibiting defendants from engaging in future unlawful conduct.  Prayer for Relief, Compl. at 22

## STANDARD OF REVIEW

### A.    Personal Jurisdiction

A plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  To survive a motion to dismiss for lack of personal jurisdiction, the "plaintiff must make a prima facie showing of the pertinent jurisdictional facts." *First Chi. Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).  To establish that personal jurisdiction exists, the "plaintiff must allege specific acts

3

connecting the defendant with the forum." *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (alteration omitted), quoting *First Chi. Int'l*, 836 F.2d at 1378. A plaintiff cannot rely on "conclusory" allegations to establish personal jurisdiction. *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000), citing *First Chi. Int'l*, 836 F.2d at 1378–79. And a court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of personal jurisdiction. *Herbert v. Nat'l Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992), citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion, . . . the court may inquire by affidavits or otherwise, into the facts as they exist.").

### B.    Subject Matter Jurisdiction

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (applying principle to a Rule 12(b)(1) motion). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (rule 12(b)(6) case); *Food & Water Watch, Inc. v. Vilsack* , 808 F.3d 905, 913 (D.C. Cir. 2015) (rule 12(b)(1) case).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan*

*v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### C.    Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable

5

to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler*, 617 F.2d at 608. Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

**ANALYSIS**

Defendants' motions attack the complaint on multiple grounds, some of which are individual and some that overlap with issues raised by other defendants. Defendant WESPAC argues that the Court does not have personal jurisdiction over it. WESPAC Mot. at 7–11. In her motion to dismiss, defendant Shraim asserts that plaintiff's attempt to serve Maryland2Palestine through her was ineffective, so personal jurisdiction over Maryland2Palestine has not been established. Shraim Mot. at 10–12.[3] Defendants Jewish Voice for Peace, Palestinian Youth Movement, Party for Socialism and Liberation, Becker, and Shraim argue that plaintiff lacks standing to bring the lawsuit. JVP Mot. at 4–8; PYM Mot. at 4–6; PSL & Becker Mot. at 7–12; Shraim Mot. at 12–13. And all of the defendants argue that the complaint fails to state a claim for relief. Dissenters Mot. at 5–7; PSL & Becker Mot. at 12–26; WESPAC Mot. at 11–16; PYM Mot. at 6–12; JVP Mot. at 8–16; Shraim Mot. at 13–19.

I.    **Plaintiff has failed to establish personal jurisdiction as to WESPAC because there are no allegations connecting it to the District of Columbia or the protest.**

Defendant WESPAC argues that the claims against it should be dismissed because plaintiff has failed to establish personal jurisdiction over it. WESPAC Mot. at 7.

---

3    Plaintiff's return of service affidavits state that Shraim was personally served the complaint in the parking lot of the William & Mary Law School on April 9, 2025, and that Maryland2Palestine was served on the same day through an individual "designated by law to accept service of process on [its] behalf," identified as Shraim. Return of Serv. Aff. [Dkt. # 16]; Return of Serv. Aff. [Dkt. # 17]. Shraim contends that service of M2P through her was improper because she was not an officer of M2P at the time, nor was she a managing agent, general agent, or any other agent authorized by appointment or law to receive process on behalf of the organization within the meaning of Federal Rule of Civil Procedure 4(h)(1). That question is not before the Court, though, because it has not been properly raised by defendant M2P in a motion to dismiss based on lack of personal jurisdiction, or by plaintiff in a motion for default judgment.

Personal jurisdiction concerns the court's power to render judgment over a specific defendant. *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). There are two types of personal jurisdiction: "general" or "specific." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction permits the court to assert jurisdiction over a defendant where its "affiliations with the [forum state] are so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." *Id.* (internal quotation marks omitted). Specific jurisdiction depends on the defendant's "affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum [s]tate and is therefore subject to the [s]tate's regulation." *Id.* (internal quotation marks and alteration omitted).

