**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DANIEL FAORO,**<br>Plaintiff,<br><br>v.<br><br>**JEWISH VOICE FOR PEACE, INC., et al.,**<br>Defendants. | No. 1:25-cv-289-ABJ<br><br>ELECTRONICALLY FILED |

**Plaintiff Faoro's Omnibus Response in Opposition to Remaining Defendants' Rule 12 Motions (ECF Nos. 78, 80)**

Faoro concedes that, if this Court applies the reasoning of its July 16 ruling (ECF 77) to the moving defendants (ECF 78 and 80), they will be entitled to dismissal of the complaint. For the reasons stated in his omnibus opposition to the first round of motions to dismiss and associated briefing (ECF Nos. 58, 69, 72, 72-1, 72-2, and 72-3), Faoro does not concede that dismissal is legally correct, and reserves all rights of appeal. In addition, Faoro states as follows:

## I. Faoro's complaint, in the light most favorable to Faoro, adequately pleads false imprisonment.

In resolving a Rule 12(b)(6) motion, "the court must treat the complaint's factual allegations—including mixed questions of law and fact—as true and draw all reasonable inferences therefrom in the plaintiff's favor." *Chelsea Condo. Unit Owners Ass'n v. 1815 A St.*, 468 F. Supp. 2d 136, 145 (D.D.C. 2007). "On a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Osborn v. Visa*

*Inc.*, 797 F. 3d 1057, 1063-64 (D.C. Cir. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (reversible error to apply summary judgment evidentiary standard at Rule 12 stage).

**A. Faoro adequately pleaded total restraint.**

The July 16 ruling found a lack of the required element of "total restraint" because, while Faoro was temporarily trapped within his car in gridlock, he was eventually able to escape through a detour when traffic slowly moved. ECF 77 at 19-21. No D.C. court has interpreted "total" restraint so narrowly.

Liability for false imprisonment "does not require that the plaintiff be literally 'imprisoned' within a penal or correctional institution; many other modes of confinement suffice." RESTATEMENT (THIRD) OF TORTS: INTENTIONAL TORTS TO PERSONS § 7 & cmt. *a* (2026) ("*Third Restatement*"). "'Imprisonment,' while it seems originally to have meant stone walls and iron bars, no longer signifies incarceration; the plaintiff may be imprisoned when his movements are restrained in the open street, or *in a travelling automobile*…" WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS 42 (4th ed. 1971) (emphasis added and footnotes omitted).

A plaintiff who attempts to escape, but fails to "immediately escape the confinement" still has a wrongful confinement claim. *Third Restatement* § 8 cmt. *b* Reporters' Note. "The temporal scope of confinement can be very brief. If D grabs P by the arm against P's will, refusing to let P go, that is sufficient for false imprisonment, even if P breaks free in less than a minute." *Id.* § 8, cmt. *c*. Duress precluding escape, such as reasonable fear of injury to person or property, is sufficient to constitute false imprisonment. *Id.* § 8(c); *id.* § 8 cmt. *h*; *accord Second Restatement* § 36 cmt. *a* & Illus. 4 (if escape impossible without tearing clothes, there is false imprisonment). An "actor wrongfully putting the plaintiff to an unpalatable choice" is an example of duress. *Third Restatement* § 8 cmt. *h*.

The fact that Faoro was, on occasion, able to inch his car within the confined space created by Defendants' blockade, does not preclude "total restraint" with respect to that stretch of highway:

> The physical scope of confinement in most cases is relatively small—a room, a house, a prison cell, a moving automobile, a mental institution. But confinement even within a substantial area, such as a city, sufficiently interferes with the other's freedom of movement to warrant liability. Liability should be denied only when the area of confinement is so large that the interference with the other's freedom is de minimis. …
>
> The area in which a plaintiff is confined need not be stationary. For example, confinement in a moving car or boat is legally sufficient.

*Third Restatement* § 8 cmt. *c*. Faoro was totally restrained within the larger area of the blocked highway while there was gridlock, even if he was later eventually able to escape, even if he could slowly move within the confined area of the highway. The large physical scope and the temporary temporal scope of confinement does not defeat total restraint. And no court has ever held that a false imprisonment claim is defeated because a plaintiff has access to entertainment or reading material while being confined. *Compare* ECF 77 at 21.

In *Valle v. Karagounis*, which this Court relies upon, plaintiffs failed to present "evidence that the Valle Plaintiffs were prevented from leaving while they were outside of" a restaurant at the summary judgment stage. No. 22-7167, 2024 WL 3738445 (D.C. Cir. Aug. 9, 2024). That is not this procedural posture, where Faoro pleaded that he was trapped on the highway.

One can reasonably infer from the allegations of the complaint that Defendants intentionally and wrongfully blockaded the road to cause a traffic standstill, trapping or restraining thousands of people, including Faoro, in their gridlocked cars, depriving them of liberty and freedom of locomotion against their will.

