**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DANIEL FAORO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:25-cv-289 |
| | ) | |
| v. | ) | Hon. Amy Berman Jackson |
| | ) | |
| JEWISH VOICE FOR PEACE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT JEWISH VOICE FOR PEACE'S MOTION FOR RULE 11 SANCTIONS**[1]

Defendant Jewish Voice for Peace ("JVP"), by and through its undersigned counsel, respectfully moves this Court to grant Rule 11 sanctions against Plaintiff Daniel Faoro and his counsel and to award attorneys' fees and costs to Defendant JVP. In support, JVP states as follows:

1. Rule 11 of the Federal Rules of Civil Procedure requires that an attorney submitting a filing to the Court certify that it is not "being presented for any improper purpose,

[1] On June 20, 2025, this Court denied without prejudice the portions of certain Defendants' motions to dismiss which requested sanctions as premature. Minute Entry of June 20, 2025. On October 14, 2025, this Court denied without prejudice a Rule 11 motion filed by Defendants Becker and PSL reasoning that such a motion was "premature" because "the case has not yet been resolved on the merits." Minute Entry of Oct. 14, 2025. The Court further instructed that "[t]he Court will inform the defendants if and when they may file motions for sanctions." The Court held a status hearing on November 5, 2025 and followed up with a minute entry ordering that "no pleadings may be filed until the Motions to Dismiss have been resolved." Minute Entry of Nov. 5, 2025. In light of the Court's orders granting Defendants' motions to dismiss, Dkt. 77 and 86, which resolved the case on the merits, Defendant JVP has concluded that it is now permitted to file a motion for sanctions. Other than the addition of this footnote to reflect the current procedural posture of this motion, this motion is identical to the version JVP served on Plaintiff's counsel on October 15, 2025, consistent with the safe harbor provision of Rule 11(c)(2). As a result, this motion contains an argument on standing that is foreclosed by this Court's ruling on the motions to dismiss (para. 5); Plaintiff hereby withdraws the argument advanced in paragraph 5.

such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." FED. R. CIV. P. 11(b)(1)–(2).

2. "The central purpose of Rule 11 is to deter baseless filings." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

3. Plaintiff Faoro has submitted multiple filings throughout this litigation that violate Rule 11, for several reasons.

4. First, for the reasons stated in Defendant JVP's motion to dismiss briefing, which JVP hereby incorporates by reference, all of Plaintiff's claims against JVP are frivolous and unsupported by the law or any nonfrivolous argument for modifying the law. Dkt. 52, JVP's Mot. to Dismiss, at 8–16; Dkt. 66, JVP Reply in Support of Mot. to Dismiss at 5–12.

5. As an initial matter, becoming temporarily stuck in traffic is not a cognizable injury that confers Article III standing. Dkt. 52 at 4–8; Dkt. 66 at 2–5.

6. In addition, all of Plaintiff's claims are frivolous on the merits.

7. The *Restatement (Second) of Torts*, which D.C. courts apply to false imprisonment claims, forecloses a false imprisonment claim based on becoming stuck in traffic due to a traffic obstruction—the exact scenario that forms the basis of Plaintiff's suit. *Restatement (Second) of Torts* § 36, comment d (1965).

8. In addition, under binding D.C. precedent, a private party like Plaintiff cannot bring a claim for public nuisance unless he suffered a special injury distinct from that of the general public. *B & W Management, Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 882 (D.C. 1982). Plaintiff alleged no such injury, and instead, in his brief opposing Defendants' motions to

dismiss, misrepresented the *Restatement* and D.C. law to argue incorrectly that he did not need to do so. Dkt. 58, Pl.'s Resp. to Defs.' Mots. to Dismiss at 28–29; Dkt. 66 at 5–8.

9. Plaintiff's continued pursuit of these frivolous claims, and misrepresentations of law in defending those claims, violates Rule 11. *See Smith v. Martin*, 2004 WL 5577682, at *4 (D.D.C. 2004) (granting sanctions where plaintiff's claims were "patently frivolous and unsupported by caselaw"); *Hickey v. Scott*, 738 F. Supp. 2d 55, 73 (D.D.C. 2010) (awarding sanctions where attorney "vigorously defended" frivolous claims that "any reasonably attorney would have realized, after even a cursory inquiry" were not warranted by existing law or by a nonfrivolous argument for modifying the law); *Manhart v. WESPAC Foundation, Inc. et al.*, No. 24-cv-08209, 2025 WL 2257408, at *15–18 (N.D. Ill. August 7, 2025) (awarding sanctions and concluding the plaintiff had "gone too far" by making "false representations of law in support of his novel legal arguments" and "doubl[ing] down on arguments that a reasonable inquiry into the law would have revealed were baseless").

