**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DANIEL FAORO,<br><br>Plaintiff,<br><br>v.<br><br>JEWISH VOICE FOR PEACE, INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:25-cv-289 (ABJ) |

**DEFENDANT WESPAC FOUNDATION INC.'S MOTION FOR SANCTIONS AND <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT</u>**

## TABLE OF CONTENTS

INTRODUCTION AND PROCEDURAL HISTORY ..... 1

LEGAL STANDARD ..... 4

ARGUMENT ..... 6

I. Sanctions Are Warranted Pursuant to Rule 11 ..... 6

a. Plaintiff's Jurisdictional Argument Was Frivolous ..... 8

b. Plaintiff's Purported Theories of Liability Were Frivolous ..... 11

c. Plaintiff and Plaintiff's Counsel, Who Were Sanctioned in a Similar Case, Filed This Suit to Harass WESPAC ..... 14

II. Sanctions Against Plaintiff's Counsel Also Are Warranted as an Exercise of This Court's Inherent Authority and Pursuant to 28 U.S.C. § 1927 ..... 17

CONCLUSION ..... 18

# TABLE OF AUTHORITES

## CASES

*Acme Int'l Gen. Trading & Contracting Co. v. CCI, Inc.*, No. 12-CV-1895 (EGS), 2015 WL 12559867 (D.D.C. Sep. 14, 2015) ....................4

*Ali v. Tolbert,* 636 F.3d 622 (D.C. Cir. 2011) ....................5

*Am. Fed. of Gov't Employees, AFL-CIO v. Hudson*, No. 1:18-CV-1230 (FYP), 2022 WL 3098770 (D.D.C. Aug. 4, 2022) ....................5

*Barlow v. McLeod*, 666 F. Supp. 222 (D.D.C. 1986) ....................7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................12

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ....................5, 16

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ....................4

*Faoro v. Jewish Voice for Peace, et al.*, 2026 WL 2065408, No. 25-0289 (ABJ) (July 16, 2026). .................... *passim*

*Fritz v. Honda Motor Co.*, 818 F.2d 924 (D.C. Cir. 1987) ....................17

*GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) ....................8

*Hall v. Dep't of Homeland Sec.*, 219 F. Supp. 3d 112 (D.D.C. 2016) ....................5, 17

**Helmann v. Codepink Women for Peace, et al.,* Case No. 2:24-cv-05704-SVW-PVC, 2025 WL 3030582 (C.D. Cal. June 13, 2025) .................... 9-10, 13

*In re W.A.R. LLP*, 535 B.R. 1 (D.D.C. 2015) ....................16

*Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267 (2d Cir. 2021) ....................1

**Manhart v. WESPAC Foundation, Inc., et al.*, No. 1:24-cv-08209 (MMR), 2025 WL 2257408 (N.D. Ill. Aug. 7, 2025) ....................2-3, 13-16

*Morrison v. Walker*, 939 F.3d 633 (5th Cir. 2019) ....................17

*Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7 (D.D.C. 2014) ....................7

*Washington Bancorporation v. Said*, 812 F. Supp. 1256 (D.D.C. 1993) ....................4, 17

**Weinberg v. Nat'l Students for Justice in Palestine*, No. 2:25-CV-03714-MCS-JC, 2026 WL 184302 (C.D. Cal. Jan. 20, 2026) ....................3, 10, 13

## STATUTES

28 U.S.C. § 1927 ....................1, 4, 5, 17, 18

D.C. Code § 13-423(a) ....................8

**RULES**

Fed. R. Civ. Proc. 11 .................................................................... 1, 4-6, 8, 11, 12, 14, 16, 18

Rev. Rul. 68 489, 1968-2 C.B. 210 ........................................................................................12

## INTRODUCTION AND PROCEDURAL HISTORY

WESPAC Foundation ("WESPAC") is a New York non-profit corporation with its principal place of business in Westchester County, New York. Since 1947, it has been educating and organizing for a more just and peaceful world, an end to militarism and racism, and a fairer economy that works for all.

WESPAC files this motion for sanctions against Plaintiff Daniel Faoro ("Faoro" or "Plaintiff") and his attorneys at Hamilton Lincoln Law Institute ("Plaintiff's Counsel") pursuant to Federal Rule of Civil Procedure 11 because the Complaint against WESPAC is not grounded in "existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and has been pursued against WESPAC for an "improper purpose, such as to harass." *See* Fed. R. Civ. P. 11.[1] And because Plaintiff's Counsel brought and maintained this action against WESPAC in bad faith, unreasonably, and vexatiously, thereby "unnecessarily consuming judicial and attorney resources," sanctions are also warranted under the Court's inherent authority and 28 U.S.C. § 1927. *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 286 (2d Cir. 2021).