The complaint alleges that WESPAC is a New York corporation, Compl. ¶ 11, it does not contain allegations that WESPAC has had any contact with the District of Columbia, and plaintiff concedes that the Court does not have general jurisdiction over it. Opp. at 38.

To determine whether it has specific jurisdiction, "a court must engage in a two-part inquiry." *GTE New Media Servs., Inc.*, 199 F.3d at 1347. First, it examines whether jurisdiction is applicable under the state's long-arm statute. *Id.*; *see United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995) (explaining that personal jurisdiction is determined "by reference to District of Columbia law"). If the long-arm statute is satisfied, then the court "determine[s] whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs.*, 199 F.3d at 1347.

The District of Columbia's long-arm statute provides:

> A District of Columbia court may exercise personal jurisdiction over a person . . . as to a claim for relief arising from the person's–
>
> (1) transacting any business in the District of Columbia; . . . [or]

> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia

D.C. Code § 13-423(a). Due process is satisfied where the defendant has "minimum contacts" with the District of Columbia such that the exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. Minimum contacts are established where the defendant "purposefully avails" itself of the privilege of conducting activities within the District such that "[it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Plaintiff does not argue that WESPAC's contacts with the District satisfy the requirements of personal jurisdiction. He contends that the Court has jurisdiction over WESPAC because it is the "fiscal sponsor" of defendant Palestinian Youth Movement, and PYM's contacts with the District satisfy personal jurisdiction. Opp. at 38–40. Alternatively, plaintiff argues that the Court has jurisdiction because WESPAC is "legally indistinguishable" from PYM, analogous to an "alter ego." *Id.* at 40–42.

There is no question that the Court has personal jurisdiction over Palestinian Youth Movement, which is a "transnational, independent, grassroots movement of young Palestinians." Compl. ¶ 12. PYM did not challenge personal jurisdiction in its motion, and the complaint alleges that PYM maintains a chapter in the District that organized, advertised, and participated in the protest. Compl. ¶¶ 11, 43–44, 48–49, 54–57. As to its relationship with WESPAC, the complaint alleges that WESPAC "received donations for PYM" because a portion of PYM's website stated:

> All donations are tax deductible. . . . We also accept checks payable to "WESPAC Foundation" and mailed to 77 Tarrytown Rd, Suite 2W, White Plains, NY 10607. Please indicate "PYM" in the memo line.

Compl. ¶¶ 12–15.

These allegations are not enough to establish specific personal jurisdiction. Specific jurisdiction arises from the defendant's connection with the "controversy that establishes jurisdiction," *Goodyear*, 564 U.S. at 919, and there are no allegations as to how the arrangement facilitating donations to PYM through WESPAC is related to the protest that gave rise to this case. There are no allegations that WESPAC funded, directed, or was otherwise involved in the February 1 blockade, or that the funds it received on behalf of PYM had any relationship to the event. Neither the D.C. long-arm statute nor the constitutional minimum contacts are satisfied by the allegations in the complaint, and therefore, they cannot serve as the basis for the Court's exercise of personal jurisdiction over WESPAC.

Plaintiff's argument that the Court has jurisdiction because WESPAC is an "alter ego" of PYM also fails. To show that that WESPAC and PYM are alter egos, plaintiff must allege "not only 'unity of ownership and interest' between the two corporations, but also 'use of the corporate form to perpetrate fraud or wrong.'" *Jackson v. Loews Wash. Cinemas, Inc.*, 944 A.2d 1088, 1095 (D.C. 2008), quoting *Vuitch v. Furr*, 482 A.2d 811, 815 (D.C. 1984); *see Hart v. Dep't of Ag.*, 112 F.3d 1228, 1230–31 (D.C. Cir. 1997) (to prove that a corporation is the alter ego of its owner "one must show that the owner so dominated the corporation as 'to negate its separate personality'"). The relevant factors are "whether corporate formalities have been disregarded, and whether there has occurred an intermingling of corporate and personal funds, staff, [and] property." *Vuitch*, 482 A.2d at 816.