### B. *Second Restatement* § 36 and comment *d* apply only to partial blockades, not complete intentional gridlock with no exit.

If a pedestrian walking on the road comes to a roadblock or picket line, and is forced to turn around or detour, is he falsely imprisoned for being partially obstructed and unable to go in one particular direction? In most jurisdictions, the answer is no. *Second Restatement* § 36(3) & cmt. *d*. A forced detour is not black-letter false imprisonment. But Faoro's complaint is not about a forced detour, but about being temporarily trapped in gridlock. Comment *d*, by its own terms and its illustrations, does not apply to Faoro's case, and the *Third Restatement*'s discussion of the *Second Restatement* agrees.

Comment *d* refers to the denial of the privilege to enter the highway, rather than a scenario where a driver is surrounded and cannot move; it doesn't suggest that there is never false imprisonment upon the roads, and comment *c* and Illustration 9 each contemplate false imprisonment within a vehicle (if as a passenger). Illustration 10 of comment *d* presents the scenario where the road blockage causes a detour, rather than trapping the driver. Illustration 11 similarly anticipates a scenario like a union picket line of a factory entrance, where a driver can simply go back the way he came or turn down a different road. Illustration 11 contemplates a plaintiff with "no obstacle in the way of his leaving by the way in which he entered." Thus comment *d* could not be addressing a scenario of a road blockade with no exit; otherwise, this additional condition in Illustration 11 would be entirely superfluous.

The Reporters' Notes to § 36(3) and Illustration 11 cite only cases of *partial* obstruction: *Bird v. Jones* is the classic case of a plaintiff being able to move in any direction except one where the defendant blocked a road to sell tickets to view a boat race. 7 Q.B. 742, 115 Eng. Rep. 668 (1845). While § 36(3) holds there is no liability for precluding movement in a particular direction, the unspoken implication is that the plaintiff can go somewhere else. Any other interpretation contradicts § 36(1), which holds complete confinement without reasonable means of escape to be false imprisonment. The obstacle to turning around and driving the opposite way on a highway is the law against doing so, and therefore is not a "reasonable means

of escape"; a defendant cannot block the only safe avenue of escape. *Second Restatement* § 36 cmt. *a*.[1]

Even if it were somehow legal for Faoro to turn his car around and go the wrong way on an interstate highway, the cars behind Faoro were trapped in gridlock for the same reason Faoro was: because of Defendants' intentional actions. "If an act is done with the intent to confine another, and such act is the legal cause of confinement to another, it is immaterial whether the act directly or indirectly causes the confinement." *Second Restatement* § 37; *see also id.* § 43 & cmt. *a* (transferred intent); *Third Restatement* § 10 (same). So, as a matter of common sense, Defendants *did* cause the confinement, and it would be clearly erroneous to make a factual finding otherwise. But at the barest minimum, at this early procedural stage, Faoro is entitled to the "reasonable inference" that the Defendants caused the gridlock trapping him.

The Third Restatement agrees with Faoro's reading of *Second Restatement* § 36(3) as limited. "[I]f a person desires to go in a particular direction that is *the only means of exit then available*, an actor who prevents the person from proceeding in that direction is subject to liability for false imprisonment." *Third Restatement* § 8 cmt. *b* (emphasis added). That is the scenario of drivers trapped in gridlock, unable to go forward or turn around. The Third Restatement anticipates Faoro's claim and permits it.

## II. Service of process on Maryland2Palestine was valid.

Faoro personally served Shraim in her personal capacity and also as the officer or authorized agent of Defendant MD2P. ECF 16-17. MD2P contends that service on MD2P was

---

[1] The preliminary draft for the Second Restatement was presented in 1955. *Second Restatement*, introduction. Eisenhower signed the Federal-Aid Highway Act of 1956 the next year. Divided highways were rare in this country before the Interstate System. *See* Bureau of Pub. Roads, U.S. Dep't of Commerce, *Highway Statistics Summary to 1955* (1957) (vast majority of highways were two-lane roads with intersections). This perhaps explains why Illustration 11 assumes that a motorist can necessarily "leav[e] by the way in which he entered." Had Defendants blocked an old-fashioned two-lane highway, they may not have successfully trapped motorists: cars could simply turn around and go back.

improper under Rule 4(h), asserting that Shraim had no affiliation or leadership role with MD2P since August 2023, and therefore there has been no valid service of MD2P.

MD2P is an unincorporated association with no formal legal existence or transparent leadership structure. ECF 1 ¶ 23. Shraim states (ECF 55 at 11) that it is "undisputed" that she resigned from MD2P by at least August 2023, but offers no evidence of that. And she never mentions who assumed her leadership role or who might be a good candidate to accept service. The complaint counters that Shraim and MD2P identified Shraim as the co-chair and organizer of the entity. ECF 1 ¶ 24. The complaint also notes that Shraim acted as the public face of MD2P throughout 2024, often being the featured speaker at MD2P protests and rallies, and her formerly publicly available Instagram account represented throughout 2024 that she as an organizer for @md2palestine. ECF 1 ¶ 24; ECF 1-1 ¶ 43, Ex. 25-27.