10. Moreover, Plaintiff's counsel's law firm is the same firm that brought the nearly identical *Manhart* litigation in the Northern District of Illinois, and based on that involvement Plaintiff's counsel is certainly aware that the claims Plaintiff pursues here are not legally viable. *See Manhart v. WESPAC Foundation, Inc. et al.*, No. 24-cv-08209, 2025 WL 2257408 (N.D. Ill. August 7, 2025).

11. Prior to filing this lawsuit, Plaintiff counsel's firm withdrew an identical public nuisance claim in *Manhart* after receiving Rule 11 letters from several defendants in an (unsuccessful) attempt to avoid Rule 11 sanctions. *Manhart*, No. 24-cv-8209, Dkt. 69, Second Amended Complaint ¶¶ 22–37 (N.D. Ill. Jan. 29, 2025). That withdrawal demonstrates Plaintiff's counsel's awareness that it was frivolous and sanctionable to pursue a public nuisance claim

based on becoming stuck in traffic without any allegation that Plaintiff had suffered a special injury distinct from the general public. Nevertheless, Plaintiff continues to pursue a public nuisance claim here, without any legal basis for doing so.

12. Moreover, in *Manhart*, U.S. District Judge Mary Rowland dismissed the plaintiff's false imprisonment claim with prejudice for failure to state a claim upon which relief can be granted, concluding that being stuck in traffic did not amount to "confinement" for purposes of a public nuisance claim. *Manhart*, 2025 WL 2257408, at *4–8. There are no meaningful differences between the law of Illinois and Washington, D.C. regarding the elements of false imprisonment, and therefore Judge Rowland's decision in Manhart has put Plaintiff's counsel on notice that becoming stuck in traffic does not support a claim for false imprisonment.

13. Second, Plaintiff's lawsuit was brought for the improper purpose of harassing Defendants in an attempt to suppress their political speech.

14. Plaintiff's improper purpose is apparent from the face of his pleadings.

15. Plaintiff's Complaint targets Defendants for engaging in First Amendment protected protest in solidarity with the people of Palestine. Dkt. 1, Complaint ¶¶ 2, 28, 31. The Complaint also includes numerous allegations regarding totally unrelated Palestine solidarity protests that have no connection whatsoever to Plaintiff's alleged "injury." Dkt. 1 ¶¶ 3–4, 38–41.

16. Plaintiff's ridiculous $50 million damages demand based on the "inconvenience" of being temporarily stuck in traffic for less than an hour clearly indicates that Plaintiff's goal is not to succeed on the merits but rather to intimidate Defendants into ceasing their activism. Dkt. 1-1, Civil Cover Sheet; *Manhart*, 2025 WL 2257408, at *16 (noting that plaintiff's $36 million damages demand was evidence that his intention was to harass defendants).

17. In addition to the Complaint, Plaintiff's response to Defendants' motions to

dismiss likewise demonstrates his improper purpose.

18. Plaintiff's motion to dismiss response brands Defendants as "civil terrorists" and repeatedly cites an article in which the author calls for Palestine solidarity protesters including citizens to be denaturalized and deported and for "movement leaders" to be imprisoned. Dkt. 58 at 1, 19, 21 (quoting Tal Fortgang, *The Rise of Civil Terrorism*, CITY JOURNAL (Winter 2025)). That article, which advocates a number of methods to suppress the Palestine solidarity movement that even the author acknowledges "may seem draconian," cites this litigation approvingly, noting that it "may make a dent in the defendants' resources" through the "slow" process of discovery. Fortgang, *supra*; *Manhart*, 2025 WL 2257408, at *15–16 (noting that plaintiff's citation to article branding defendants "civil terrorists" was evidence of his improper motive).

19. The conduct of Plaintiff's counsel's firm outside of this lawsuit provides additional evidence of his improper purpose.