Plaintiff filed the Complaint against WESPAC and nine other defendants on January 31, 2025, bringing claims of conspiracy to commit public nuisance, false imprisonment and, in the alternative, negligence or recklessness. These claims arose out of Plaintiff's allegedly sitting in traffic "for close to an hour" during a protest in and around Washington, D.C. on February 1, 2024. Complaint, ECF No. 1 ¶¶ 1, 36. In the Complaint, Plaintiff did not claim that WESPAC took any

[1] We are cognizant of the Court's October 14, 2025 Order stating, "The Court will inform the defendants if and when they may file motions for sanctions." However, given that (i) a November 5, 2025 Court Order stated, "[f]or the reasons stated on the record, no pleadings may be filed until the Motions to Dismiss have been resolved"; and (ii) all motions to dismiss have been resolved, we understand motions for sanctions to be timely now.

action in connection with that protest, but rather alleged that WESPAC was a fiscal sponsor of the Palestinian Youth Movement ("PYM") and—on that basis alone—was responsible for any actions of PYM allegedly taken in connection with the protest. *Id.* ¶¶ 14, 85.

On June 16, 2025, WESPAC delivered to Plaintiff's Counsel a letter ("Rule 11 Letter") to serve notice of intent to move for sanctions under Rule 11. The Rule 11 Letter noted first that the Complaint failed to allege any act by WESPAC relating to Plaintiff's claims. More particularly, apart from allegations made in inadequate group-pleading fashion about what all "Defendants" supposedly did collectively, the Complaint failed to allege that anyone on behalf of WESPAC actually was aware of the relevant protest, helped plan it, called for anyone to take part in it, was involved or participated in it, provided funds for it, or did *anything* in relation to it. The Rule 11 Letter notified Plaintiff's Counsel that their failure to allege any action by WESPAC relating to the events at issue was fatal to their claims against WESPAC, given that Plaintiffs' fiscal-sponsor theory had no legal basis. Additionally, the Rule 11 Letter noted that the Complaint failed to allege any basis for personal jurisdiction over WESPAC in this District and, in fact, correctly stated that WESPAC is incorporated in and has its principal place of business in New York. Complaint ¶¶ 11, 13. The Rule 11 Letter concluded by demanding that the Complaint be withdrawn against WESPAC, consistent with Rule 11. On that same day, WESPAC filed a motion to dismiss for lack of standing and personal jurisdiction and failure to state a claim based on the same deficiencies identified in the Rule 11 Letter.

On August 12, 2025, WESPAC sent a supplemental letter to Plaintiff's Counsel ("Supplemental Rule 11 Letter") regarding *Manhart v. WESPAC Foundation, Inc., et al.*, No. 1:24-cv-08209 (MMR), 2025 WL 2257408 (N.D. Ill. Aug. 7, 2025), another case brought by Plaintiff's Counsel arising out of a purported traffic jam. The *Manhart* court dismissed that case against

WESPAC and all defendants and imposed sanctions upon Plaintiff's Counsel and the plaintiff in favor of some defendants in that case.[2] WESPAC noted that the frivolous claims asserted in *Manhart* were virtually identical to those lodged against WESPAC in this case, including because they relied on the baseless fiscal-sponsor theory. Moreover, in *Manhart*, the court found that the claims had been asserted "for the improper purpose of harassment." *Id.* at *15. Of course, Plaintiff's Counsel were already well aware of *Manhart* because they had represented the plaintiff in that case as well.

On November 11, 2025, WESPAC served a formal Motion for Sanctions on Plaintiff's Counsel, reiterating and expanding upon points made in the prior correspondence. Then, on March 24, 2026, WESPAC served another supplemental letter on Plaintiff's Counsel, this regarding *Weinberg v. Nat'l Students for Justice in Palestine*, No. 2:25-CV-03714-MCS-JC, 2026 WL 184302 (C.D. Cal. Jan. 20, 2026), a decision issued after WESPAC had served its Motion for Sanctions and filed its reply memorandum in support of its motion to dismiss here. *See* ECF No. 62. *Weinberg* was yet another decision rejecting the baseless fiscal-sponsor theory asserted by Plaintiff in this action. The November 11, 2025 letter further informed Plaintiff's Counsel that the plaintiff in *Winer v. Mohammad et al.,* No. 1:25-cv-02329 (N.D. Ga. Apr. 25, 2025), had voluntarily dismissed a suit against WESPAC premised on that same fiscal-sponsor theory after WESPAC had served a Rule 11 motion and filed its opening brief on a motion to dismiss.