For starters, the complaint does not allege facts to show that PYM is a subsidiary of WESPAC, or that there is any overlap in ownership at all, much less, that there is a "unity of ownership and interest." At most, plaintiff alleges that WESPAC provided PYM access to its "administrative services, staff, and facilities," and that donors could make tax-deductible

contributions to PYM through WESPAC.  Compl. ¶¶ 13–14.  But those allegations are insufficient to show that the two entities "disregarded" corporate formalities and actually operate as one entity.

For all of these reasons, the Court finds that it does not have personal jurisdiction over WESPAC and it is dismissed as a defendant from the suit.[4]

## II.   At this stage of litigation, plaintiff has alleged standing to bring his claims against Jewish Voice for Peace, Dissenters, Palestinian Youth Movement, and Party of Socialism and Liberation, but not for Becker or Shraim.

Federal courts possess "only that power authorized by Constitution and statute," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and Article III of the Constitution provides that federal courts may hear only justiciable cases or controversies.  U.S. Const. Art. III, § 2.  Standing is a doctrine of justiciability that considers whether the party seeking to invoke jurisdiction has alleged "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues."  *Baker v. Carr*, 369 U.S. 186, 204 (1962).

To establish standing, "a plaintiff must demonstrate (i) that []he has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief."  *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).  At the motion to dismiss stage, the question is whether plaintiff has plausibly alleged standing based on the face of the complaint.  *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015); *see Lujan*, 504 U.S. 555, 561

---

4       Given the Court's further ruling that the complaint fails to state any claim for relief under Federal Rule of Civil Procedure 12(b)(6), the Court will also decline to grant plaintiff's request to conduct jurisdictional discovery.

("[E]ach element must be supported . . . with the manner and degree of evidence required at the successive stages of litigation.").

### A.    The complaint alleges that plaintiff suffered a cognizable injury in fact.

First, defendants argue that plaintiff lacks standing because he has suffered no injury in fact.  PSL & Becker Mot. at 7–12; PYM Mot. at 4–6; JVP at 4–8; Shraim Mot. at 12–13.

For injury in fact, a plaintiff must demonstrate that he has "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (2016).  To be "concrete," the injury "must actually exist," meaning that it is real and not abstract.  *Spokeo, Inc.*, at 340.  And to be "particularized," the injury "must affect the plaintiff in a personal and individual way."  *Lujan*, 504 U.S. at 560 n.1.

Plaintiff alleges that the protest and traffic jam caused him numerous harms, including: monetary harm in the form of lost wages and income; a "[l]oss of time that could otherwise have been spent working, taking care of personal business, or enjoying time with family or friends"; and emotional harms, such as "[a]nnoyance, inconvenience . . . anxiety, and emotional distress."  Compl ¶¶ 78, 82.

Monetary harm is the type of "traditional" tangible harm that qualifies as a concrete injury under Article III, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021), and though the allegations regarding plaintiff's monetary harm are thin and conclusory, they suffice to meet the low bar for pleading injury in fact at this stage in litigation.  The complaint states that the protest prevented plaintiff from reaching his office in the District of Columbia, that it took him an hour to return home, and that "[a]s a foreseeable, direct and proximate result of Defendants' concerted action, Plaintiff . . . suffered . . . [l]oss of wages or income."  Compl. ¶¶ 8, 28, 35–36, 78.  Though

12

there are no allegations as to what plaintiff's job is, whether he needed to be physically in the workplace to be paid, or that his employer reduced his wages for his absence from the office on the day of the protest, his allegations describing the effect of the protest on his employment are enough to establish harm.