Courts have shown flexibility regarding Rule 4(h), recognizing "[t]he purpose of the rule is to bring home to the defendant notice of the filing of the action." *American Football League v. National Football League*, 27 F.R.D. 264, 269 (D. Md. 1961) ("*NFL*"). For instance, in *NFL*, the court permitted service upon the coaches of two professional football teams because they were "so integrated with the organization that [they] will know what to do with the papers." *Id.* Similarly, in *Direct Mail Specialists, Inc. v. Eclat Computerized Tech., Inc.*, the court held that service of the receptionist employed by a partnership affiliated with the defendant, a small company, satisfied the predecessor of Rule 4(h). "Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable, and just to imply the authority on his part to receive service." 840 F.2d 685, 688 (9th Cir. 1988) (cleaned up); *see also Estate of Kleinman v. Palestinian Auth.*, 547 F. Supp. 2d 8, 15 (D.D.C. 2008) (quoting *Eclat* favorably).

MD2P is an intentionally opaque, informal organization that does not disclose publicly on its website its leadership or organizational structure. By all appearances, it consists of a small group of anti-Israel activists in the DC and Maryland area. Serving Shraim, who before Faoro

filed his complaint, was very much the public face and leader of MD2P, is both fair and reasonable. Even if Shraim is no longer affiliated with MD2P (something that is debatable and was not apparent throughout 2024 and early 2025) she is in a position to know what to do with the served complaint, not least because she and MD2P share an attorney in this case, and thus it is fair and reasonable to have served her as an authorized representative of MD2P. *Estate of Kleinman*, 547 F. Supp. 2d at 13.

Even if service of Shraim on behalf of MD2P is treated as invalid under Rule 4(h), the Court has discretion to quash the service, rather than dismiss the case. "[D]ismissal is not appropriate when a reasonable prospect that proper service can be obtained exists." *Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C. Cir. 1983); *see also Bullock v. Hana Indus., Inc.*, 2024 U.S. Dist. LEXIS 25374 at *4, 2024 WL 620440 (D.D.C. Feb. 14, 2024) (quashing service with instructions to validly serve defendants); *James v. Booz-Allen & Hamilton, Inc.*, 206 F.R.D. 15, 18 (D.D.C. 2002) (same). If the Court deems service invalid, Faoro asks the Court to grant limited jurisdictional discovery of Shraim so that Faoro may identify the individuals affiliated with MD2P that meet the requirements for service under Rule 4(h). *Cf. Holland v. Cardem Ins. Co.*, 2020 U.S. Dist. LEXIS 253998 at *41, 2020 WL 9439381 (D.D.C. June 22, 2020) (recommending granting motion for jurisdictional discovery in response to Rule 12(b)(5) motion), *adopted & accepted*, 2020 U.S. Dist. LEXIS 253999, 2020 WL 9439376 (D.D.C. Sept. 2, 2020).

Here, all indications are that MD2P is a small, informal organization and that Shraim was an organizer and leader of its operations and activities for several years. She is well acquainted with the putative person or persons who filled the leadership role that she only now asserts she surrendered two years ago if indeed she is no longer a leader of the organization she acted as a spokesperson for well after she claims to have abandoned it.

### III. If the motions are granted, Faoro objects to the Taylor Defendants' proposed order.

The proposed order (ECF 78-2) by Harriet's Wildest Dreams Inc. and Demethia Taylor incorrectly states that the motion is a "consent motion." It is not, because the Taylor Defendants, on the day of filing, declined to agree to a stipulation Faoro offered days earlier that would preserve Faoro's appellate rights under *Microsoft Corp. v. Baker*, 582 U.S. 23 (2017). Should the Court grant the Taylor Defendants' motion, Faoro requests that it not incorrectly refer to the motion as consented to.

## Conclusion

Faoro concedes that the Court's reasoning in its July 16 order applies to all remaining Defendants in this case. But to the extent the Court is willing to look at the legal questions anew in light of these belated motions to dismiss, Faoro respectfully asks the Court to deny Defendants' Rule 12(b) motions, or alternatively grant Faoro jurisdictional discovery with respect to MD2P's motion to dismiss for improper service under Rule 12(b)(5). Upon such denial, Faoro will move to reopen the case with respect to the other defendants that the interlocutory order dismissed.

Dated: August 7, 2026

Respectfully submitted,

By: */s/ Theodore H. Frank*

Theodore H. Frank (DC Bar No. 450318)
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (703) 203-3848
ted.frank@hlli.org

*Attorneys for Plaintiff Daniel Faoro*

**Certificate of Service**

I certify that on August 7, 2026, I served a copy of this filing on all counsel of record by filing a copy via the ECF system.

Dated: August 6, 2026

*/s/ Theodore H. Frank*