20. In *Manhart*—which, as discussed, was brought by the same firm that represents Plaintiff—the complaint included lengthy diatribes about the plaintiff's pro-Israel view of the geo-political history of the occupation of Palestine and argued that all advocacy in support of Palestinian human rights (including the defendants' advocacy) is undertaken at the behest of Hamas. *See Manhart*, No. 24-cv-8209, Dkt. 69, Second Amended Complaint ¶¶ 22–37 (N.D. Ill. Jan. 29, 2025).

21. In addition Plaintiff's counsel's web page related to this lawsuit specifically solicits plaintiffs who were "injured by 'anti-Zionist' traffic blockades" or "anti-Israel activists," demonstrating the firm's intention to continue filing more frivolous lawsuits like this one. Hamilton Lincoln Law Institute, *Faoro v. Jewish Voice for Peace Inc., et al.*, https://hlli.org/faoro-v-jvp/ (last accessed September 10, 2025).

22. It is clear that this lawsuit was not the result of Plaintiff's desire to be compensated for any legitimate injury or violation of his rights, but is rather part of a larger strategy to harass Palestine solidarity activists with expensive, time-consuming litigation.

23. In *Manhart*, Judge Rowland granted Rule 11 sanctions, concluding that although Plaintiff's counsel may have a personal concern with the defendants' alleged conduct, that concern "does not give Plaintiff *carte blanche* to make frivolous legal arguments, ignore controlling precedent, and misrepresent existing law in support of his case." *Manhart*, 2025 WL 2257408, at *17.

24. The courts are not a proper forum for deciding political disputes. The basis of Faoro's litigation is a political disagreement, not a legitimate legal claim.

25. Judge Rowland's decision to award sanctions was based on the Federal Rules of Civil Procedure (Rule 11), not state law, and federal courts in D.C. and Illinois do not diverge in their interpretation of Rule 11. *Compare Merchia v. Harvard Pilgrim Healthcare, Inc.*, 2024 WL 5186612, at *5 (D.D.C. 2024) *with Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957–58 (7th Cir. 2020).

26. Plaintiff's claims here are equally as frivolous as the claims pursued in *Manhart*, and his harassing purpose is similarly apparent. Unlike in *Manhart*, Plaintiff Faoro has now received notice from a federal judge that his lawsuit is sanctionable and not legally viable. Plaintiff's continued pursuit of this case violates Rule 11.

27. As a result of the improper conduct of Plaintiff and his counsel, JVP has incurred substantial attorneys' fees and costs defending against this baseless suit.

28. JVP served this motion on Plaintiff's counsel on October 15, 2025, providing Plaintiff notice of JVP's intent to seek sanctions and an opportunity to withdraw his claims

against JVP, as required by Rule 11's safe harbor provision. Plaintiff did not take heed of JVP's warning.

WHEREFORE, for all the reasons stated above, Defendant JVP respectfully requests that this Court enter an order (1) sanctioning Plaintiff and his counsel and (2) awarding Defendant JVP reasonable attorneys' fees and costs incurred in connection with this action.

November 4, 2026

Respectfully submitted,

/s/ *Nora Snyder*
Nora Snyder [admitted pro hac vice]
Brad J. Thomson [admitted pro hac vice]
People's Law Office
1180 N. Milwaukee Ave
Chicago, IL 60642
773-235-0070
norasnyder@peopleslawoffice.com
brad@peopleslawoffice.com

/s/ *Hanna Chandoo*
Hanna Chandoo [admitted pro hac vice]
Dan Stormer [admitted pro hac vice]
Bina Ahmad [admitted pro hac vice]
Hadsell Stormer Renick & Dai, LLP
128 N Fair Oaks Ave
Pasadena, CA 91103
(626) 585-9600
hchandoo@hadsellstormer.com
dstormer@hadsellstormer.com
bahmad@hadsellstormer.com

/s/ *Lynne Bernabei*
Lynne Bernabei, D.C. Bar No. 938936
Alan R. Kabat, D.C. Bar No. 464258
Bernabei & Kabat, PLLC
1400 16th Street NW, Suite 500
Washington, DC 20036
(202)745-1942
bernabei@bernabeipllc.com

kabat@bernabeipllc.com

***Attorneys for Defendant Jewish Voice for Peace***