Notwithstanding the Rule 11 Letter, the Supplemental Rule 11 Letter, the Motion for Sanctions served in November 2025, the correspondence regarding *Weinberg,* and WESPAC's motion to dismiss, Plaintiff and Plaintiff's Counsel persisted in pursuing this frivolous case as part

[2] WESPAC did not make a sanctions motion in *Manhart* until the motions to dismiss were granted. The court subsequently stayed all sanctions litigation pending an appeal by the plaintiff.

of an expansive, legally baseless campaign to harass WESPAC. As such, Plaintiff and Plaintiff's Counsel left it to the Court to dismiss the baseless claims brought against WESPAC. *Faoro v. Jewish Voice for Peace*, *et al*., 2026 WL 2065408, No. 25-0289 (ABJ) (July 16, 2026). WESPAC deserves relief for the time and resources it has spent defending against Plaintiff's frivolous claims—relief which might also deter Plaintiff's Counsel from continuing to harass WESPAC with additional baseless lawsuits.

## LEGAL STANDARD

This Court may impose sanctions under Rule 11, its inherent authority, and 28 U.S.C. § 1927. Rule 11(b) provides, in pertinent part, that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
> >
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

The "central purpose of Rule 11 is to deter baseless filings." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (superseded by statute on other grounds). To determine whether a filing is baseless, Rule 11 sets forth an objective test: "whether a reasonable inquiry would have revealed that there was no basis in law or fact for the asserted claim." *Acme Int'l Gen. Trading & Contracting Co. v. CCI, Inc.*, No. 12-CV-1895 (EGS), 2015 WL 12559867, at *3 (D.D.C. Sep. 14, 2015) (citing *Washington Bancorporation v. Said*, 812 F. Supp. 1256, 1275 (D.C. Cir. 1993)).

In addition, "federal courts have inherent power to assess attorney's fees against counsel" who have "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991); *see also Am. Fed. of Gov't Employees, AFL-CIO v. Hudson*, 2022 WL 3098770, at *2 (D.D.C. Aug. 4, 2022) (addressing inherent authority to award sanctions due to "bad faith" and "egregious disrespect for the … judicial process"). As such, an award of attorney's fees may be made pursuant to a court's inherent power "even [though] procedural rules exist which sanction the same conduct," *Chambers*, 501 U.S. at 49-50, and even if the relevant "conduct is not sanctionable under Rule 11." *Ali v. Tolbert*, 636 F.3d 622, 627 (D.C. Cir. 2011).

This inherent authority is "supplement[ed]" by statute, *Hall v. Dep't of Homeland Sec.*, 219 F. Supp. 3d 112, 119 (D.D.C. 2016), *aff'd*, 2017 WL 2348158 (D.C. Cir. May 17, 2017), *i.e.,* 28 U.S.C. § 1927. This provision authorizes sanctions against any attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. The statute requires "'evidence of recklessness, bad faith, or improper motive' present in the attorney's conduct," which can be inferred from a "total lack of factual or legal basis" in the filings. *Hall*, 219 F. Supp. 3d at 119 (quoting *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 906 (D.C. Cir. 1998)).

## <u>ARGUMENT</u>

### I. Sanctions Are Warranted Pursuant to Rule 11

Rule 11 required a "reasonable inquiry" of the facts *before* Plaintiff sued WESPAC to determine whether there was any legitimate basis to contend that someone acting on behalf of WESPAC engaged in actionable conduct in relation to the relevant protest, which plainly was not the case. Notwithstanding this obligation, Plaintiff and Plaintiff's Counsel filed a pleading that simply did not allege WESPAC did anything with respect to the alleged events that purportedly

underpin Plaintiff's claims. More particularly, the Complaint did not plead that anyone on behalf of WESPAC actually:

- was aware of the relevant protest before it occurred;
- was involved in any way in planning the protest;
- called for anyone to take part in the protest;
- communicated with any individual or organizational Defendant about the protest;
- was anywhere near the protest (or even in D.C.) at the relevant time;
- transmitted any money to PYM or anyone else knowing or intending that it would be used in connection with the protest (or that any funds transmitted by WESPAC actually were used in connection with the protest);
- made any post-event statements relating to the protest; or
- did *anything at all* relating to the protest.