The alleged emotional harm in the complaint strengthens the showing of an injury in fact. The D.C. Circuit has commented on emotional harm as injury in general terms. *See Humane Soc'y of the U.S. v. Babbit*, 46 F.3d 93, 98 (D.C. Cir. 1995) ("[G]eneral emotional harm, no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes."). But several courts in this district have relied on the Circuit's later statement in *Sargeant v. Nixon*, 130 F.3d 1067, 1069 (D.C. Cir. 1997), that "[a] legally cognizable interest means an interest recognized at common law or specifically recognized as such by the Congress," as support for standing on the basis of emotion harm in some circumstances:

> [A plaintiff can] establish an Article III injury in fact based on emotional harm if that alleged harm stems from the infringement of some legally protected or judicially cognizable interest that is either 'recognized at common law or specifically recognized as such by the Congress.'

*Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 25 (D.D.C. 2010), quoting *Nixon*, 130 F.3d at 1069 (internal quotation marks and citations omitted). Since then, the Supreme Court similarly observed that "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc.*, 578 U.S. at 333–35; *see also TransUnion*, 594 U.S. at 417 ("Central to assessing concreteness [of injury] is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts.").

Here, plaintiff alleges that he suffered distress as a result of being trapped in the traffic jam caused by the protest, Compl. ¶¶ 3, 6, and that is the type of harm that stems from the tort of false

13

imprisonment that was, and still is, recognized at common law.  This strengthens his showing that he suffered an injury in fact that gives him standing to bring the action.

Defendants point to the D.C. Circuit's statement in *Babbit* that mere "general emotional harm" is not enough, but that decision pre-dated the guidance in *Spokeo* and *TransUnion*, and the issue presented is distinguishable.  *Babbitt* concerned an effort by an organization to enjoin the removal of an Asian elephant from the Milwaukee Zoo.  46 F.3d at 95.  The Court found a lack of standing at the summary judgment stage because plaintiff failed to adduce sufficient evidence to meet its burden of showing that its members were "emotionally injured" because they no could longer visit the elephant.  *Id.* at 98.  While the D.C. Circuit did state that "general emotional harm" would not suffice in that context, plaintiff here has alleged that he was personally trapped in the traffic jam, not just generally upset by the fact of the protest.  And at this stage, the question is only whether the allegations support a plausible inference of injury in fact.[5]

> **B.** **The complaint alleges causation as to Jewish Voice for Peace, Dissenters, Palestinian Youth Movement, Party of Socialism and Liberation, but not Becker or Shraim.**

Defendants also contend that plaintiff lacks standing because the injury cannot be fairly traced to defendants' conduct.  PYM Mot. at 6, PSL & Becker Mot. at 11–12; Shraim Mot. at 12–13; WESPAC Reply at 8–9.

---

5    However, plaintiff cannot rely on the loss of time and convenience for injury in fact.  Courts in this district hold that "loss of time and convenience is not generally sufficient to establish standing."  *See, e.g.*, *Armstrong v. Navient Solutions*, 292 F. Supp. 3d 464, 474 (D.D.C. 2018), citing *U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 25 (D.C. Cir. 2000); *see U.S. Ecology Inc.*, 231 F.3d at 25 (explaining that a plaintiff's "lost time and money" invested into a government project that was rescinded "without more, is not enough" for injury in fact).  Further, the complaint is devoid of non-conclusory allegations related to this harm.

"The second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'" *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024), quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 288 (2008).  To determine whether an injury is "fairly traceable" to defendant's action, the court looks at "the relationship between the alleged unlawful conduct and the injury."  *Mideast Sys. & China Civ. Constr. v. Hodel*, 792 F.2d 1172, 1176 (D.C. Cir. 1986).  While standing requires a "causal connection" between the conduct and the injury, *Lujan*, 504 U.S. at 560, it "does not require that the defendant be the most immediate cause, or even proximate cause."  *Attias v. Carefirst, Inc.*, 865 F.3d 620, 629 (D.C. Cir. 2017).  Standing "requires only that those injuries be 'fairly traceable' to the defendant."  *Id.*

The complaint sufficiently alleges causation as to defendants Jewish Voice for Peace, Dissenters, Palestinian Youth Movement, and Party of Socialism and Liberation.  It points to a social media post from the DMV Dissenters Instagram account stating:

> Last week DMV Dissenters joined @dmvpym @md2palestine @psldc @shutdowndc_ @occupationfreedc @jvpdecmetro and others to SHUT DC DOWN. . . .  Our brave comrades held this intersection for two and a half hours to disrupt business as usual for the war criminals working in so-called Congress . . . .