This was not simply a matter of inattentive pleading. Rather, any allegation that WESPAC took action in connection with the alleged events would have been false.

The Complaint did offer certain conclusory assertions against all "Defendants," a reference Plaintiff did not define, but that presumably included WESPAC. For example, Plaintiff claimed that (i) "hundreds of *Defendants'* coconspirators descended on several highways and roads"; (ii) "*Defendants* and their co-conspirators blocked traffic at several critical chokepoints"; and (iii) "[a]s a result of the intentional illegal actions of *Defendants* and their coconspirators, Plaintiff, Daniel Faoro, along with thousands of other motorists, was trapped on the highway and confined in his car." Complaint ¶¶ 28, 29, 35 (emphases added).

Critically, Plaintiff did not even attempt to offer a substantiating allegation that would tie WESPAC to any of the actions it claims were taken by all "Defendants." Such collectively pled

allegations are entirely insufficient for not identifying which Defendant purportedly took which alleged act:

> Generally, a plaintiff cannot satisfy the minimum pleading requirements under Rule 8 of the Federal Rules of Civil Procedure by "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001); *accord Melegrito v. CitiMortgage Inc.*, 2011 U.S. Dist. LEXIS 60447, 2011 WL 2197534, at *6 (N.D. Cal. June 6, 2011) ("Under Rule 8(a), grouping multiple defendants together in a broad allegation is insufficient to provide the defendants with fair notice of the claims against them and the grounds for relief"); *Bates v. Nw. Human Servs.*, Inc., 466 F. Supp. 2d 69, 85 (D.D.C. 2006) (dismissing plaintiffs' RICO claim for, inter alia, "generally neglect[ing] to distinguish between the defendants when describing the factual underpinnings of the complaint"). Instead, a plaintiff must provide each defendant with "fair notice of each claim and its basis." *Caldwell v. Argosy Univ.*, 797 F. Supp. 2d 25, 27 (D.D.C. 2011) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1118, 342 U.S. App. D.C. 268 (D.C. Cir. 2000)).

*Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014); *see also Barlow v. McLeod*, 666 F. Supp. 222, 229 (D.D.C. 1986) (sanctions are appropriate when a complaint is "woefully lacking in details" and "consist[s] almost entirely of conclusory allegations," because such a "lack of specificity strongly suggests that counsel had no factual basis for bringing the action").

Given that Plaintiff did not even claim WESPAC did anything in relation to the protest, let alone in this District, plainly there was no argument that could remotely justify the exercise of personal jurisdiction over WESPAC here. Moreover, as to the underlying claims, Plaintiff was forced to rely on a theory that a fiscal sponsor is strictly liable for any alleged acts of a sponsoree even when the sponsor does not fund those acts or have any manner of advance notice. For obvious reasons, and as discussed below, that theory is entirely bereft of legal basis. As such, there was no good-faith basis to sue WESPAC in this District or for any of the claims alleged against WESPAC.

It is therefore apparent that, in violation of Rule 11, this case was brought for the improper purpose of harassing WESPAC for its support of pro-Palestinian advocacy.

**A. Plaintiff's Jurisdictional Argument Was Frivolous**

Plaintiff had no nonfrivolous basis to contend WESPAC was subject to personal jurisdiction in this District, a point underscored by the Complaint's silence as to this subject and the unavailing arguments made on this subject in Plaintiff's opposition to WESPAC's motion to dismiss, which arguments the Court rejected.

More specifically, as the Court summarily determined (and Plaintiff conceded), there was no basis for the exercise of general jurisdiction over WESPAC. *Faoro*, 2026 WL 2065408, at *5. Indeed, the Complaint failed to plead a single fact that could have justified the exercise of general jurisdiction over WESPAC, but instead alleged correctly that WESPAC is incorporated in and has its place of business in New York. Complaint ¶¶ 11, 13.

To exercise specific (or long-arm) jurisdiction, "[a] court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). The long-arm statute provides for personal jurisdiction over a non-resident "as to a claim for relief arising from the person's (1) transacting any business in the District of Columbia; [or] . . . (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia." D.C. Code §§ 13-423(a)(1) & (3).