Compl. ¶ 55; Ex. 49 to Compl. [Dkt. # 1-1].  The complaint alleges that defendants are among the groups tagged in the post as taking credit for the traffic jam.  Compl. ¶¶ 9–24.  And there are numerous other allegations and social media posts showing defendants taking credit for the protest.  Compl. ¶¶ 43–44, 50, 56; *see, e.g.*, Ex. 50 to Compl. [Dkt. # 1-1] (Instagram post by "jvpdcmetro" stating, "[o]ne week ago JVP-DC Metro helped [defendants] and others shut down 5 main roadways into downtown D.C. . . .."); Ex. 32 to Compl. [Dkt. # 1-1] (Instagram post on January 29 by "dmvpym" stating, "In 3 days D.C. will shut it down for Palestine" and calling on participants

to join the protest). The allegations that Dissenters, PYM, PSL, and JVP publicly took credit for the event are sufficient to state a causal connection between the defendants' actions and the injury in fact.

The complaint has not alleged traceability, though, to defendants Becker and Shraim. As to Becker, the complaint and exhibits show only that a website titled "Liberation: Newspaper of the Party for Socialism and Liberation" described him as a "founder of and central organizer for the Party of Socialism and Liberation," and that he was listed as the "Person In Charge" on a public gathering permit for a protest of Israel's President at Union Station on July 23, 2024. Compl. ¶ 37, citing Ex. 20 to Compl. [Dkt. # 1-1] (website) and Ex. 21 to Compl. [Dkt. # 1-1] (public gathering permit). There are no allegations concerning his involvement in the February 1 protest, so the complaint fails to allege traceability to him.

Traceability to Shraim suffers for the same reason. The relevant allegations and exhibits show: (1) a social media post by "md2palestine" from May 6, 2023 that identifies Shraim as a co-chair of the group; (2) Shraim's personal Instagram account, which includes "organize @md2palestine" in her biography section; (3) a social media post by "md2palestine" and Shraim's personal account advertising a protest held on December 17, 2023; (4) a social media post from Shraim's personal account dated October 23, 2022 that appears to show her protesting; (5) a social media post by "md2palestine" and Shraim's personal account recounting a protest in Washington, D.C. in January 2024; and (6) a social media post by "MD 2 Palestine" advertising a speaking engagement on March 16, 2023 in which Shraim appears to have participated as a speaker. Compl. ¶¶ 24, 43, citing Exs. 25–28 [Dkt. # 1-1] (social media posts). As with Becker, there are no allegations in the complaint as to Shraim's involvement in the February 1 protest.

Therefore, the Court concludes that plaintiff has sufficiently alleged standing as to defendants Jewish Voice for Peace, Dissenters, Palestinian Youth Movement, Party of Socialism and Liberation, but not Becker or Shraim and the complaint as to those two will be dismissed.[6]

### III.    The complaint fails to state a claim for relief.

#### a. The public nuisance claim fails because plaintiff has not alleged special damage.

District of Columbia law defines public nuisance as "an unreasonable interference with a right common to the general public." *B & W Mgmt, Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881 (1982), quoting Restatement (Second) of Torts § 821B(1) (1979). "At the common law, the term 'public nuisance' covered a variety of minor criminal offenses that interfered, for example, with the public health, safety, morals, peace, or convenience." *Id.*, citing Restatement § 821B, *comment b*.