In opposing WESPAC's motion to dismiss, Plaintiff claimed that "the conduct of PYM, WESPAC's sponsored entity, satisfies both these subsections of the statute." Pl. Opp'n. Mot. Dismiss, ECF No. 58 at 38. Put differently, Plaintiff did "not argue that WESPAC's contacts with

the District satisfy the requirements of personal jurisdiction. He contend[ed] that the Court has jurisdiction over WESPAC because it is the 'fiscal sponsor' of defendant Palestinian Youth Movement, and PYM's contacts with the District satisfy personal jurisdiction. *Id.* at 38–40. Alternatively, plaintiff argued that the Court had jurisdiction because WESPAC is 'legally indistinguishable' from PYM, analogous to an 'alter ego.' *Id.* at 40–42." *Faoro*, 2026 WL 2065408, at *4.

But Plaintiff cited no law for the proposition that a fiscal sponsor is subject to personal jurisdiction in this District automatically just because its sponsoree is so subject whether as a matter of fiscal sponsorship or alter ego.

In fact, while maintaining its jurisdictional position and refusing to dismiss its claims against WESPAC, Plaintiff's Counsel ignored entirely instructive decisions from two federal courts that WESPAC took pains to bring to their attention. In *Helmann v. Codepink Women for Peace, et al.*, Case No. 2:24-cv-05704-SVW-PVC, 2025 WL 3030582, at *21 (C.D. Cal. June 13, 2025),[3] the court rejected essentially the same jurisdictional argument Plaintiff offered here, also based on WESPAC's serving as fiscal sponsor to PYM:

> The Sponsoring Defendants[4] are not residents of California. Plaintiffs do not allege that the Sponsoring Defendants—or any of their members—organized or participated in the mob. Nothing in the Complaint suggests that the Sponsoring Defendants purposefully directed any activities at California or otherwise availed themselves of the privileges of California. In other words, there are no allegations sufficient to support general or specific jurisdiction.
>
> There is only one link between the Sponsoring Defendants and California: the Sponsoring Defendants' fiscal sponsorship relationship with PYM. This is not enough for personal jurisdiction. It does not create an agency relationship. And even

[3] The *Helmann* case was a companion case and consolidated for decision with a case styled as *StandWithUs Center for Legal Justice v. CodePink et al.*, No. 2:24-cv-06253 (C.D. Cali.). WESPAC's Rule 11 correspondence referred to *StandWithUs.* WESPAC referred to this consolidated case as "*Pollak*" in its motion to dismiss, the name of another plaintiff. Regardless of nomenclature, there is one consolidated opinion.

[4] The "Sponsoring Defendants" comprised WESPAC and one other entity.

> if the Court viewed fiscal sponsorship as a contract, that alone is not enough to establish personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.") (emphasis in original).

*See also Weinberg v. Nat'l Students for Justice in Palestine*, No. 2:25-CV-03714-MCS-JC, 2026 WL 184302, at *13 (C.D. Cal. Jan. 20, 2026) ("WESPAC argues that the mere fact that it serves as NSJP's fiscal sponsor is not sufficient to subject it to the Court's personal jurisdiction…The Court agrees…The Court has not found any authority embracing Plaintiff's fiscal sponsorship theory").

Plaintiff's jurisdictional position was as bereft of factual support as legal support. As to the fiscal sponsorship theory, the Court noted that "the complaint alleges that WESPAC 'received donations for PYM,'" but that:

> These allegations are not enough to establish specific personal jurisdiction. Specific jurisdiction arises from the defendant's connection with the "controversy that establishes jurisdiction," *Goodyear*, 564 U.S. at 919, and there are *no* allegations as to how the arrangement facilitating donations to PYM through WESPAC is related to the protest that gave rise to this case. There are *no* allegations that WESPAC funded, directed, or was otherwise involved in the February 1 blockade, or that the funds it received on behalf of PYM had any relationship to the event.

*Faoro*, 2026 WL 2065408, at *5 (emphasis added).

As to Plaintiff's alter ego theory, the Court noted "plaintiff must allege not only unity of ownership and interest between the two corporations, but also use of the corporate form to perpetrate fraud or wrong." *Id.* (internal quotation marks omitted). However, as the Court held:

> …the complaint does not allege facts to show that PYM is a subsidiary of WESPAC, or that *there is any overlap in ownership at all*, much less, that there is a "unity of ownership and interest." At most, plaintiff alleges that WESPAC provided PYM access to its "administrative services, staff, and facilities," and that donors could make tax-deductible contributions to PYM through WESPAC.

> Compl. ¶¶ 13–14.[5] But those allegations are insufficient to show that the two entities "disregarded" corporate formalities and actually operate as one entity.

*Id.* (emphasis added).