It is well-established, though, that "as a general proposition only governmental authorities or other representatives of the public have standing to attack a public nuisance in court." *Id.* at 882. "[A] private party may sustain an action to enjoin or recover damages for public nuisance" only "if that party can allege and prove 'special damage, distinct from that common to the public.'" *Id.*, quoting *Holloway v. Bristol-Myers Corp.*, 327 F.Supp. 17, 24 (D.D.C. 1971). Since plaintiff is not a government authority or a representative of the public interest, he cannot state a public nuisance claim without allegations that he suffered a harm different from the kind suffered by other members of the public.

---

6    While the claims against WESPAC have already been dismissed for lack of personal jurisdiction, the Court notes that, for the same reasons, the allegations also fail to allege traceability to WESPAC.

The allegations reflect, and plaintiff concedes, that he has not alleged any unique damages suffered arising out of the alleged public nuisance. *See* Opp. at 28 ("Faoro doesn't need to allege special damages"). Citing the Second Restatement of Torts, he argues that "special injury is unneeded . . . 'when the requested relief is to enjoin or abate the public nuisance' as long as the plaintiff has 'standing to sue . . . as a member of a class in a class action.'" *Id.*, quoting Restatement (Second) Torts § 821C(2)(c).

Section 821C(2)(c) of the Restatement explains that "[i]n order to recover damages in an individual action for public nuisance, one must have suffered harm of a kind different from that suffered by other members of the public," but "to enjoin [or] abate a public nuisance, one must . . . have standing to sue as a representative of the general public, as a citizen in a citizen's action or as a member of a class in a class action." Restatement (Second) Torts § 821C(2)(c). The section was meant to "point out that there may be a distinction between an individual suit for damages and an individual suit [o]n behalf of the public or a class action." *Id.* § 821, *comment on subsection (2)*.

One problem with that is that plaintiff specifically alleges that he is personally entitled to compensatory damages and punitive damages. Also, he is not seeking as a concerned citizen to abate an existing or ongoing public nuisance; the injunctive relief he seeks in addition to money damages is an injunction prohibiting defendants from engaging in the unlawful conduct alleged in the complaint in the future.

More importantly, District of Columbia case law does not differentiate between suits for damages and injunctive relief when it comes to the requirement of special damages. In *B & W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879 (D.C. 1982), the plaintiff sought to both enjoin the defendant from operating a surface parking lot and to recover damages "on a common law nuisance

18

theory." *Id.* at 881.  After referring specifically to section 821C(2)(c) of the Restatement, the court explained that "a private party may sustain an action to *enjoin or recover damages* for a public nuisance if that party can allege and prove 'special damage, distinct from that common to the public.'" *Id.* at 882 (emphasis added); *see President & Dirs. of Georgetown Coll. for Georgetown Univ. v. Diavatis*, 470 A.2d 1248, 1250 (D.C. 1983) ("Special damage is normally what a private litigant must show in order to acquire standing to bring an action to abate a public nuisance."). And though the D.C. Court of Appeals has not had the opportunity to analyze that rule specifically in the context of a class action, plaintiff has not provided any case law suggesting that the rule would be different in that context.

Therefore, because plaintiff has not alleged any special damage, the complaint fails to state a claim for public nuisance and the Court will dismiss Count One.

### b. The false imprisonment claim fails because there are no allegations that plaintiff was totally confined.

To state a false imprisonment claim, the complaint must allege "(1) the detention or restraint of one against his will and (2) the unlawfulness of the detention or restraint." *Doe v. Safeway, Inc.*, 88 A.3d 131, 132 (D.C. 2014).  "To constitute detention, 'the restraint of [a plaintiff's] freedom of movement . . . must have been total.'" *Valle v. Karagounis*, No. 22-7167, 2024 WL 3738445, at *5 (D.C. Cir. Aug. 9, 2024) (applying D.C. law), quoting *Faniel v. Chesapeake & Potomac Tel. Co. of Md.*, 404 A.2d 147, 151 (D.C. 1979).  It is "not enough for plaintiff to feel 'mentally restrained' by the actions of the defendant." *Faniel*, 404 A.2d at 151 (citation omitted).  The allegations "must establish a restraint against the plaintiff's will," *id.* at 152, and it is "the actions or words of the defendant . . . [that] furnish a basis for a reasonable apprehension of present confinement." *Dent v. May Dep't Stores Co.*, 459 A.2d 1042, 1044 (D.C. 1982) (alteration, internal quotation marks, and citation omitted).