In sum, Plaintiff and Plaintiff's Counsel had no colorable legal or factual basis to sue WESPAC here. *See id.*, at *3 ("Plaintiff has failed to establish personal jurisdiction as to WESPAC because there are *no* allegations connecting it to the District of Columbia or the protest.") (emphasis added). That they did so violated Rule 11 and that they persisted in doing so was a continuing violation of Rule 11.

**B. Plaintiff's Purported Theories of Liability Were Frivolous**

Plaintiff utterly lacked any legal or factual basis for his claims against WESPAC as a substantive matter. Again, the Complaint did not even *allege* that anyone on behalf of WESPAC did *anything* in relation to the protest that supposedly caused Plaintiff to sit in traffic. As such, the claims against WESPAC were premised entirely on the idea that, as a fiscal sponsor to PYM, WESPAC was liable for anything PYM did anywhere in the world to anyone, regardless of whether WESPAC even had reason to know of any allegedly tortious action by PYM:

> As PYM's fiscal sponsor during the relevant time, WESPAC had a legal duty to control and supervise the activities of PYM, which had and continues to have no corporate structure. WESPAC is thus liable for the acts of PYM, whether it is because WESPAC is during the relevant times the alter ego of PYM; because WESPAC controlled and supervised PYM's activities; or, in the alternative, because WESPAC negligently or recklessly breached its duty to control and supervise the activities of PYM, whose foreseeable illegal actions caused foreseeable injury to the Plaintiff and the Class, causing damages.

Complaint ¶ 85.

This notion was frivolous. First, the Complaint did not offer a single factual allegation to substantiate Plaintiff's (false) argument that "WESPAC controlled and supervised PYM's

[5] Plaintiff offered these allegations – which are false – in an entirely conclusory fashion.

activities; or, in the alternative, [] WESPAC negligently or recklessly breached its duty to control." To the extent Plaintiff relied on his purported statement of law that "WESPAC had a legal duty to control and supervise the activities of PYM," that would also be inadequate, given that legal conclusions couched as factual allegations do not state a claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

More fundamentally, Plaintiff never cited any case from anywhere in the country (or any other authority) imposing on a fiscal sponsor like WESPAC any legal duty of care to someone situated like Plaintiff. Rather, Plaintiff relied on a 1968 IRS Revenue Ruling, *see* Complaint ¶ 14, which provides only that an unidentified organization could retain its tax exemption because it had maintained discretion and control over the *funds*—not the *activities*—of another organization for charitable purposes. *See* Rev. Rul. 68 489, 1968-2 C.B. 210. That Revenue Ruling says nothing to suggest a fiscal sponsor has a duty to private third parties to control omnipotently all activities of a sponsoree. As such, Plaintiff brought claims against WESPAC with no basis in "existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *See* Fed. R. Civ. P. 11.

This conclusion was reinforced by two federal court decisions of which Plaintiff's Counsel was well aware. That these appear to be the only decisions addressing Plaintiff's fallacious strict-liability theory evidently is due to the fact that—before the current spate of litigation against WESPAC—the proposition of such liability for a fiscal sponsor had never even been posited.

In dismissing claims brought against WESPAC in *Helmann*—based on the same unsupported theory of fiscal sponsorship—the court found that "Plaintiffs cite *no legal authority* holding that fiscal sponsorship alone creates such liability, and the Court finds none." *Helmann*, 2025 WL 3030582, at *20 (emphasis added). In fact, the court found, "[t]he most relevant case

Plaintiffs cite, *New York ex rel. TZAC, Inc. v. New Israel Fund*, 520 F. Supp. 3d 362 (S.D.N.Y.), actually undercuts their argument. . . . The court did not hold the nonprofit liable for grantees' actions themselves." *Id.* In reaching its conclusion, the *Helmann* court held that the Revenue Ruling the *Helmann* plaintiffs cited—the same one Plaintiff cites here—"requires fiscal sponsors to retain 'control and discretion' over how donated funds are used, but only in order to preserve their tax-exempt status—not to create an agency relationship or vicarious liability." *Id.*

In *Manhart*, 2025 WL 2257408, at *12, the court held that "Plaintiff cites no case or legal authority from any jurisdiction suggesting or even contemplating that *any* IRS rule could *ever* create a legal duty sufficient to substantiate a tort claim." (emphasis in original); *see also Weinberg*, 2026 WL 184302, at *13 ("The Court has not found any authority embracing Plaintiff's fiscal sponsorship theory. And, in fact, the only other court [*Manhart*] that has addressed Plaintiffs' broad reading of the IRS ruling soundly rejected it.").