19

Here, the complaint fails to state a false imprisonment claim because it does not contain allegations that plaintiff was totally restrained by the protest. It states that plaintiff was able to progress through traffic, albeit "barely," for "close to an hour before he was able to navigate out of traffic and return home." Compl. ¶ 36. However slowly plaintiff progressed, the fact is that he was not "restrained" in the manner required for a false imprisonment claim. And while plaintiff makes clear that he felt confined to his vehicle, it is not enough for him to feel "mentally restrained" by defendants; he must be totally restrained against his will.

In his opposition, plaintiff cites several cases to argue that the deprivation of his freedom of movement "need not be prolonged" to be actionable as a false imprisonment claim. Opp. at 21–22, citing *Marshall v. Dist. of Columbia*, 391 A.2d 1374, 1380 (D.C. 1978), *Dist. of Columbia v. Gandy*, 450 A.2d 896, 899 (D.C. 1982), *G'Sell v. Carven*, 724 F. Supp. 2d 101, 107 (D.D.C. 2010), and *Romany v. Museum of the Bible*, Civ. Case No. 2019 CA 000312B, 2019 D.C. Super. LEXIS 310, at *17–18 (D.C. Super. Ct. 2019). But the facts of those cases simply highlight the problem with plaintiff's claim.

In *Marshall v. District of Columbia*, the plaintiff presented evidence at trial that he was stopped on the street by three police officers, not permitted to leave until he provided his birth date, and then taken to the police station for questioning after he refused. 391 A.2d at 1377. The plaintiff in *District of Columbia v. Gandy* was stopped on the street by law enforcement, put in a police vehicle, taken to the scene of a bank robbery that they thought he committed, and then to the police station to be placed in a holding cell overnight. 450 A.2d at 898. *G'Sell v. Carven* involved three defendants who chased three plaintiffs into an elevator, prevented the doors from closing, took one plaintiff by the neck and lifted him off the floor, and blocked the plaintiffs from leaving the elevator entirely for ten minutes. 724 F. Supp. 2d at 106. And *Romany v. Museum of*

*the Bible* involved a plaintiff who was taken to a "dark room" by museum security personnel, and was questioned for approximately twenty-five minutes while personnel blocked the only exit. 2019 D.C. Super. Lexis 310 at *4–5.

While those cases reflect that an actionable detention need not be prolonged, they are not instructive here. In all likelihood, like typical D.C. commuters stuck on the highway, he could freely choose between sources of news or entertainment on the radio and could communicate with his family or his office by phone or text messages. Plaintiff was in his own vehicle, operating it under his own control, moving slowly forward until he identified and utilized an alternate route and drove himself home. That is unpleasant but it is not "restraint." The aggravation and inconvenience suffered cannot be likened to a deprivation of liberty, and plaintiff points to no case law that suggests that it can.[7] Therefore, Count Two will be dismissed for failure to state a claim.

### c. The negligence or recklessness claim against defendant WESPAC fails.

Finally, the complaint brought a claim for negligence or recklessness against WESPAC, alleging that it is liable for PYM's actions as its "fiscal sponsor" or "alter ego." Compl. ¶¶ 84–85. The Court has explained that the allegations do not give rise to a relationship between WESPAC and PYM that would support the finding of personal jurisdiction, and in the same way, the

---

7       Indeed, the Second Restatement of Torts observed:

> In order to make the actor liable for false imprisonment under the rule stated in § 35, it is necessary *that he shall have confined another in a particular area, the boundaries of which are fixed by the will of the actor*. It is not enough that the other's freedom of movement has been improperly restricted. Thus, one who blocks off a highway, intending to prevent the public from passing along it, is not liable for false imprisonment *to the one whose privilege to use the highway has been thus denied.*

Restatement (Second) Torts § 36, *comment d*.