Given the utter absence of legal authority for Plaintiff's theory of liability, it is unsurprising that this Court required only two sentences to dispose of it:

> Finally, the complaint brought a claim for negligence or recklessness against WESPAC, alleging that it is liable for PYM's actions as its "fiscal sponsor" or "alter ego." Compl. ¶¶ 84–85. The Court has explained that the allegations do not give rise to a relationship between WESPAC and PYM that would support the finding of personal jurisdiction, and in the same way, the allegations also fail to show a legal relationship that would make WESPAC liable for PYM's actions.

*Faoro*, 2026 WL 2065408, at *11.

In sum, despite being unable to cite any authority supporting their fiscal-sponsor theory, having been the non-prevailing counsel for the plaintiff in *Manhart*, and being well aware of *Hellman* and *Weinberg*, Plaintiff's Counsel persisted in pursuing the baseless fiscal-sponsor theory, plainly warranting sanctions.

### C. Plaintiff and Plaintiff's Counsel, Who Were Sanctioned in a Similar Case, Filed This Suit to Harass WESPAC

Plaintiff and Plaintiff's Counsel filed this suit against WESPAC for an "improper purpose." Fed. R. Civ. P. 11(b)(1). As noted, the court in *Manhart* found that counsel for the plaintiff in that case—who are Plaintiffs' Counsel in this case—presented the *Manhart* action "for the improper purpose of harassment." *Manhart* 2025 WL 2257408 at *15. The court's findings on that point are entirely instructive here. In *Manhart*, counsel offered a range of irrelevant and inflammatory allegations that the court described as "only a hair's breadth away from calling Defendants terrorists and placing the loss of innocent lives at their feet." *Id.*

Taking a page from the very same playbook, the Complaint here—which this Court described as "argumentative" (Minute Order, 6/20/25)—painted all "Defendants," including WESPAC, as violent actors who put lives at risk and support a designated terrorist group. The Complaint alleges that the traffic jam in which Plaintiff sat "put[] thousands of individuals *at risk*," "*harmed thousands* of ordinary people," and "created *life-threatening hazards* for the surrounding communities." Complaint ¶¶ 1-2 (emphasis added). That the Complaint did not even allege WESPAC took any action in connection with the traffic jam obviously did not keep Plaintiff's Counsel from seeking to demonize WESPAC as being among those that allegedly harmed and threatened harm to "thousands."

Even worse, the Complaint sought to tie Defendants, including WESPAC, to other "anti-Israel activists" who took part in "an orgy of violence and vandalism" in "support [of] Hamas." *Id.* ¶¶ 3-4. That this "orgy" allegedly took place during events that had nothing to do with the traffic jam at issue obviously did not prevent Plaintiff from including a description of these other events in the Complaint to vilify further WESPAC as being associated with violence undertaken in support of a foreign terrorist group. Beyond that, Plaintiff's Counsel went so far as to say that

the relevant protest, on February 1, 2024, was "perhaps the most disruptive action by anti-Israel activists," even when compared with the cited "orgy of violence." *Id.* at ¶ 5. In addition, on Plaintiff's Counsel's firm website, they call Defendants "pro-Hamas protestors."[6] In sum, just as Plaintiff's Counsel's allegations were "only a hair's breadth away from calling Defendants terrorists" in *Manhart*, they offer the same manner of baseless and inflammatory allegations here.

In *Manhart*, the court also observed:

> Plaintiff's briefing takes on a similar tenor: Plaintiff cites extensively from an article from a think tank that accuses Defendants of engaging in "civil terrorism," being "anti-Western," and working to "make life intolerable for Americans who support . . . the U.S. in its current form."
>
> The article goes on to discuss *this* litigation and describes it approvingly as a vehicle through which Plaintiff's counsel "may make a dent in the [D]efendants' resources" via a "slow" discovery process. That same article also calls for the "civil terrorists" who participated in the protest at issue in this action—that is, Defendants—to be denaturalized and deported. This is the opinion of a think tank, the Manhattan Institute, not necessarily Plaintiff's counsel. But counsel approvingly cited several paragraphs of this article, and it sets the context for the litigation. Taken together with Plaintiff's request for $36 million on behalf of the putative class, the Court is persuaded that Plaintiff's intent in bringing this action was not to recover the damages actually sustained, but instead to harass Defendants.

*Manhart* 2025 WL 2257408 at *15-16 (emphasis in original) (internal citations omitted) (quoting from Tal Fortgang, *The Rise of Civil Terrorism*, CITY JOURNAL (Winter 2025), https://www.city-journal.org/article/civil-terrorism-anti-israel-radicals).