21

allegations also fail to show a legal relationship that would make WESPAC liable for PYM's actions. Therefore, the Court will dismiss Count Three.

### d. To the extent that the complaint pleads a civil conspiracy claim, that also fails.

Although the complaint does not set out a separate count for civil conspiracy, it contains a section titled "Evidence of a Conspiracy," Compl. ¶¶ 37–58, and it contains the words "conspiracy" and "conspirators" several times. *See, e.g.*, Compl. ¶¶ 35, 65. Defendants therefore moved to dismiss the complaint to the extent that it pleads civil conspiracy. *See, e.g.*, JVP Mot. at 14–16.

As the D.C. Circuit explained in *Nader v. Democratic National Committee*, 567 F.3d 692 (D.C. Cir. 2009):

> Under District of Columbia law, "[c]ivil conspiracy is not an independent tort but only a means for establishing vicarious liability for an underlying tort." *Hill v. Medlantic Health Care Group*, 933 A.2d 314, 334 (D.C. 2007) . . . . A claim for civil conspiracy thus fails unless the elements of the underlying tort are satisfied. *See Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.,* 749 A.2d 724, 738 (D.C. 2000) ("[C]ivil conspiracy depends on performance of some underlying tortious act." . . .). Indeed, because its only purpose is to spread liability for a successful tort claim to all agreeing parties regardless of whether they actually committed the tortious act, a civil conspiracy claim incorporates . . . every substantive element of the underlying tort . . . .

*Id.* at 697. Because the Court has already dismissed all the other claims in the complaint, there is no independent tort to sustain the civil conspiracy claim, and it will also be dismissed.

### CONCLUSION

For all the reasons stated above, the motions to dismiss filed by defendants Dissenters, Party for Socialism and Liberation, Brian Becker, WESPAC, Palestinian Youth Movement, Jewish Voice for Peace, and Hannah Shraim are **GRANTED** and the claims against all these defendants are **DISMISSED**.

Given the Court's ruling, plaintiff's motion to certify class, appoint lead counsel, and appoint lead plaintiff [Dkt. # 42] is **DENIED AS MOOT**.

Plaintiff also filed a notice of supplemental authority [Dkt. # 72], which defendants Party for Socialism and Liberation and Becker moved to strike. [Dkt. # 73]. The supplemental "authority" appears to be briefs filed in connection with the appeal of the decision in *Manhart v. WESPAC Foundation, Inc.*, No. 1:24-cv-8209 (N.D. Ill.), a case that was brought to the Court's attention by defendants WESPAC, Party of Socialism and Liberation, and Becker. *See* [Dkt. ## 59, 60]. The Court agrees with defendants that while a decision overturning the district court would constitute supplemental authority, lawyers' arguments – especially arguments advanced by a lawyer in this case – as to *why* it should be overturned do not. However, since the Court did not rely on the Illinois court's decision in *Manhart* in determining either the jurisdictional questions or the merits of plaintiff's claims under D.C. law, and since the claims against WESPAC, Party for Socialism and Liberation, and Becker are dismissed, the motion to strike is **DENIED AS MOOT**.

Defendants Maryland2Palestine, Harriets Wildest Dreams, and Dornethia Taylor have been served, but have yet to respond to the complaint. It is hereby **ORDERED** that they respond to the complaint by July 24, 2026.

The Court will issue a separate order as to defendant Shraim's counsel and the use of artificial intelligence.

**SO ORDERED.**

AMY BERMAN JACKSON
United States District Judge

DATE:  July 16, 2026

23