Those observations are equally applicable to this case. Indeed, Plaintiff's Counsel, on the very first page of their omnibus opposition to Defendants' motions to dismiss, cited again that very article. Pl. Opp'n. Mot. Dismiss, ECF No. 58 at 1. Plaintiff's Counsel's citation was entirely

[6] *Faoro v. Jewish Voice for Peace Inc., et al.*, Open Cases, Hamilton Lincoln Law Institute (Jan. 31, 2025), https://hlli.org/faoro-v-jvp/.

indicative of their intent and purpose. And Plaintiff's Counsel again brought a putative class action seeking millions of dollars (for a traffic jam) just as they did in *Manhart*. *See* Complaint ¶ 26.

Finally, even if Plaintiff's Counsel could point to some legitimate basis for initiating this litigation (they cannot), it is indefensible that they persisted in prosecuting their claims even after receiving the *Manhart* ruling, WESPAC's various Rule 11 communications (including a formal motion), and WESPAC's motion to dismiss, all of which explained the fatal flaws in their case. Just as the court in *Manhart* noted, "[i]nstead of taking heed, Plaintiff doubled down on arguments that a reasonable inquiry into the law would have revealed were baseless." *Manhart*, 2025 WL 2257408, at *18; *see also In re W.A.R. LLP*, 535 B.R. 1, 5 (D.D.C. 2015) ("improper purpose under Rule 11 may be inferred from excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings") (internal quotations and citations omitted).

In sum, Plaintiff and Plaintiff's Counsel sued WESPAC because they disagree with WESPAC's First-Amendment-protected advocacy and want to keep WESPAC from engaging in that advocacy by "mak[ing] a dent" in WESPAC's "resources." Obviously, the utter absence of legal authority for the claims against WESPAC was no deterrent to this strategy. But such tactics are precisely what Rule 11 is designed to deter.

## II. Sanctions Against Plaintiff's Counsel Also Are Warranted as an Exercise of This Court's Inherent Authority and Pursuant to 28 U.S.C. § 1927

Sanctions are warranted pursuant to this Court's inherent authority and Section 1927 because, as set forth in Section I above, Plaintiff's Counsel brought this case against WESPAC "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45-46; *see id.* at 46 n.10 (bad-faith standard "resembles the third prong of Rule 11's" authorization of sanctions for litigation with an "improper purpose"). Moreover, bad faith combined with a "total lack of factual or legal basis" for the claims against WESPAC also warrant sanctions pursuant to Section

1927. *Hall*, 219 F. Supp. 3d at 119; *id.* at 120 (awarding "any costs and expenses" associated with defense of case, along with referral for disciplinary proceedings, based on plaintiff's "seek[ing] the advancement of meritless positions" coupled with "irrelevant diatribes" reflecting an "intent to harm" defendant and "advance" a "vendetta").

Indeed, Plaintiff's Counsel persisted with claims against WESPAC until dismissal by the Court, despite a clear understanding that the only courts to have addressed their jurisdictional and liability theories had rejected those theories outright. Stated differently, "[Plaintiff's] counsel 'unreasonably' and 'vexatiously' multiplie[d] [the] legal proceedings," given his "persistent prosecution of [] meritless claim[s]" and ignoring the "clear evidence" that the claims were factually and legally baseless. *Morrison v. Walker*, 939 F.3d 633, 637-38 (5th Cir. 2019); *Washington Bancorporation v. Said*, 812 F. Supp. 1256, 1275 (D.D.C. 1993) (imposing sanctions as a deterrent to demonstrate to plaintiff "as well as to other potential plaintiffs, that it is not permissible to bring insupportable claims for whatever reasons").

## CONCLUSION

For the reasons addressed above, WESPAC respectfully asks the Court to grant its motion for sanctions pursuant to Rule 11, the Court's inherent authority, and 28 U.S.C. § 1927.

Dated: November 4, 2026

By:/s/ Robert L. Herbst
Robert L. Herbst (*pro hac vice*)
rherbst@herbstlawny.com
HERBST LAW PLLC
420 Lexington Avenue, Suite 300
New York, New York 10170
Tel: 914-450-8163

Joshua Colangelo-Bryan (*pro hac vice*)
colangeloj@humanrightsfirst.org
HUMAN RIGHTS FIRST
121 West 36th Street, PMB 520
New York, New York 10018
Tel: 212-845-5243

Attorneys for Defendant
WESPAC FOUNDATION, INC.